# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SCOTT BLAIR,

                        *Plaintiff*,

     v.

ALSTOM TRANSPORTATION, INC.
AND KAWASAKI RAIL CAR, INC.,

                      *Defendants*.

CA No. 1:16-cv-03391-PAE-JLC

## DEFENDANTS ALSTOM TRANSPORTATION, INC. AND KAWASAKI RAIL CAR, INC.'S JOINT RESPONSIVE CLAIM CONSTRUCTION BRIEF

Pursuant to Local Patent Rule 12(b) and the Civil Case Management Plan and Scheduling Order (D.I. 23) in the above-captioned case, defendants Alstom Transportation, Inc. ("Alstom") and Kawasaki Rail Car, Inc. ("KRC") (collectively, "the Defendants") hereby serve their Joint Responsive Claim Construction Brief.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 2

        A.      Brief Description of the '602 Patent ....................................................... 2

        B.      Prosecution History of the '602 Patent .................................................. 5

        C.      Reexamination History of the '602 Patent ............................................. 5

III.    CLAIM CONSTRUCTION STANDARD .................................................................. 7

IV.     THE INDEFINITE TERMS ........................................................................................ 8

        A.      "substantially flushed with the adjacent wall surface structure of
                the car"; and "substantially flush with the adjacent surface
                structure of the transitional wall portion" ............................................. 8

        B.      "a ceiling adjoining the sidewalls"; "at the junction of the sidewall
                and ceiling"; and "at the junction of the sidewall and the ceiling"...... 14

        C.      "substantially contiguous with an exterior surface of said
                transitional segment" ............................................................................. 17

        D.      "a transitional wall portion" and "a transitional segment" ................... 18

V.      CLAIM TERMS TO CONSTRUE.............................................................................. 19

        A.      "a video signal source unit" .................................................................... 19

        B.      "a plurality of transparent cover units that cover respective ones of
                the video display monitors" .................................................................... 20

        C.      "back lit panel" ........................................................................................ 21

        D.      "flushed with the adjacent wall surface structure of the car"; and
                "flushed within the adjacent wall structure such that it contains no
                protuberances" ........................................................................................ 22

        E.      "self-contained wiring cabling system" .................................................. 23

        F.      [wherein an external surface of the longitudinal opposed sidewall,
                the exterior surface of said transitional segment and an external
                surface of the ceiling comprise a] "blended contour"............................. 24

## TABLE OF AUTHORITIES

**Cases**

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*,
No. 6:11-cv-00391-LED, 2012 WL 2872121 (E.D. Tex. July 12, 2012). ......................... 8

*Datamize LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed.Cir.2005) ...................................................................................... 7, 9

*Endo Pharms. Inc. v. Watson Labs., Inc.*,
No. 2:13-cv-192, 2014 U.S. Dist. LEXIS 84804 (E.D. Tex. June 23, 2014) ................... 7

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ...................................................................................... 18

*In re Swanson*,
540 F.3d 1368, 1378 (Fed. Cir. 2008) ............................................................................ 13

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .......................................................................................................... 7

*Morton Int'l, Inc. v. Cardinal Chem. Co*,
5 F.3d 1464 (Fed. Cir. 1993) ............................................................................................ 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S.Ct. 2120 (2014) .............................................................................................. passim

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .................................................................................. 7, 13

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ................................................................................ 20, 22

## I.      INTRODUCTION

Plaintiff has asserted U.S. Patent No. 6,700,602 ("the '602 patent") entitled "Subway TV Media System" against KRC's and Alstom's rail cars.  The '602 patent was previously reexamined by the Patent Office, and the Patent Trial and Appeal Board ("PTAB") has recently instituted an *inter partes* review of the '602 patent with respect to the claims originally asserted by plaintiff in his complaint (*i.e.*, claims 1-4 and 6).  In so doing, the PTAB expressly found that the petitioner (KRC) "has established that there is a reasonable likelihood that it would prevail in establishing the unpatentability of claims 1-4 and 6 of the '602 patent."  (*See* Decision Instituting *Inter Partes* Review, Case IPR2017-00117 (attached as Ex. B to the Declaration of Armin Ghiam in Support of Defendants Alstom Transportation, Inc. and Kawasaki Rail Car, Inc.'s Joint Responsive Claim Construction Brief ("Ghiam Decl."))).[1]

In general, the claims of the '602 patent are directed to the entirely unremarkable concept of a placing a known video display system in a subway car in the area where the car's sidewall meets the ceiling, and angling the video display downward so that seated passengers can see it. The claims also require that the video display be "substantially flushed" with adjacent surfaces. In short, the '602 patent claims nothing more than the placement of already existing video display systems in a subway car.

The patentee has repeatedly argued to the Patent Office that the "substantially flushed" limitation (or variations thereof) distinguishes his claims over the prior art.  However,

---

[1]  KRC's IPR petition explained that the use of video monitors in train and subways was well-known by the time patentee filed his patent application, as was flush mounting of video monitors in a variety of applications.  KRC has also petitioned for *inter partes* review of the remaining claims asserted in this action (claims 5, 7, and 11-29 of the '602 patent), and has demonstrated why those additional claims are also invalid in view of prior art not previously considered by the Patent Office.  (*See* Petition for *Inter Partes* Review, Case IPR2017-01036 (Ghiam Decl. Ex. C)).

"substantially flushed" is a term of degree that fails to put the public on notice as to what is and is not covered by the asserted patent monopoly, making the claims invalid for failure to meet the definiteness standard described in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120 (2014). "Substantially flushed," along with other terms addressed below, should be held indefinite because the patent provides no standard by which they could be judged.

As to the terms that are capable of construction, during prosecution and reexamination of the '602 patent, the patentee made significant statements and disclaimers that affect the scope of some claim terms. In some instances, the patentee acted as his own lexicographer by defining claim terms in particular ways, and those terms should be construed accordingly. But, plaintiff has not proposed a construction for any of the disputed terms, and instead is contending that they all should be given their "ordinary and customary meaning." (D.I. 45 at 4-5).

For the reasons discussed below, Defendants respectfully request that the Court find certain asserted claims of the '602 patent indefinite and therefore invalid, and that the Court adopt Defendants' proposed constructions for the remaining disputed terms.

## II.    FACTUAL BACKGROUND

### A.    Brief Description of the '602 Patent

The '602 Patent is directed to a video display system for subway cars with monitors at the junction of the sidewall and the ceiling. (D.I. 45, Ex. A, at Abstract, Fig. 1A, Fig. 1B). The monitors are either CRT-type or LCD-type, both of which were well-known in the art at the time of the '602 patent. (*Id.* at 4:14-32, 5:35-48). A video signal source unit connected to the monitors is broadly described as encompassing known video disk players, television receivers, and the like. (*Id.* at 2:15-42).

The specification states that at the "junction of the wall and ceiling of the subway car, [] there is commonly provided a concavely curved segment of internal wall." (*Id.* at 4:1-3).

Placing screens at this location results in screens "disposed opposite to sets of inward facing seats 16, and angled downwardly for ease of viewing of passengers 24 seated in such inward facing seats 16."  (*Id.* at 4:64-5:4, Fig. 2).



According to the specification, "a subway car is normally constructed so that it has a cavity wall, defined between its outer structural shell and its inner lining wall" and "video display monitors in the system of the invention are suitably mounted in the cavity wall."  (*Id.* at 3:55-61).  The specification states that "[t]he space between the ceiling housing 38 and the top of the [structural] pillars 30 is normally occupied by back lit advertising panels 40.  Removal of appropriate portions of these panels 40 provides space for location of video monitors 22, according to the preferred embodiment of the invention."  (*Id.* at 5:5-20, Fig.3).



FIG. 3

With reference to Fig. 4a, the specification explains that instead of using a known CRT video monitor, one could use another known video monitor (LCD-based) that has a thin cross-section profile.  (*Id.* at 5:35-40).  "Accordingly, [the LCD-based video monitor] can be moved towards the ceiling so that its viewing screen is substantially flush with or even behind the light panel 40."  (*Id.* at 5:40-42).  This manner of mounting the LCD-based video monitor purportedly provides "a better aesthetic appearance to the inside of the subway car as a whole."  (*Id.* at 5:36-43).  The '602 patent uses the phrase "substantially flush" only with respect to the LCD-based video monitors and only in relation to Fig. 4a.



FIG. 4a

In one embodiment, monitors are covered with a rigid transparent cover unit shaped to coincide with the shape of the internal wall of the car at the mounting location. (*Id*. at 3:64-67, 5:27-30, 5:57-59, 6:24-29). The monitor, "including the cover unit if used, is suitably housed in a stainless steel or strong plastic casement, designed to appear integral with the subway car, without visible edges or protuberances, and matching the materials and colours of the subway car interior." (*Id.* at 4:8-13).

### B.      Prosecution History of the '602 Patent

The application that resulted in the '602 Patent originally contained 16 claims, of which claims 1 and 10 were independent. (Ghiam Decl. Ex. D at 119-21). Application claim 13 was objected to as being dependent upon a rejected base claim, but the examiner indicated that it would be allowable if rewritten in independent form. (*Id.* at 187). Claim 13, as rewritten, contained all of the limitations that now appear in claim 1 of the '602 Patent. (*Id.* at 235-36). The patent originally issued with only 7 claims, of which only claim 1 is an independent claim. (*Id.* at 307).

### C.      Reexamination History of the '602 Patent

On August 16, 2011, patentee filed an *ex parte* Request for Reexamination of claim 1 of the '602 Patent and argued, *inter alia*, that the combination of four references disclosed every limitation of claim 1 except "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car." (Ghiam Decl. Ex. E at 29-34). The examiner agreed and instituted the proceeding. (*Id.* at 107-13). In the first office action, the examiner found that the references (including various combinations) disclosed every limitation of the claims, including the "substantially flushed" limitation, and rejected claim 1 as unpatentable. (*Id.* at 120-46).

Patent Owner attempted to traverse these rejections and also added claims 8-30. (*Id.* at 159-77). In the final office action, the examiner maintained the rejection of claim 1, and rejected newly added claims 8-18 and 21-30. (*Id.* at 181-301). Claims 19-20 were objected to as being dependent upon a rejected base claim, but deemed allowable if rewritten in independent form. (*Id.* at 287). Patent Owner conducted an examiner interview pursuant to which an agreement was reached, (*id.* at 305-06), and Patent Owner then amended claims 8, 9, 15, and 20-23 and canceled claim 19, (*id.* at 313-35). Subsequently, an advisory action issued in which claims 8-18 and 20-30 (which correspond to claims 19-29 in the certificate of reexamination) were confirmed. (*Id.* at 347-71). For independent claims 8 and 21 (which corresponds to claim 20), the examiner found that the prior art of record did not disclose "a plurality of transparent cover units" with "each of the transparent cover units being either flush or substantially flushed with the adjacent transitional wall portion." (*Id.* at 367-68). For independent claim 15, the examiner found that the prior art of record did not disclose the claimed "back lit panel disposed on the transitional segment disposed adjacent the ceiling and a respective wall." (*Id.*).[2] Claim 1 remained rejected. (*Id.*).

Patent Owner appealed the rejection of claim 1 to the PTAB, which reversed the examiner's rejection. (*Id.* at 383-97, 474-81). The PTAB construed "substantially flushed" as "a surface which is to a great extent even with an adjoining one," and concluded that the specific combinations of references before the PTAB did not disclose "the screen of the monitor substantially flushed with the adjacent wall surface structure of the car." (*Id.* at 479). A reexamination certificate issued on January 29, 2015. (*Id.* at 501).

---

[2] KRC's pending IPR petition explains how the prior art that was not before the Patent Office renders even the claims with these additional limitations invalid. (Ghiam Decl. Ex. C).

## III.    CLAIM CONSTRUCTION STANDARD

Claim construction is an issue of law for the Court to decide.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  The Federal Circuit has frequently stated that "the words of a claim are generally given their ordinary and customary meaning," and that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (internal citation omitted).  To ascertain the meaning of claims, courts should consider three primary sources: the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d  at 979 (internal citation omitted).  The Court may also consider extrinsic evidence, which includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Id.* at 980.

Definiteness "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus*, 134 S.Ct. at 2129.  A claim must be clear enough in scope to allow a person of ordinary skill in the art to determine whether or not a particular product or method infringes.  *Morton Int'l, Inc. v. Cardinal Chem. Co*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).

In an indefiniteness analysis, "[w]hen a word of degree is used, the district court must determine whether the patent's specification provides some standard for measuring that degree."  *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed.Cir.2005); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014); *see also Endo Pharms. Inc. v. Watson Labs., Inc.*, No. 2:13-cv-192, 2014 U.S. Dist. LEXIS 84804, at *24 (E.D. Tex. June 23, 2014) (Gilstrap, J.) (recognizing that the Federal Circuit has required "an 'objective

anchor' that identifies the bounds of the claim").  For example, one court has held a claim indefinite because the terms "highly modulated" and "smooth bumps" did not have any objective anchor or standard for measuring "smoothness" or the difference between a mere modulated surface and a highly modulated surface.  *Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-00391-LED, 2012 WL 2872121, at *12, *14-15 (E.D. Tex. July 12, 2012).

 Additional specific claim construction principles relevant to the disputed claim terms are discussed in more detail below.

## IV. THE INDEFINITE TERMS[3]

### A. "substantially flushed with the adjacent wall surface structure of the car"; and "substantially flush with the adjacent surface structure of the transitional wall portion"

| Applicable Claims | Blair's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 1, 8 | Ordinary and customary meaning | Indefinite |

 As used in the asserted claims, these terms ostensibly require that certain surfaces associated with the video monitor be "substantially flush" or "substantially flushed" with adjacent wall surfaces.  However, these terms are indefinite because the intrinsic record does not provide any objective standard for defining what the phrase "substantially flushed" means in the context of the '602 patent.  The boundaries of these terms can change depending on how one subjectively defines and perceives the term "substantially," which is a term of degree.

---

[3] During the claim construction process, the Defendants initially proposed "video signal source system," "the program," "video system subway car," and "any of claim 1" as terms that were indefinite.  (*See* D.I. 44).  Upon further consideration, the Defendants no longer believe that these terms need to be the subject of any claim construction briefing.  Defendants reserve their right to contest the validity of claims containing these terms on any applicable grounds, including indefiniteness, at an appropriate time in this case.

"[A] term of degree fails to provide sufficient notice of its scope if it depends 'on the unpredictable vagaries of any one person's opinion.'" *Interval Licensing*, 766 F.3d at 1371 (Fed. Cir. 2014) (quoting *Datamize*, 417 F.3d at 1351, 1350).  The Supreme Court has recently emphasized that it is not sufficient that "a court can ascribe <u>some meaning</u> to" a term.  *Nautilus*, 134 S.Ct. at 2130 (emphasis added).   Rather, "[t]he claims, when read in light of the specification and the prosecution history, must provide <u>objective boundaries</u> for those of skill in the art."  *Interval Licensing*, 766 F.3d at 1371 (emphasis added) (affirming the district court's finding of indefiniteness when "the claim language offer[ed] no objective indication of the manner in which" the claim term was applied).

The term "flush" means "having or forming a continuous plane or unbroken surface." (*See* Ghiam Decl. Ex. F (Merriam-Webster dictionary)).  But, the '602 patent does not provide any objective indication of the extent that the relevant subway car surfaces have to be "flushed" (or "flush") to constitute being "substantially flushed" (or "substantially flush").  Indeed, there is only one instance of the term "substantially" used in conjunction with the term "flush."  With reference to Fig. 4a, the specification states that instead of using a CRT video monitor, one could use an LCD-based video monitor which has a thin cross-section profile.  (D.I. 45, Ex. A, at 5:35-40).  "Accordingly, [the LCD-based video monitor] can be moved towards the ceiling so that its viewing screen is <u>substantially flush</u> with or even behind the light panel 40."  (*Id.* at 5:40-42).

This single sentence, however, provides no objective boundaries which could guide one of ordinary skill in the art on how to design a video display system without infringing the patent. While the meaning of flushed is readily understood, there is no guidance or other information (*e.g.*, measurements or range) to provide notice to one of ordinary skill in the art as to what is claimed and what is not claimed by the term "substantially flushed."  For example, one of

ordinary skill in the art is left to wonder whether a display screen that is offset by 5 millimeters (or 10mm or 20mm or 30mm) relative to an "adjacent wall surface structure" is "substantially flushed." The specification simply does not delineate any objective boundaries for these terms.

The Federal Circuit has recognized that "a patent which defines a claim phrase through examples may satisfy the definiteness requirement." *Interval Licensing*, 766 F.3d at 1373 (emphasis added) (citation omitted). However, the Federal Circuit has admonished cherry-picking of a single example as the exclusive definition for a facially subjective claim term. *Id.* at 1373. According to the '602 patent, the thin cross-section profile of the LCD-based video monitors make it possible to move the LCD-based video monitors "towards the ceiling so that its viewing screen is substantially flush with or even behind the light panel." In other words, the specification describes "substantially flush" mounting of the monitors only with respect to the LCD-based video monitors. The only drawing which purportedly displays this embodiment is Fig. 4a, in which the LDC-based video monitor 22A and transport screen 44A are arranged where the light panel 40 would have been mounted.



(D.I. 45, Ex. A, at Fig. 4a). But this drawing does not provide any objective information or definition for one of ordinary skill in the art to determine what is "substantially flushed" (or

"substantially flush") and what is not.  For example, in Fig. 4a, the LDC-based video monitor

22A and the transport screen 44A are placed <u>behind</u> (not "flush" with) the front of the light panel

40.  One of ordinary skill in the art is, at best, left to wonder whether this drawing illustrates the

embodiment which is "substantially flush with … the light panel," but more likely would

conclude that it illustrates the embodiment which is "behind the light panel."  (*Id.* at 5:40-42).

And even if deemed to be the "substantially flush" embodiment, one of ordinary skill in the art

seeking to avoid infringement of the '602 patent would still not know how far in front of or

behind the light panel to place the monitor so as to not be "substantially" flushed.  This single

example in the '602 patent at best has a "hazy relationship" with the claims, including the terms

"substantially flushed" (or "substantially flush").  *Interval Licensing*, 766 F.3d at 1372 ("The

hazy relationship between the claims and the written description fails to provide the clarity that

the subjective claim language needs.").  As such, it does not provide an exclusive definition for

these terms and fails to "provide the clarity that the specification lacks."  *Id.* at 1373.

Similarly, the prosecution and reexamination histories of the'602 patent do not provide

any clarity for these terms.  If anything, the record suggests that these terms were confusing to

the patent examiners as well.  For example, in the non-final office action of November 19, 2002,

the examiner objected to claim 13, which corresponds to issued claim 1.  (Ghiam Decl. Ex. D at

185).  Specifically, the non-final office action stated that "the term 'substantially' is not definite

as it can describe varying degrees of "flush.'"  (*Id.*).  In response, the patentee provided a generic

argument as follows:

> According to the MPEP, the usage of the word "substantially" does not
> automatically render the claim indefinite. When a term of degree is present, it
> should be determined whether a <u>standard</u> is disclosed or whether one of ordinary
> skill in the art would be apprised of the scope of the claim. Applicant respectfully
> submits that Figs. 4 and 4a, and the disclosure in the second paragraph of page 11,

for example, sufficiently disclose the meaning of "flush" recited in claim 13 such
that one of ordinary skill in the art would be apprised of the scope of the claim.

(*Id.* at 237).  Although the patentee recognized that a "standard" was needed for one of ordinary

skill to determine the scope of "substantially," the patentee did not provide any such standard.

Similarly, in the office action of April 25, 2012 during the reexamination, the examiner

questioned whether the embodiment depicted in Fig. 4a could even be "substantially flushed."

(Ghiam Decl. Ex. E at 207).  Regarding the word "flushed" in claim 21 (corresponding to issued

claim 20), the examiner stated:

> In Figure 4A, Owner explicitly discloses the monitor 22A being behind the light
> panel 40 (see Figure 4A above). Owner alludes to the monitor 22A being
> "substantially flush", however, <u>never provides explicit disclosure of the
> embodiment</u>…. Furthermore, Owner never defines the term "flushed" and only
> alludes to the disclosure of "substantially flushed" in light of Figure 4A. <u>Figure
> 4A clearly does not show the embodiment of the screen being "substantially
> flushed" with the adjacent wall surface structure</u> and, additionally provides
> evidence to the fact that the screen of the display monitor can never have or form
> a continuous plane or unbroken surface 1 with the adjacent wall surface structure,
> but can only form a surface that is offset therefrom or "substantially flushed", in
> light of the Owner's instant disclosure.

(*Id.*).  Patentee apparently overcame this rejection by reaching an agreement with the examiner

during a telephonic interview.  (*Id.* at 306, 318-319).  Notably, in distinguishing over the prior

art, patentee repeatedly stated that the prior art of record "clearly protrudes away from the

adjacent wall surface" and emphasized that Fig. 4a of the patent has "<u>no protrusion</u> of the

display."  (*Id.* at 323 (emphasis added)).  In characterizing Fig. 4a of the '602 patent as having

"no protrusion" in order to avoid the prior art, the patentee has implied (if not expressly deemed)

that "substantially flushed" in fact means the same thing as "flushed" – *i.e.*, no protrusion at all.

Accordingly, if patentee asserts that the term "substantially flushed" means anything other than surfaces that have no protrusion at all, the claim terms should be held indefinite.[4]

In its Decision on Appeal, the PTAB indicated that "substantially flush" meant a "surface which is to a great extent even with an adjoining one." (*See* Ghiam Decl. Ex. E at 479). However, this meaning is not controlling here because the PTAB is required to use a different claim construction standard than this Court. Specifically, the PTAB applies the "broadest reasonable interpretation" standard to unexpired patents, *In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008), whereas district courts must adhere to the claim construction standard enunciated in *Phillips*, which requires consulting the intrinsic evidence and any statements and disclaimers made before the Patent Office, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The PTAB's proposed meaning therefore does not impart any clarity or definiteness to the term.[5] One of ordinary skill in the art still would not know when or under what conditions one surface would be deemed to be "to a great extent even" with an adjoining one.[6]

---

[4] If the Court construes this term, Defendants propose that "substantially flushed with the adjacent wall surface structure of the car" and "substantially flush with the adjacent surface structure of the transitional wall portion" be construed as "exactly even with all adjacent wall surface structures of the car" and "exactly even with all adjacent surface structures of the transitional wall portion," respectively. Otherwise, as explained, the upper bound of this term is entirely unclear.

[5] Claim 1 was the only claim before the PTAB during the appeal, and the issue of indefiniteness of the term "substantially flushed" was not addressed by the PTAB.

[6] As explained by KRC in its first IPR petition, a claim can be held obvious in view of prior art, even if the full scope of the claims is not reasonably certain as required by the definiteness standard. *Nautilus*, 134 S.Ct. at 2124. In evaluating obviousness, what matters is whether a claim's scope encompasses that which is obvious—not whether the full reach of the claim is reasonably certain, the latter requirement being one of definiteness.

Because the claims, specification, and prosecution and reexamination histories of the '602 patent are devoid of any disclosures which could objectively guide one of ordinary skill as to the boundaries of these limitations, the court should find these terms indefinite.

**B.   "a ceiling adjoining the sidewalls"; "at the junction of the sidewall and ceiling"; and "at the junction of the sidewall and the ceiling"**

| Applicable Claims | Blair's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 1, 8, 15, 20 | Ordinary and customary meaning | Indefinite |

The Court should find the terms "a ceiling adjoining the sidewalls," "at the junction of the sidewall and ceiling," and "at the junction of the sidewall and the ceiling" indefinite.  Each independent claim of the '602 patent recites the terms "a ceiling adjoining the sidewalls," and a "junction" of the ceiling and the sidewall.  Defendants agree with Blair that these terms should have their ordinary and customary meanings, which are:

> **ceiling**:  the overhead inside lining of a room.

> **sidewall**:  a wall forming the side of something.

> **adjoining**:  touching or bounding at a point or line.

> **junction**:  a place or point of meeting.

(Ghiam Decl. Exs. G, I, J, K).  However, because the '602 patent does not inform one of ordinary skill in the art how to delineate between the "ceiling," the "sidewall," and the "junction," these terms are indefinite.

To be definite, a claim must provide "clear notice of what is claimed, thereby appris[ing] the public of what is still open to them."  *Interval Licensing*, 766 F.3d at 1370 (quoting *Nautilus*, 134 S.Ct. at 2129).  As described above, Figure 4a of the '602 patent illustrates the only disclosed embodiment of the asserted claims.  Given their ordinary meanings, the public would know that the "ceiling" must comprise at least part of the overhead structure

and that the "sidewall" must comprise at least part of the side structure.  However, it is

ambiguous as to what portions of the remaining structure in Figure 4a are part of the ceiling or

the sidewall.  As examples, each of the three lines shown below could conceivably qualify as the

"junction" of the ceiling and the sidewall.



(D.I. 45, Ex. A, at Fig. 4(a) (annotations added)).  The specification and file history do not

provide any guidance to resolve this ambiguity.  The claims are thus indefinite because they do

not apprise the public of what is still open to them.  *Interval Licensing*, 766 F.3d at 1370

(*quoting Nautilus*, 134 S.Ct. at 2129).  Indeed, claims 1 and 20 require that the monitors be

"mounted at the junction of the sidewall and the ceiling."  Assuming that the red line below

marks the "junction," a member of the public could avoid the "mounted at the junction"

limitation by using smaller monitors as depicted below:



FIG. 4a

However, because the claims do not provide clarity as to where the "junction" is, the public is not apprised as to whether this configuration is open to them, rendering claims 1 and 20 indefinite. *Interval Licensing*, 766 F.3d at 1370. Put another way, the claims are indefinite because a member of the public wishing to avoid infringement of the '602 patent would not clearly know where he or she could – or could not – place the displays so as to avoid installing them "at the junction" of the sidewall and ceiling.

Independent claims 8 and 15 are somewhat more restrictive as to the location of the "junction," but these claims are still indefinite. Claim 8 requires that the sidewalls comprise a "transitional wall portion" and claim 15 requires that the sidewalls comprise a "transitional segment." Thus, each of these claims appears to require that the sidewall must comprise at least part of the curved structure of the outer shell of the subway car. Claim 8 further requires that the monitors be "disposed within the transitional wall portion." Similarly, claim 15 requires that the monitors be "mounted within the transitional segment." Assuming that the red line below marks the "junction," a member of the public could avoid the "disposed within the transitional wall portion" and "mounted within the transitional segment" limitations by using a smaller monitors disposed or mounted in the <u>ceiling</u> as depicted below:



FIG. 4a

Because the claims provide no clarity as to where the "junction" is, the public is not

apprised as to whether this configuration is open to them, rendering claims 8 and 15 indefinite.[7]

*Interval Licensing*, 766 F.3d at 1370.

### C.  "substantially contiguous with an exterior surface of said transitional segment"

| Applicable Claims | Blair's Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| 15 | Ordinary and customary meaning | Indefinite |

This Court should construe "contiguous" to be synonymous with "flushed" and "flush."

There is no discussion in the '602 patent's specification, the prosecution history, or the

reexamination history, of the term "contiguous," let alone any discussion of the difference

between "flushed," "flush," and "contiguous."  Indeed, this term appears nowhere in the '602

patent at all except in the body of claim 15.  Therefore, construing "contiguous" synonymous

with "flushed" and "flush" is commensurate with the scope of any alleged disclosure of this

term.  As discussed before, the term "substantially" is a term of degree.  For the same reasons

---

[7] Alternatively, and to the extent any of these terms are construed, Defendants propose that "adjoining" be construed as "touching or bounding at a point or line."

discussed in section III.A, the specification, the prosecution history, or the reexamination history

of the '602 patent do not provide any objective boundaries for this limitation, and as such, this

Court should construe this term as indefinite.

### D.   "a transitional wall portion" and "a transitional segment"

| Applicable Claims | Blair's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 8, 10, 11, 15, 16, 19, 23 | Ordinary and customary meaning | Indefinite |

The Court should find the terms "transitional wall portion" and "transitional segment"

indefinite because they are not supported or reasonably clearly defined by the specification.

As the Supreme Court explained in *Nautilus,* a patent does not satisfy the definiteness

requirement of § 112 merely because "a court can ascribe <u>some</u> meaning to a patent's claims."

*Nautilus*, 134 S.Ct. at 2130; *see also, Interval Licensing*, 766 F.3d at 1371.  The claims, when

read in light of the specification and the prosecution history, must provide objective boundaries

for those of skill in the art. *See id*. at 2130 & n.8 (indicating that there is an indefiniteness

problem if the claim language "might mean several different things and 'no informed and

confident choice is available among the contending definitions'" (internal citation omitted); *see*

*also Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("The

fact that [the patent holder] can articulate a definition supported by the specification . . . does not

end the inquiry.  Even if a claim term's definition can be reduced to words, the claim is still

indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully

precise claim scope.").

Here, the term "transitional" as used in conjunction with the various wall or celling

portions as used in the subject claim terms has no clear meaning to a person of ordinary skill in

the art.  The specification does not use these terms, nor does it include a discussion from which a

person of ordinary skill in the art could reasonably understand which portion of a subway wall or

ceiling is necessarily "transitional."  The Merriam-Webster dictionary defines "transitional" as a

"passage from one state, stage, subject, or place to another."  (*See* Ghiam Decl. Ex. H).

However, because there is no discussion of these terms in the specification it is unclear what

comprises a "transitional" wall portion or segment.  Given this ambiguity, it would be unclear to

a person of ordinary skill in the art where to place a video display monitor in order to avoid

infringement of the relevant '602 patent claims.

Because the specification and the claims do not provide clarity as to the "transitional"

portion or segment of the wall, the terms should be held indefinite.

## V.   CLAIM TERMS TO CONSTRUE

### A.   "a video signal source unit"

| Applicable Claims | Blair's Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| 1, 5, 7, 8, 15, 17, 20, 28 | Ordinary and customary meaning | "player units for playing pre-recorded video material, such as computer-based digital video recorders (including CD-ROM players), video tape players and video disk players, and television receivers for receiving live or pre-recorded broadcast television signals from a remote transmitter and supplying these to the video display monitors mounted in the subway cars" |

The Court should construe the term "a video signal source unit" to mean "player units for

playing pre-recorded video material, such as computer-based digital video recorders (including

CD-ROM players), video tape players and video disk players, and television receivers for

receiving live or pre-recorded broadcast television signals from a remote transmitter and

supplying these to the video display monitors mounted in the subway cars."

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Id*.  Here, the patentee set out a definition for "a video signal source unit" which is verbatim what Defendants propose as the construction.  (D.I. 45, Ex. A, at 2:15-22).  Blair's proposal that the term should be construed simply as "ordinary and customary meaning" should be rejected under Federal Circuit precedent.  *Thorner*, 669 F.3d at 1365.

**B.**      **"a plurality of transparent cover units that cover respective ones of the video display monitors"**

| Applicable Claims | Blair's Proposed Constructions | Defendants' Proposed Constructions |
|:---:|:---|:---|
| 8 | Ordinary and customary meaning | "a plurality of transparent cover units, each covering only one video display monitor" |

The Court should construe "a plurality of transparent cover units that cover respective ones of the video display monitors" as "a plurality of transparent cover units, each covering only one video display monitor."  In other words, the claim language requires a one-to-one ratio between transparent cover units and video display monitors.

This proposed construction is based on the words "respective ones" in the phrase.  To construe this phrase broadly enough to cover a different ratio between cover units and video display monitors would require completely ignoring the words "respective ones," and thus would run afoul of claim construction principles.  The figures in the patent also support this proposed

- 20 -

construction.  (*See, e.g.,* D.I. 45, Ex. A, at Figs. 5 and 6 (indicating one "clear transparent

polycarbonate shield" covering one "screen 46").)

### C.      "back lit panel"

| Applicable Claims | Blair's Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| 11, 15, 19, 23 | Ordinary and customary meaning | "a non-electronic display panel illuminated by a light source behind it" |

The phrase "back lit panel" should be construed to mean "a non-electronic display panel

illuminated by a light source behind it."  The concept of the panel being printed is meant to

exclude an electronic display panel (*e.g.*, a back lit LCD display panel).

With reference to Figure 3 of the '602 patent, the specification provides that "[t]he space

between the ceiling housing 38 and the top of the [structural] pillars 30 is normally occupied by

back lit advertising panels 40.  Removal of appropriate portions of these panels 40 provides

space for location of video monitors 22, according to the preferred embodiment of the

invention."  (D.I. 45, Ex. A, at 5:15-20, Fig. 3).  This is the only disclosure of "a back lit panel"

in the entire '602 patent specification, and it supports this proposed construction of the term,

specifically, one that encompasses a printed (*e.g.*, advertising) panel, rather than an electronic

display panel.

This claim term was also discussed in the reexamination proceeding, in which the patent

owner added the new claims that include this term.  The examiner allowed the new claims in part

because he found that the prior art of record, *i.e.*, including Minesaki, Amano, and Maekawa did

not disclose a back lit panel.  Since Maekawa explicitly discloses an LCD display (*see, e.g.,*

Ghiam Decl. Ex. E at 66), and the patent owner introduced and obtained the new claims despite

that disclosure, it would appear that both the examiner and the patent owner did not construe "a

back lit panel" to encompass a back lit LCD display.  The examiner allowed the new claims upon

finding that the prior art of record did not disclose a back lit panel, and thus the patent owner should be estopped from arguing that this term can encompass an electronic display panel.

**D.**     **"flushed with the adjacent wall surface structure of the car"; and "flushed within the adjacent wall structure such that it contains no protuberances"**

| Applicable Claims | Blair's Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| 20, 22 | Ordinary and customary meaning[8] | "exactly even with the subway car wall surface on all sides" |

The Court should construe the terms "flushed with the adjacent wall surface structure of the car" and "flushed within the adjacent wall structure such that it contains no protuberances" to mean "exactly even with the subway car wall surface on all sides." As set forth below, the Defendants' proposed definition is consistent with the use of this term in the specification and file history, as well as the accepted dictionary meaning of "flush."

A court may depart from the words of a claim's ordinary and customary meaning "when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Merriam-Webster dictionary defines "flush" as "having or forming a continuous plane or unbroken surface." (Ghiam Decl. Ex. F) Similarly, during the appeal of the examiner's decision in the reexamination proceeding, the PTAB noted that the dictionary definition of the term "flush" is "a surface exactly even with an adjoining one[.]" (Ghiam Decl. Ex. E at 479 (citation omitted)). However, in order to overcome the examiner's rejections of the claims over the prior art, the patent owner made disclaimers to the effect that "substantially flushed" means

---

[8] The Plaintiff has not proposed any definition, except to say "ordinary and customary meaning." While it is unclear exactly what the Plaintiff means by this, to the extent that the plain and ordinary meaning of "flush" is the same as the Defendants' proposal, there may not be any difference between the parties' proposed definitions of this term.

"no protrusion of the display."  (*See, e.g.*, *id.* at 165-166 (distinguishing over the prior art

because it "clearly protrudes away from the adjacent wall surface" and emphasizing that Fig. 4a

of the patent has "no protrusion of the display"); *id*. at 168, 169-170; 323, 326, 329; 386, 390,

391.  Certainly if a "substantially flushed" display includes "no protrusion of the display," then a

"flushed" display includes "no protrusion" as well.

Any protrusion of a display monitor on any of the display's sides would depart from the

patentee's statements characterizing the invention as having "no protrusion of the display."

Thus, to fully effectuate the patentee's disclaimers during the prosecution and reexamination of

the '602 patent, these limitations should be construed to mean "exactly even with the subway car

wall surface on all sides."

E.      **"self-contained wiring cabling system"**

| Applicable Claims | Blair's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 7 | Ordinary and customary meaning | a wiring cabling system which can function independent of track, tunnel, or control system installations. |

The Court should construe "self-contained wiring cabling system" as "a wiring cabling

system which can function independent of track, tunnel, or control system installations."[9]  Claim

7 recites "[t]he subway car of any of claim 1 including a self-contained wiring-cabling system

connecting the video monitors to the video signal source unit."  (D.I. 45, Ex. A at claims)

(emphasis added)).

_____

[9] During the parties' exchange of claim terms for construction, Defendants originally proposed
that this term be construed to be "a standalone wiring cabling system."  (*See e.g.*, D.I. 44).
However, upon further consideration Defendants believe that the currently proposed construction
is clearer and more aligned with the teaching of the specification.

The Defendants' proposed construction is supported by the teaching of the '602 patent. Specifically, the specification states that the "video signal source unit" may be located in the same subway car as that in which the monitor or monitors are located, or in adjacent or remote cars of the same train. (*See id.* at 2:30-42.   Moreover, "[a]n individual subway car can be equipped with its own video signal source unit, connected to a plurality of monitors mounted at different, appropriately chosen locations along the length of the subway car. Alternatively, one central video signal source unit can be located in one car of subway train, and connected to monitors in some or all of the cars of the train, to provide a central video signal source unit for the train." (*Id.*).   Finally, and importantly, the specification describes that the video signal source unit and the monitors are "interconnected by suitable electrical cable systems which are self-contained within the subway car.  In this way, new subway cars can be built with the video system or parts thereof installed, and usable on substantially any transit system, since the operation of the video system is independent of any previously installed track, tunnel or control systems." (*See id.* 2:59- 3:4 (emphasis added)).   Accordingly, "self-contained wiring cabling system" should be construed in view of the specification and given the definition proposed by Defendants.

**F.     [wherein an external surface of the longitudinal opposed sidewall, the exterior surface of said transitional segment and an external surface of the ceiling comprise a] "blended contour"**

| Applicable Claims | Blair's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 16 | Ordinary and customary meaning | The sidewall, transitional segment, and ceiling surfaces flow one into the other smoothly as a continuum and without any perceptible interruption or separation. |

The Court should construe the term "blended contour" as "the sidewall, transitional segment, and ceiling surfaces flow one into the other smoothly as a continuum and without any perceptible interruption or separation." [10]

To the extent that the '602 patent specification references the terms "blended" and "contour" at all, it does so in only one place – column 4, lines 1-13.  There, the specification states that "where there is commonly provided a concavely curved segment of internal wall, the transparent cover unit is suitably similarly concavely curved, so that it can be mounted <u>as a continuum</u> with the internal walls and <u>blended to contours</u> [sic] thereof…"  (*Id.* at 4: 2-6 (emphasis added)).  The specification further explains that the "entire structure of the monitor, including the cover unit if used, is suitably housed in a stainless steel or strong plastic casement, <u>designed to appear integral</u> with the subway car, <u>without visible edges or protuberances</u>, and matching…the subway car interior."  (*Id.* at 4:8-13 (emphasis added)).  Further support is also found in the specification at Col 5, lns. 57-62, which makes reference to Figure 6 and states that "[t]he shield 44 now <u>blends</u> with forward facing part 48 the exterior skin [sic] and body structure to provide a perhaps more aesthetically appealing arrangement." (emphasis added).

Accordingly, "blended contour" should be construed in view of the specification to mean "the sidewall, transitional segment, and ceiling surfaces flow one into the other smoothly as a continuum and without any perceptible interruption or separation."

---

[10] To the extent that the Court agrees that the term "transitional segment" is indefinite, as set forth above, then this term would be indefinite as well.

Dated: <u>May 17, 2017</u>                              Respectfully submitted,


                                        /s/ Sheila Mortazavi
                                        Sheila Mortazavi
                                        smortazavi@andrewskurthkenyon.com
                                        Zaed M. Billah
                                        zbillah@andrewskurthkenyon.com
                                        Armin Ghiam
                                        aghiam@andrewskurthkenyon.com
                                        ANDREWS KURTH KENYON LLP
                                        One Broadway
                                        New York, NY 10004
                                        Telephone: (212) 425-7200
                                        Facsimile: (212) 425-5288

                                        *Attorneys for Defendant*
                                        *Kawasaki Rail Car, Inc.*

                                        /s/ Steven M. Coyle
                                        Steven M. Coyle, Esq. (No. SC0730)
                                        scoyle@cantorcolburn.com
                                        Tasia E. Hansen, Esq. (Pro Hac Vice)
                                        thansen@cantorcolburn.com
                                        CANTOR COLBURN LLP
                                        20 Church Street, 22nd Floor
                                        Hartford, CT 06103
                                        Telephone: (860) 286-2929
                                        Facsimile: (860) 286-0115

                                        *Counsel for Defendant*
                                        *Alstom Transportation, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served on <u>May 17,</u> <u>2017</u>, in its entirety, via e-mail on the following:


Dariush Keyhani
dkeyhani@meredithkeyhani.com
MEREDITH & KEYHANI, P.L.L.C.
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 380-1325
Fax: (212) 202-3819


/s/ Armin Ghiam