# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SCOTT BLAIR,

                         *Plaintiff,*

      v.

ALSTOM TRANSPORTATION, INC.
AND KAWASAKI RAIL CAR, INC.,

                      *Defendants.*

CA No. 1:16-cv-03391-PAE-JLC

# MEMORANDUM OF LAW IN SUPPORT OF
# KAWASAKI RAIL CAR, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS,
# A FINDING OF EXCEPTIONAL CASE, AND ATTORNEYS' FEES AND COSTS
# PURSUANT TO 35 U.S.C. § 285 AND FED. R. CIV. P. 54(D)

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND .................................................................................4

    A.  Blair's Litigation Conduct ...........................................................................4

    B.  The '602 Patent ...........................................................................................7

    C.  The PTAB Confirmed Unpatentability In the First IPR on May 2, 2018, and Blair Had No Reasonable Basis for Appeal .............................................9

    D.  Despite the Adverse Decision In the First IPR Rejecting the Same Patentability Arguments, Blair Continued Litigating the Second IPR ............................13

III.  ARGUMENT ......................................................................................................15

    A.  This Case Should Be Dismissed with Prejudice.........................................15

        1.  Applicable Legal Standards for Rule 12(c) Motions .......................15

        2.  This Case Should Be Dismissed With Prejudice For Failure To State a Claim Upon Which Relief Can Be Granted......................................15

        3.  Alternatively, If the Court Does Not Dismiss the Case For Failure to State a Claim, the Court Should Dismiss the Case As Moot .....................17

    B.  Kawasaki Is the Prevailing Party...............................................................17

    C.  As the Prevailing Party, Kawasaki Should Be Awarded its Taxable Costs Under Fed. R. Civ. P. 54(d)(1) .............................................................................18

    D.  This Case Is Exceptional, and Kawasaki Should Be Awarded its Attorneys' Fees and Non-Taxable Costs Incurred After May 2, 2018 .................................19

        1.  Applicable Legal Standards ...........................................................19

        2.  This Case Is Exceptional................................................................20

            a.  Blair's Patent Infringement Claim Was Objectively Baseless After the PTAB's May 2, 2018 Decision In the First IPR.............................20

            b.  Blair's Litigation Conduct Further Supports an Exceptional Case Finding ..............................................................................................24

            c.  The Totality of Circumstances Supports an Exceptional Case Finding and an Award of Fees to Kawasaki..........................................26

        3.  Kawasaki's Requested Award of Fees and Non-Taxable Costs Is Reasonable ....................................................................................27

IV.  CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

**CASES**

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*
　725 F.2d 1350 (Fed. Cir. 1994) ......................................................................21

*B.E. Tech., L.L.C. v. Facebook, Inc.*
　940 F.3d 675 (Fed. Cir. 2019) ...........................................................16, 17, 18

*Balance Point Divorce Funding, LLC v. Scrantom*
　305 F.R.D. 67 (S.D.N.Y. 2015) ......................................................................18

*Blum v. Stenson*
　465 U.S. 886 (1984)........................................................................................29

*Central Soya Co. v. Geo. A. Hormel & Co.*
　723 F.2d 1573 (Fed. Cir. 1983) ......................................................................30

*CRST Van Expedited, Inc. v. E.E.O.C.*
　136 S. Ct. 1642 (2016)....................................................................................17

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*
　2019 U.S. Dist. LEXIS 196994 (S.D.N.Y. Nov. 12, 2019)...................24, 26, 27, 28

*Fogerty v. Fantasy, Inc.*
　510 U.S. 517 (1994)........................................................................................19

*Fresenius USA, Inc. v. Baxter Intern., Inc.*
　721 F.3d 1330 (Fed. Cir. 2013) ...........................................................15, 16, 17

*In re NuVasive, Inc.*
　842 F.3d 1376 (Fed. Cir. 2016) ......................................................................12

*Inland Steel Co. v. LTV Steel Co.*
　364 F.3d 1318 (Fed. Cir. 2004) ......................................................................16

*Innovention Toys v. MGA Entm't*
　2017 U.S. Dist. LEXIS 174580 (E.D. La. Apr. 5, 2017)................................28

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*
　876 F.3d 1372 (Fed. Cir. 2017) ......................................................................27

*IXI IP, LLC v. Samsung Elecs. Co.*
　903 F.3d 1257 (Fed. Cir. 2018) ......................................................................22

*Lumen View Technologies LLC v. Findthebest.com, Inc.*
　811 F.3d 479 (Fed. Cir. 2016) ........................................................................28

*Mathis v. Spears*
    857 F.2d 749 (Fed. Cir. 1988) .................................................................................29

*MaxLinear, Inc. v. CF CRESPE LLC*
    880 F.3d 1373 (Fed. Cir. 2018) ..............................................................................25

*Microsoft Corp. v. i4i Ltd. Partnership*
    564 U.S. 91 (2011).................................................................................................21

*Munchkin, Inc. v. Luv N' Care, Ltd.*
    2018 U.S. Dist. LEXIS 223150 (C.D. Cal. Dec. 27, 2018) ..................20, 24, 25, 28

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
    572 U.S. 545 (2014)........................................................................................passim

*Peschke Map Techs. LLC v. Miromar Dev. Corp.*
    2016 U.S. Dist. LEXIS 50926 (M.D. Fla. Apr. 15, 2016) ......................................16

*PPG Indus., v. Celanese Polymer Specialties Co.*
    840 F.2d 1565 (Fed. Cir. 1988) ..........................................................................4, 28

*Raniere v. Microsoft Corp.*
    887 F.3d 1298 (Fed. Cir. 2018) ..........................................................................17, 18

*Regeneron Pharms., Inc. v. Merus N.V.*
    2018 U.S. Dist. LEXIS 115661 (S.D.N.Y. June 25, 2018) .....................................30

*Sarikaputar v. Veratip Corp.*
    371 F. Supp. 3d 101 (S.D.N.Y. 2019) .....................................................................15

*SAS Institute, Inc. v. Iancu*
    584 U.S. ____ (2018).................................................................................................13

*Taurus IP, LLC v. DaimlerChrysler Corp.*
    726 F.3d 1306 (Fed. Cir. 2013) ..............................................................................20

*ThermoLife Int'l LLC v. GNS Corp.*
    922 F.3d 1347 (Fed. Cir. 2019) ..............................................................................27

*Vehicle Interface Tech. v. Jaguar Land Rover North Am.*
    2015 WL 9462063 (D. Del. Dec. 28, 2015) ...........................................................20

*Winters v. Alza Corp.*
    690 F. Supp. 2d 350 (S.D.N.Y. 2010) .....................................................................15

*Worldwide Home Prods. v. Bed, Bath and Beyond, Inc.*
    2015 U.S. Dist. LEXIS 46569 (S.D.N.Y. Apr. 9, 2015) .........................................30

**FEDERAL STATUTES**

28 U.S.C. § 1920....................................................................................................................18

35 U.S.C. § 285..............................................................................................................passim

**FEDERAL REGULATIONS**

61 Fed. Reg. 30672-01..............................................................................................................3

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................15, 16, 17

Fed. R. Civ. P. 12(c) ...........................................................................................................passim

Fed. R. Civ. P. 12(h)(2) ............................................................................................................15

Fed. R. Civ. P. 54(d) ...........................................................................................................1, 16

Fed. R. Civ. P. 54(d)(1) .....................................................................................................16, 18

Fed. R. Civ. P. 56....................................................................................................................15

Fed. R. Civ. P. 12(d) ................................................................................................................15

## I.      INTRODUCTION

Defendant Kawasaki Rail Car, Inc. ("Kawasaki") respectfully submits this memorandum

of law in support of its Motion for Judgment on the Pleadings, a Finding of Exceptional Case,

and Attorneys' Fees and Costs Pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 54(d).

This is a patent infringement case in which plaintiff Scott Blair ("Blair") has asserted

claims 1-9 and 11-29 of U.S. Patent No. 6,700,602 (the "'602 patent" or "Blair patent").  The

Court stayed the case in June 2017, pending the outcome of two *inter partes* review ("IPR")

proceedings that Kawasaki initiated before the U.S. Patent and Trademark Office's ("USPTO")

Patent Trial and Appeal Board ("PTAB") challenging the patentability of Blair's asserted claims.

(Dkt. 61). All of the challenged claims were found unpatentable by the PTAB—with the PTAB's

decisions either summarily affirmed on appeal (first IPR) or not appealed by Blair (second

IPR)—and the USPTO will cancel the claims in due course. As a result, the PTAB proceedings

have extinguished Blair's cause of action with respect to the asserted claims, and the complaint

must be dismissed under Rule 12(c) either with prejudice for failure to state a claim, or,

alternatively, as moot.  Under either scenario, Kawasaki is the "prevailing party" under

controlling Federal Circuit precedent, and entitled to seek attorneys' fees and costs.

Blair's unreasonable position on the form of dismissal is the latest example of the bad

faith with which he has litigated this case.  Blair has no legitimate basis for seeking a dismissal

without prejudice, and has no legally viable claim left to pursue on his now-expired patent.

Indeed, Blair was willing to dismiss Kawasaki *with* prejudice, but only if Kawasaki agreed not to

seek attorneys' fees and costs. (Ex. V).[1] Having spent three and a half years defending itself

against Blair's objectively meritless claims, Kawasaki refused to waive its rights as the

---

[1] Exhibit citations refer to Exhibits attached to the accompanying declaration of Zaed M. Billah.

prevailing party. Blair then insisted on a stipulated dismissal *without* prejudice, and erroneously represented to this Court that Kawasaki's motion for fees and costs would be barred if the Court dismisses the case without prejudice (Dkt. 99), resulting in unnecessary briefing on what should have been an uncontroversial issue.  The law is clear that Kawasaki's complete success in the IPRs means that a Court-ordered dismissal (with or without prejudice), as opposed to a stipulated dismissal, preserves Kawasaki's rights as the "prevailing party."

As the prevailing party, Kawasaki is entitled to its taxable costs in this case.  In addition, the Patent Act permits attorneys' fees awards to the prevailing party in an "exceptional" case like this one. 35 U.S.C. § 285; *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).  In *Octane*, the Supreme Court explained that an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. The Court should find this case to be exceptional because of the substantive weakness of Blair's claims and the unreasonable manner in which he litigated this case.  The Court also should exercise its discretion to award Kawasaki its attorneys' fees and non-taxable costs incurred since May 2, 2018, the date of the PTAB's decision in the first IPR, after which Blair's continued pursuit of this case was objectively unreasonable.

First and foremost, this case is exceptional because of the substantive weakness of Blair's litigating position in asserting a plainly invalid patent.  Blair's purported invention is the placement of video display screens "substantially flush" with the inner wall of a subway car.  But there was nothing inventive or patentable about this idea when Blair applied for a patent in 1997. Kawasaki explained this in its first IPR petition, and identified prior art references not previously considered by the USPTO that proved unpatentability. Notably, Kawasaki explained that the

U.S. Department of Transportation's Federal Railroad Administration ("FRA") had documented in 1996 the industry consensus about the desirability of flush-mounting components in rail cars when it proposed a rule that would require interior fittings to be "recessed or flush-mounted." (Ex. HH (Passenger Equip. Safety Standards, 61 Fed. Reg. 30672-01, 30672, 30707 (proposed June 17, 1996))).

Given the overwhelming evidence in Kawasaki's petition, this was an open-and-shut case of unpatentability and Blair had no good response. Blair's primary argument was that one of ordinary skill in the art, armed with prior art references showing subway cars with video displays in the same locations claimed by Blair, as well as the proposed FRA rule, would not have been motivated to flush-mount displays in subway cars. Not surprisingly, the PTAB disagreed. When unpatentability was confirmed a year and a half ago in the first IPR, Blair should have stipulated to a dismissal of this case, as Kawasaki urged him to do.  By then, if not before, it was clear that Blair would not prevail on any of his asserted claims. Blair instead continued litigating, forcing Kawasaki to incur significant fees and costs to defend itself against objectively meritless claims.

Second, Blair's litigation conduct—including his recent attempt to thwart Kawasaki's prevailing party status after losing on the merits on all asserted claims—further supports an exceptional case finding.  After initially asserting five claims, Blair added 23 new claims to this case after the first IPR was filed and used that as a basis to oppose a stay of this litigation pending PTAB review.  This added unnecessary complexity and costs to this case and forced Kawasaki to file a second IPR to challenge the 23 new claims.  (Dkt. 33, 48, 58).  Once the PTAB issued a decision adverse to Blair in the first IPR, Blair filed a meritless appeal and continued litigating the second IPR, even though there was no reasonable chance that he would prevail because the claims in the second IPR did not differ from those in the first IPR in any

3

material way.  Rather than reevaluate his case as he was legally obligated to do, Blair forged

ahead with an appeal and the second IPR.

Blair's pursuit of this litigation and the associated IPRs and appeal after the PTAB's May

2, 2018 decision in the first IPR was objectively unreasonable and oppressive, renders this case

"exceptional" under § 285, and warrants an award of attorneys' fees and non-taxable costs.

Finally, the amount that Kawasaki seeks is reasonable and well-documented. Kawasaki

only seeks an award for fees and nontaxable costs incurred since May 2, 2018 for this litigation,

for the appeal of the first IPR, and for litigating the second IPR to conclusion, totaling $549,539

through November 30, 2019.[2] These amounts are recoverable because the IPRs and related

appeal substituted for litigating validity in this Court, and would not have been incurred but for

Blair's filing and maintenance of this meritless infringement suit.  *See, e.g.*, *PPG Indus., v.*

*Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988) (reversing denial of fees

for *inter partes* USPTO proceedings that substituted for litigating validity in the district court).

## II.   FACTUAL BACKGROUND

### A.   Blair's Litigation Conduct

Plaintiff Scott Blair ("Blair") filed his complaint on May 6, 2016, alleging infringement

of the '602 patent by defendants Kawasaki Heavy Industries, Ltd. and Alstom S.A. (Dkt. 1),[3]

after Kawasaki rejected his attempts to license this clearly invalid patent for an unreasonable

amount.[4]  In October 2016, Kawasaki filed an IPR petition challenging the patentability of the

---

[2] Kawasaki respectfully requests seven days from the date of the Court's Order on this motion to submit an accounting of fees and costs incurred since December 1, 2019.  *See* Section III.D.3.

[3] On February 14, 2017, Blair amended his complaint to substitute defendants, including replacing Kawasaki Heavy Industries, Ltd. with Kawasaki Rail Car, Inc. (Dkt. 32, 37, 39).

[4] By the time Blair filed this lawsuit, his claims had been found obvious (or as lacking "inventive

claims identified in the complaint (claims 1-4 and 6).  (Ex. B).  In its IPR petition, Kawasaki

explained there was nothing inventive about the subject matter claimed by Blair and asserted in

the litigation.  (*Id.* at 28-39).  Kawasaki's petition identified several prior art references showing

substantially identical systems as well as information about the state of the art prior to 1997

(including the FRA rule proposed in 1996) that disclosed this subject matter.  (*Id.* at 11-19).

     Kawasaki asked Blair to agree to a stay pending PTAB review, in order to avoid litigation

over a patent that inevitably would be held invalid, but Blair refused.  Blair also asserted 23

additional claims in his infringement contentions on November 14, 2016.  (Ex. DD (adding

claims 5, 7-9 and 11-21)).  The newly-asserted claims were nothing but variants of Blair's

initially-asserted claims, with some additional well-known and non-inventive concepts that did

not provide any basis for patentability. (*See, e.g.,* Ex. A, claim 5 (specifying the source of the

video signal), claim 11 (adding a "back lit panel"), claim 20 (adding "transparent cover units"

over displays)).  Nevertheless, Kawasaki had to expend resources to prepare another IPR petition

to address the 23 new claims, and filed its second IPR petition on March 6, 2017.  (Ex. M).

     On January 10, 2017, after trying again and failing to secure agreement from Blair to stay

the case pending PTAB review, Kawasaki filed an opposed motion to stay the case. (Dkt. 29-31,

33, 35).[5]  The Court denied the motion with leave to refile once the PTAB had instituted the IPR.

---

step") by both the European Patent Office ("EPO") and the Federal Court of Canada. In August
1999, the EPO described the features in Blair's proposed claims in an international patent
application—including the "substantially flush" limitation in claim 13 of that application—as
relating to "common and known implementations of video systems, or to simple measures a
skilled person would envisage to take without having to exercise any activity of inventive
significance." (Ex. T at separate sheet 3).  In October 2014, the Federal Court of Canada
affirmed the decision of the Canadian Commissioner of Patents that Blair's alleged invention,
including the "substantially flush" limitation, was obvious.  (Ex. U at [6], [20], [124]).

[5] The motion was filed by Kawasaki Heavy Industries, Ltd., before Blair substituted defendants.

(Dkt. 38). The PTAB instituted the first IPR on May 4, 2017, finding that Kawasaki had "established that there is a reasonable likelihood that it would prevail in establishing the unpatentability of claims 1-4 and 6." (Ex. K at 26). Kawasaki renewed its motion for a stay the next day, over Blair's continued objections. (Dkt. 47, 48, 58). At the hearing on the renewed stay motion, Blair's counsel acknowledged that litigating in this Court would be "more costly" than IPR proceedings, but nevertheless argued that Blair should be able to race to a final judgment in this case because Blair would obtain a strategic advantage with respect to the burden of proof. (Ex. W at 32, 38). The Court stayed the case on June 5, 2017, pending the outcome of the first IPR, and ordered the parties to complete non-ESI document productions. (Dkt. 61).

The PTAB instituted the second IPR on September 12, 2017, again finding that "Kawasaki has established a reasonable likelihood of prevailing on the claims challenged in the Petition." (Ex. N at 2).

At the PTAB hearing in January 2018 for the first IPR, the panel expressed skepticism with respect to Blair's arguments. (Ex. X at 49-57). On May 2, 2018, the PTAB issued its Final Written Decision in the first IPR, and agreed with Kawasaki that all challenged claims were unpatentable as obvious. (Ex. L at 39). As directed in the Order granting the stay (Dkt. 61), the parties submitted a joint status letter to report the PTAB decision and their views as to next steps. Despite the adverse PTAB decision, Blair unreasonably took the position that the Court should lift the stay (Dkt. 75), before the conclusion of Blair's appeal to the Federal Circuit and before the PTAB's completion of the second IPR. In June 2018, Kawasaki's counsel told Blair's counsel that, given the first IPR decision, it would be unreasonable to continue to litigate, and that if Blair did so, Kawasaki could have a reasonable basis to request recovery of its attorneys' fees incurred after May 2, 2018, the date of the PTAB decision. (Chapman Decl. ¶ 6.)

6

Kawasaki's counsel explained to Blair's counsel that the first IPR decision strongly predicted

that Kawasaki would prevail in the second IPR because the key issues had been decided in

Kawasaki's favor and the PTAB would reach the same decision.  (*Id.*)  Kawasaki's counsel also

explained that an appeal of the first IPR decision would not be successful because the Federal

Circuit would defer to the PTAB's fact findings.  (*Id.*).  Blair continued litigating anyway.

Just as Kawasaki had predicted, the PTAB found all challenged claims unpatentable in

the second IPR (Ex. O at 62) (which Blair did not appeal), and the Federal Circuit summarily

affirmed the PTAB's decision in the first IPR (Ex. S). Even then, having lost on all asserted

claims on the merits and with no viable claim left to pursue, Blair took the unreasonable position

that he would only stipulate to a dismissal with prejudice if Kawasaki agreed not to seek

attorneys' fees and costs. (Ex. V).

### B.   The '602 Patent

Blair filed his patent application on May 6, 1998, and claimed priority to a provisional

application filed on May 7, 1997.  (Ex. A). The original patent issued on March 2, 2004 with

claims 1-7.  The patent was reexamined by the USPTO in an *ex parte* proceeding initiated by

Blair in 2011, in which the patentability of claim 1 was confirmed, and new claims 8-29 were

added.  A reexamination certificate issued on January 29, 2015.  Kawasaki was not a party to the

*ex parte* proceeding.  The Blair patent expired on May 6, 2018.

The Blair patent is directed to a video display system in a subway car, but discloses

nothing new or inventive about the display, the video source, or the connections between them.

(Ex. A at Figs. 1A, 1B, col. 2, lines 49-58 (describing these as "known," "standard," "off the

shelf," and "well within the skill of the art")).  As shown in Figure 2 (below), video monitors 22

are mounted at the junction of the sidewall and the ceiling, and the screens are "angled

downwardly for ease of viewing of passengers 24 seated in such inward facing seats 16":



(Ex. A at 4:64-5:4; Fig. 2).  Although the monitors in Figure 2 are CRT monitors, LCD monitors can be used. (Ex. A at 4:14-32; 5:35-48).  Contrary to what the patent suggests, there was nothing inventive about using video displays in subway cars for showing advertisements and other content to riders (Ex. A at 1:29-39), as this was disclosed in several prior art references, including those before the PTAB during the IPR. (Exs D at 6; H at 1; J at 1-2; Z at 1; BB at 1).

The purported novelty of the '602 patent is that when LCD monitors are used, the screens can be positioned "substantially flush" with the wall to achieve "a better aesthetic appearance":

> In this alternative embodiment, CRT video monitor 22 is replaced with an LCD-based video monitor 22A which is of thin, rectangular cross-section, and occupies less space in the ceiling structure of the car. Accordingly, it can be moved towards the ceiling so that its viewing screen is <u>substantially flush</u> with or even behind the light panel 40. This use of an LCD-based monitor gives a <u>better aesthetic appearance</u> to the inside of the subway car as a whole, as well as improving the display performance by minimizing the interference effects, as previously discussed.

(Ex. A at 5:36-46) (emphasis added).  As the PTAB recognized during the earlier *ex parte* reexamination, Blair's arguments for patentability during the original prosecution focused on this "substantially flush" limitation.  (Ex. EE at 3-4 ("[A]pplicant's remarks/arguments indicate that allowability was designated based on the 'screen of the monitor substantially flushed with the adjacent wall surface structure of the car' feature of the subway car.")).  Similarly, when Blair

8

initiated the *ex parte* reexamination, he admitted that the prior art disclosed every limitation of claim 1 except the "substantially flush" limitation. (Ex. FF at 5).

Claim 1, reproduced below, is representative of the claims Blair asserted in this case:

1. A subway car for mass transportation including longitudinal opposed sidewalls, a ceiling adjoining the sidewalls, a video display system comprising a plurality of video display monitors each having a video screen, and a video signal source unit operatively connected to said monitors,

said monitors being spaced along the length of the car on opposed sides thereof, each of said monitor being mounted at the junction of the sidewall and ceiling, with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car, and directed obliquely downwardly toward the car seats, so that each video screen is readily visible to passengers in the subway car.

(Ex. A at claim 1).

## C.   The PTAB Confirmed Unpatentability In the First IPR on May 2, 2018, and Blair Had No Reasonable Basis for Appeal

On October 25, 2016, Kawasaki filed its first IPR petition challenging the five claims identified by Blair in his complaint (claims 1-4 and 6). (Dkt. 1 at ¶ 25; Ex. B). Ground C of the first IPR primarily relied on two prior art references not previously considered by the USPTO: (1) Namikawa (Japanese Pub. No. 04-085379) (Exs. C, D); and (2) Sasao (Japanese Pub. No. 04-322579) (Exs. E, F). On May 4, 2017, the PTAB instituted the IPR on ground C, which challenged claims 1-4 and 6 of the '602 patent as obvious over the combination of Namikawa, Sasao, Maekawa, and Amano. (Ex. K at 27). The PTAB rejected Blair's argument that the PTAB should not review the Blair patent again because of the prior *ex parte* proceeding confirming patentability of claim 1, stating that "the record here . . . presents detailed arguments and evidence related to the scope of the challenged claims and with respect to Namikawa, Miyajima, Sasao, and JTOA that were not previously considered." (Ex. K at 5).

Namikawa discloses a subway car in which "liquid crystal televisions . . . are disposed along the direction of travel on a wall face above each seat . . . inside a car." (Ex. D at 6).  Like Figure 2 of the '602 patent (shown on the left), the monitors 12 in Namikawa (shown on the right) are mounted at the junction of the ceiling and the sidewall, and angled downwardly:



(Ex. D at Fig. 1; Ex. A at Fig. 2).  Namikawa also discloses the same general purpose as the '602 patent, namely, that "a passenger sitting in one facing seat can watch the liquid crystal television 12 above another seat and a passenger in the other seat can watch the liquid crystal television 12 above the seat of the one facing seat." (Ex. D at 6).

The only difference between Namikawa's disclosure and claim 1 of the '602 patent is that the monitor screens in Namikawa are not expressly described in the text as being "substantially flush" with the adjacent wall surface. Accordingly, Kawasaki presented Sasao as a reference that expressly teaches placing the screen of a video monitor "substantially flush" with an adjacent wall surface.  Sasao teaches a "display device that is structured so as to be housed at the interior of a wall," and shows how to arrange a television 3 behind a wall 15:



(Ex. F at [0001]; Figs. 3-4, 6).  The cabinet 12 of Sasao "is disposed behind the wall 15 and cannot

be seen from within the room 14; . . . the screen 3 protrudes forward from the cabinet 12 so that

the front face 3a of the screen and the wall surface 15a in the room 14 are substantially flush." (Ex.

F at [0010]).  Figure 6 of Sasao (above) shows this arrangement from the viewer's perspective.

Kawasaki also submitted expert testimony regarding why the challenged claims are

obvious, including testimony that at the time of Blair's alleged invention in 1997, a person of

ordinary skill in the art would have been motivated to make the LCD screens of Namikawa's

monitors substantially flush with the adjacent wall surfaces based on Sasao's teaching.  (Ex. L at

20-21, 24-31).  Kawasaki's expert explained that there were numerous reasons that a person

skilled in the art would flush-mount monitors in railcars.  (*Id.*).  One reason was the proposed

FRA rule in June 1996 that required interior fittings to be "recessed or flush-mounted."  (Ex. L at

20, 25, 28).  In its Final Written Decision issued on May 2, 2018, the PTAB agreed:

> Moreover, the FRA had begun working with industry representatives and others to
> develop passenger equipment safety standards, which ultimately led to a proposed
> rule in June 1996 that required interior fittings of railcars (e.g., TVs) to be "recessed
> or flush-mounted."  With the introduction of video systems into rail cars during this
> time period, the requirement for "smooth" or "clean" interior surfaces, along with
> the proposed FRA regulations, would have motivated those of ordinary skill in the
> art in the industry to flush or substantially flush mount video systems inside rail
> cars.

(Ex. L at 28).  The PTAB found all the challenged claims unpatentable as obvious.  (Ex. L at 39).

As described in the PTAB's decision, the central issue in the first IPR was whether there was a motivation to combine Namikawa with Sasao. (Ex. L at 20-21, 24-31). Importantly, whether a person of ordinary skill would have been motivated to combine the prior art is a question of fact, which the Federal Circuit reviews for substantial evidence on appeal. *In re NuVasive, Inc.*, 842 F.3d 1376, 1381-82 (Fed. Cir. 2016). On this factual issue, as described above and as noted in the PTAB's decision, Kawasaki submitted substantial evidence that there was a motivation to combine Namikawa and Sasao. (Ex. L at 20-21, 24-31 (explaining that Blair's arguments "fail to take account of the evidence of record" and "fail to take into account the education and experience of a person of ordinary skill")).

Nevertheless, Blair appealed the PTAB's decision to the Federal Circuit. (Exs. P, Q, R). As described in Kawasaki's appeal brief, Blair raised no legal issues on appeal but instead argued about two fact questions, both of which were subject to review for substantial evidence. (Ex. Q at 3-7; 23-24). First, Blair argued that Sasao is not analogous prior art available for obviousness. (*Id.*). However, as Kawasaki explained, Blair waived this argument by failing to present it to the PTAB, and Sasao is analogous art. (*Id.*). Second, Blair argued that the PTAB erred in finding that there was a motivation to combine Namikawa with Sasao. (*Id.*). However, as Kawasaki explained, substantial evidence supported the PTAB's finding that there was such a motivation. (*Id.*). As further explained in Kawasaki's brief and at oral argument, even if Sasao were not analogous art, Namikawa alone, in combination with the knowledge of one of ordinary skill, independently supported a conclusion of obviousness based on the evidence in the record, including the FRA rule and other motivations described by Kawasaki's expert and relied upon by the PTAB. (*Id.* at 35-61). On August 8, 2019, three days after oral argument, the Federal Circuit

summarily affirmed under Fed. Cir. R. 36 and awarded costs to Kawasaki. (Ex. S). The parties

stipulated to appellate costs in the amount of $504.48 (Ex. CC), which Blair has not paid.

### D.   Despite the Adverse Decision In the First IPR Rejecting the Same Patentability Arguments, Blair Continued Litigating the Second IPR

On November 14, 2016, after Kawasaki filed its first IPR petition, Blair served his

infringement contentions, identifying 23 additional asserted claims (claims 5, 7-9, and 11-29).

(Ex. DD).  On March 6, 2017, Kawasaki filed the second IPR petition challenging these

additional claims based on the same primary prior art references as in the first IPR petition.  (Ex.

M).  On September 12, 2017, the PTAB instituted the second IPR, and again rejected Blair's

argument that the PTAB should decline to institute because of the prior *ex parte* proceeding.

(Ex. N at 28, 9). The PTAB initially instituted only one set of grounds, declining to institute the

other grounds because of administrative efficiency.  (*Id.* at 26-28).  On May 3, 2018, the PTAB

instituted review of the additional grounds, in accordance with the PTAB's April 26, 2018

guidance to institute all grounds in view of *SAS Institute, Inc. v. Iancu*, 584 U.S. ____ (2018).

Consistent with Kawasaki's counsel's explanation to Blair's counsel in June 2018, and as

later confirmed by the PTAB's decision in the second IPR, there is no meaningful, patentable

difference between the claims in the first IPR and the claims that Blair later added in his

infringement contentions. The PTAB concluded in the second IPR that the independent claims at

issue (claims 8, 15, and 20) contain limitations that are "the same," "very similar" or "similar" to

those previously found unpatentable for claim 1 (Ex. O at 33, 34, 40, 56), including variations of

the "substantially flush" limitation that the PTAB agreed were taught by the prior art.  (Ex. O at

57-58 (noting the prior art taught both the "substantially flush[ed]"/"flushed" limitation in claims

1, 8, and 20 and the "substantially contiguous" limitation in claim 15)).  The PTAB also agreed

there was no "discernible, patentable distinction" between the "flushed" limitation in claim 20

and the "no protuberances" limitation in dependent claim 22.  (*Id.* at 57-58).  Similarly, the

PTAB agreed there was no meaningful distinction between the "junction" recited in claim 1 and

the "transitional wall portion" recited in claims 8 and 20 or the "transitional segment" recited in

claim 15.  (*Id.* at 35, 57).  Notably, Blair made no separate patentability arguments in the second

IPR for the additional limitations in dependent claims 5, 9, 21, 27-29, or 16-18.  (Ex. O at 29-30

(noting that Blair made no separate arguments for claim 5), 41 (same for claims 9 and 21), 49

(same for claim 27), 51 (same for claims 28-29), 59-60 (same for claims 16-18)).

As for the new limitations in these claims that Blair contended in the second IPR

rendered them patentable, such as "transparent cover units" or a "back lit panel," the PTAB

rejected Blair's arguments and found they were contrary to the testimony of Blair's own expert

and/or directly contradicted by the prior art.  (Ex. O at 30-33 (rejecting Blair's arguments for

claim 7 regarding a "self-contained wiring-cabling system"), 35-39, 40-41 (rejecting arguments

regarding the "transparent cover unit" limitation in claims 8 and 20), 42-43 (rejecting arguments

for claims 12 and 24 regarding an "enclosure" for the monitors), 44-45 (rejecting argument for

claims 13 and 25 regarding the "enclosure" being "secured to a structural member"), 45-47

(rejecting arguments for claims 14 and 26 regarding the enclosure and monitor being "removable

from the subway car as a unit"), 52-56, 58-59 (rejecting arguments regarding the "back lit panel"

limitation in claims 11, 23, 15 and 19)).

On September 10, 2018, the PTAB issued its Final Written Decision in the second IPR,

finding all the challenged claims unpatentable. (Ex. O at 62). Blair did not appeal.

### III.    ARGUMENT

####    A.    This Case Should Be Dismissed with Prejudice

#####        1.    Applicable Legal Standards for Rule 12(c) Motions

After the pleadings are closed, the defendant may move for judgment on the pleadings

that the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(c),

(h)(2).  A dismissal under Rules 12(c) and 12(b)(6) is an adjudication on the merits and operates

as a dismissal with prejudice.  *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 357 (S.D.N.Y. 2010)

(dismissing claim under Rule 12(c) with prejudice because "[a] dismissal pursuant to Rule

12(b)(6) is, of course, a dismissal with prejudice.").

"When deciding Rule 12(c) motions for judgment on the pleadings, a court employs the

standard that applies to motions to dismiss a complaint under Rule 12(b)(6)." *Sarikaputar v.

Veratip Corp.*, 371 F. Supp. 3d 101, 103 (S.D.N.Y. 2019) (citation omitted).  To survive a Rule

12(c) motion, "a complaint must 'contain sufficient factual matter, accepted as true, to state a

claim to relief that is *plausible* on its face.'"  *Id.* at 104.  On a 12(c) motion, the court considers

the complaint, the answer, any written documents attached to them, and any matter of which the

court can take judicial notice for the factual background of the case." *Id.*[6]

#####        2.    This Case Should Be Dismissed With Prejudice For Failure To State a
#####                Claim Upon Which Relief Can Be Granted

When a patent claim is canceled by the PTAB, "the patentee loses any cause of action

based on that claim, and any pending litigation in which the claims are asserted becomes moot."

*Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).  Because all

---

[6] Kawasaki respectfully requests that the Court take judicial notice of the record in the related
PTAB proceedings and Federal Circuit appeal. Alternatively, if the Court deems Section III.A. of
Kawasaki's motion to present matters outside the pleadings, it should treat Kawasaki's Rule
12(c) motion as a motion for summary judgment under Rule 56.  FED. R. CIV. P. 12(d).

the asserted claims in this case have been finally determined to be unpatentable by the PTAB and will be canceled, Blair no longer has any cause of action for patent infringement, and the case must be dismissed. *Id.* at 1338 ("[S]uits based on cancelled claims must be dismissed.").

One appropriate mechanism for dismissing claims canceled by the PTAB is a dismissal under Rules 12(c) and 12(b)(6) for failure to state a claim upon which relief can be granted. *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 679-80 (Fed. Cir. 2019) (Plager, J., concurring) (a Rule 12(b)(6) dismissal is appropriate after the PTAB cancels claims); *see also Peschke Map Techs. LLC v. Miromar Dev. Corp.*, 2016 U.S. Dist. LEXIS 50926 (M.D. Fla. Apr. 15, 2016) (granting judgment on the pleadings based on Rule 12(b)(6) because the asserted patent was invalidated by another district court).

The *B.E. Tech.* case involved a very similar set of circumstances, and supports Kawasaki's request for a judgment on the pleadings and dismissal with prejudice for failure to state a claim. In *B.E. Tech.*, Facebook obtained a PTAB decision invalidating asserted claims while the parallel district court case was stayed. 940 F.3d at 676. Facebook then moved in the district court for judgment on the pleadings under Rule 12(c), seeking a dismissal with prejudice and costs under Rule 54(d). *Id.* at 676-77. The plaintiff, B.E. Technology, argued that the claims should be dismissed as moot instead. *Id.* The district court entered judgment dismissing the case as moot, and awarded costs to Facebook. *Id.* at 677. The issue on appeal before the Federal Circuit was whether Facebook was the "prevailing party" entitled to taxable costs under Rule 54(d)(1), and the Federal Circuit concluded that it was, despite B.E. Technology's argument that the mootness dismissal had no preclusive effect. *Id.* at 679.[7]

---

[7] The Federal Circuit applies its own law, rather than regional circuit law, to substantive matters unique to patent law and related issues, including the definition of "prevailing party." *See Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004); *B.E. Tech.*, 940 F.3d at 679.

In his concurring opinion, Judge Plager noted that Facebook could have moved for, and been granted, "a dismissal under Fed. R. Civ. P. 12(b)(6) on the ground that, once the asserted claims had been determined to be invalid, the plaintiff failed to state a claim upon which relief can be granted." *Id.* at 679-80. As Judge Plager stated, a dismissal under Rule 12(b)(6) "leaves no doubt [as to who] prevailed in the infringement suit and avoids any litigation about litigation." *Id.* Thus, the Court should dismiss this case with prejudice under Rules 12(c) and 12(b)(6).

### 3.    Alternatively, If the Court Does Not Dismiss the Case For Failure to State a Claim, the Court Should Dismiss the Case As Moot

As an alternative to a dismissal for failure to state a claim, the Court may enter judgment dismissing the case as moot. This is what the district court did in the *B.E. Tech* case. *Id.* at 679. As the majority opinion noted in *B.E. Tech.*, Facebook "moved for judgment that the case be dismissed on the pleadings, and, citing *Fresenius*, the district court appropriately did so on the ground of mootness." *Id.* at 679 (referring to *Fresenius*, 721 F.3d 1330). Therefore, if the Court does not dismiss for failure to state a claim, the Court should dismiss this case as moot.

### B.    Kawasaki Is the Prevailing Party.

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A defendant is the prevailing party if it obtains a decision, either on the merits or procedurally, that "effects or rebuffs a plaintiff's attempt to effect a material alteration in the legal relationship between the parties.'" *Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016)); *B.E. Tech.*, 940 F.3d at 679.

Under either scenario described above for dismissing this case, Kawasaki is the "prevailing party" for purposes of seeking costs (taxable and non-taxable) and fees. If the Court dismisses the case under Rules 12(c) and 12(b)(6), that would be a dismissal with prejudice and

would confer "prevailing party" status on Kawasaki. *Raniere*, 887 F.3d at 1307 ("The district court's dismissal *with prejudice* of Raniere's infringement suit was tantamount to a decision on the merits, making it sufficient to establish Appellees as prevailing parties."). Alternatively, if the Court dismisses the case under Rule 12(c) as moot, then Kawasaki is the "prevailing party" because it has successfully rebuffed Blair's claim in this case. *B.E. Tech.*, 940 F.3d at 679.

In *B.E. Tech.*, the Federal Circuit affirmed the district court's finding that Facebook was a prevailing party because Facebook "obtained the outcome it sought" via the district court's mootness dismissal—which had the necessary "judicial *imprimatur*"—and thus "rebuffed B.E.'s attempt to alter the parties' legal relationship in an infringement suit." *Id.* at 679. The Federal Circuit confirmed that "[t]his is true even though the mootness decision was made possible by winning a battle on the merits before the PTO." *Id.* at 677, 679. Like Facebook in *B.E. Tech.*, Kawasaki is the prevailing party because it has rebuffed Blair's claims through successful PTAB challenges, and this case will be dismissed as a result.

**C.    As the Prevailing Party, Kawasaki Should Be Awarded its Taxable Costs Under Fed. R. Civ. P. 54(d)(1)**

Kawasaki should be awarded taxable costs in the amount of $33,544 through November 30, 2019. (Mortazavi Decl. ¶6, Ex. A.3.) "[T]axing costs pursuant to Rule 54(d)(1), 28 U.S.C. § 1920, and Local Rule 54.1 in favor of the prevailing party is the rule, not the exception, in civil litigation." *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 70–71 (S.D.N.Y. 2015) (citation omitted). Kawasaki's taxable costs include costs for transcripts necessarily obtained for use in this case, as authorized under Local Rule 54(c), and costs necessarily incurred for copying and producing documents in response to Blair's discovery requests, as summarized in supporting declarations. (Mortazavi Decl. ¶¶ 6, 12-13; Koyama Decl. ¶¶2-4). The requested costs are properly taxable against Blair. *See, e.g., Balance Point*, 305 F.R.D. at 75-76 (costs of

18

scanning documents and uploading document production to FTP are "costs of making copies of any materials" under section 1920(4) and taxable).

> **D.   This Case Is Exceptional, and Kawasaki Should Be Awarded its Attorneys' Fees and Non-Taxable Costs Incurred After May 2, 2018**

> **1.   Applicable Legal Standards**

As noted above, the Patent Act authorizes a court to award "reasonable attorneys' fees" in "exceptional cases" to the prevailing party. 35 U.S.C. § 285.

In *Octane*, the Supreme Court relaxed the test for finding a case to be "exceptional," and rejected the Federal Circuit's prior "unduly rigid" framework, which required a finding of "litigation-related misconduct of an independently sanctionable magnitude or . . . that the litigation was both 'brought in subjective bad faith' and 'objectively unreasonable.'" 572 U.S. at 554.  The Supreme Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The Supreme Court added that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," including "non-exclusive" factors such as "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 & n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).  Exceptional circumstances can be established by a preponderance of the evidence. *Id.* at 557-58.

Courts also have an "inherent" authority to award attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 557.

A case may be exceptional and attorneys' fees may be awarded where a plaintiff has been put on notice of the legal vulnerability of an asserted patent through an IPR petition or invalidity contentions, but persists in "all out litigation." *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2018 U.S. Dist. LEXIS 223150, *15-21 (C.D. Cal. Dec. 27, 2018) (awarding $1,110,259.50 under § 285).

### 2. This Case Is Exceptional

#### a. Blair's Patent Infringement Claim Was Objectively Baseless After the PTAB's May 2, 2018 Decision In the First IPR

Blair's decision to press on with his infringement claim even after the PTAB issued its decision in the first IPR was objectively unreasonable, and justifies an award of attorneys' fees in this case. Blair had a duty to "continually assess the soundness of pending infringement claims," *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013), and his failure to properly reevaluate and timely dismiss this case warrants a finding of exceptionality. *Munchkin*, 2018 U.S. Dist. LEXIS 223150 at *18 (finding plaintiff objectively unreasonable in persisting in "all out litigation" despite red flags about the weaknesses of its case).

Though Kawasaki contends that Blair's allegations of infringement based on a plainly invalid patent were unreasonable as of the date that Kawasaki *filed* its first IPR petition, Kawasaki has limited its § 285 request to attorneys' fees and non-taxable costs incurred after Blair indisputably "had full notice that its case was objectively baseless"—namely, after the PTAB's May 2, 2018 decision in the first IPR. *Vehicle Interface Tech. v. Jaguar Land Rover North Am.*, 2015 WL 9462063, at *4 (D. Del. Dec. 28, 2015) (stating that the court was inclined to find that "fees are appropriate from the date VIT had full notice that its case was objectively baseless in light of the invalidating 2001 Mercedes prior art.").

The substantive weakness of Blair's position with respect to the validity of his asserted claims is evident from the information provided by Kawasaki in the first IPR petition filed on

20

October 25, 2016. In that petition, Kawasaki presented invalidating prior art, expert testimony, and the proposed FRA rule requiring interior fittings in rail cars to be "recessed or flush-mounted," which refuted Blair's arguments about the purported novelty of the "substantially flush" limitation. Because this information was not previously considered during the original prosecution or *ex parte* reexamination (Ex. K at 5; Ex. N at 9), no deference is due to the USPTO's decision to issue the claims in the original or reexamined patent. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1994), *cited with approval in Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91 (2011). As the Federal Circuit explained, "new prior art not before the PTO may so clearly invalidate a patent that the burden [of proving invalidity] is fully sustained merely by proving its existence and applying the proper law." *American Hoist*, 725 F.2d at 1359-60. That is precisely the case here, and Blair thus has been on notice of the substantive weakness of his case since October 25, 2016.

Even if one assumes that Blair presumed (despite all the evidence to the contrary) that his asserted claims were valid because the USPTO had previously allowed them, it was no longer reasonable for Blair to continue to rely on a presumption of validity to maintain this suit once the PTAB determined that claims 1-4 and 6 were, in fact, unpatentable. At that time, there was no reasonable basis for appeal and, given the similarities in the claims and arguments Blair presented in the two IPRs, it was a foregone conclusion that the PTAB would find the remaining claims unpatentable as well. A reasonable litigant would have stipulated to a dismissal. Blair did not. Instead, he continued to litigate patentability arguments that ignored evidence of record in the IPRs, were frivolous, or had been waived, and thus increased litigation costs for Kawasaki.

For example, in appealing the decision in the first IPR, Blair pursued arguments that either ignored evidence or had been waived. During the first IPR proceeding, Blair belatedly

raised an argument that it would not have been obvious to place screens flush or substantially flush in subway cars between the inner and outer wall, as his own patent claims require, because doing so would create a fire hazard due to the heat created by the monitors. (Ex. L at 55-56 (noting that this argument was not in Blair's Patent Owner Response)). Blair made this argument in an attempt to undermine the proposed FRA rule, which predated Blair's alleged invention and disclosed the desirability of flush-mounting in rail cars. As the PTAB noted at the hearing, this alleged fire hazard was nowhere mentioned or solved in Blair's patent (Ex. X at 51-54), and would not have been a problem for one skilled in the art who would have known how to dissipate any heat if required (Ex. X at 49, 55).  In its May 2, 2018 decision, the PTAB rejected Blair's related meritless arguments that one skilled in the art in the design and construction of railcars (i) would not have known how to flush-mount monitors in rail cars (Ex. L at 26-28; Ex.  X at 49-51, 66), and (ii) would not have known that there was space behind the inner wall of a rail car to accommodate flush-mounted monitors. (Ex. L at 27, 30-31; Ex. X at 48-49). The PTAB expressly noted that Blair's arguments ignored the relevant evidence.  (Ex. L at 29).

Given the PTAB's findings on these issues, Blair's decision to appeal was objectively baseless. The Federal Circuit reviews the PTAB's factual findings for substantial evidence. *IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018) (citation omitted).  Yet, on appeal, Blair challenged PTAB factual findings that he had no legitimate basis to argue were not supported by substantial evidence.  (Ex. Q at 3-7; 23-24).  Blair also argued that Sasao is not analogous prior art and should not have been considered by the PTAB, even though he never argued this to the PTAB. (*Id.*). Blair's arguments clearly lacked merit, as demonstrated by the Federal Circuit's summary affirmance three days after oral argument.  (Ex. S).

Blair's pursuit of the second IPR through a PTAB decision was also objectively baseless. In this IPR, Blair's primary patentability argument was the same meritless fire hazard argument that he had raised in the first IPR. Blair rehashed the same arguments and presented additional evidence and arguments on this issue. However, the PTAB found that Blair had not provided "persuasive evidence that LCD monitors as disclosed by Namikawa create a fire hazard" or that one skilled in the art "would not have been able, with reasonable expectation of success, to dissipate excess heat by ventilating monitors in the wall of a rail car." (Ex. O at 24-26).

In addition, in supplemental submissions on the additional grounds in the second IPR, Blair repeated a variation of his frivolous argument from the first IPR that Namikawa's monitors are not at the "junction" of the sidewall and the ceiling as recited in claim 1. Blair argued in the first IPR that Namikawa's monitors were on the sidewall (below the junction), whereas in the second IPR he argued they were on the ceiling (above the junction). (Ex. GG at 3-8; Ex. L at 18). Blair made these arguments even though a simple visual comparison between the figures of Namikawa and the '602 patent (*see* page 10, *supra*) would lead any reasonable person to conclude that Namikawa's monitors are mounted at the junction (*compare* Ex. D at Fig. 1 *with* Ex. A at Fig. 2), and despite the fact that the PTAB had previously rejected his argument in the first IPR as inconsistent with how the term "junction" was used in the '602 patent and understood by Blair's own expert and those skilled in the art. (Ex. L at 18-19; Ex. X at 32-46).

Blair's decision to not appeal the PTAB decision in the second IPR confirms that the controlling issue in both IPRs was the same—whether there was a motivation to combine Namikawa with Sasao. Because the decision in the first IPR resolved that factual issue adverse to Blair based on the substantial evidence presented by Kawasaki, it was unreasonable for Blair to continue to litigate his claims in the second IPR after that decision.

#### b.   Blair's Litigation Conduct Further Supports an Exceptional Case Finding.

A party's litigation conduct "can be a basis unto itself for deeming a case exceptional."

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*, 2019 U.S. Dist. LEXIS 196994, at *21 (S.D.N.Y.

Nov. 12, 2019) (citing *Octane Fitness*, 572 U.S. at 554).  Blair's litigation conduct—including

his refusal to stay the case pending PTAB review and to later stipulate to a dismissal—further

supports an exceptional case finding.  *Munchkin*, 2018 U.S. Dist. LEXIS 223150 at *15-21.

In *Munchkin*, the court found the case exceptional and awarded fees because of the

plaintiff's "doggedness in the face of almost certain defeat," including some of the same tactics

exhibited by Blair in this case:  opposing a motion for a stay, appealing an adverse PTAB

decision to the Federal Circuit that was ultimately summarily affirmed, and attempting to avoid a

final judgment that would establish the defendant as the prevailing party.  *Id.* at *18-19. Like

Kawasaki, the defendant in *Munchkin* filed an IPR petition relying on prior art not before the

USPTO during earlier examination, and the PTAB found the claims unpatentable.  *Id.* at *15-16.

The plaintiff in *Munchkin* "was on notice of the legal vulnerability" of its patent through IPR

proceedings, *id.* at *18, just as Blair has been since at least the date of the PTAB's decision in the

first IPR (Ex. L).  Like the plaintiff in *Munchkin*, *id.* at *16, Blair appealed the PTAB's decision

to the Federal Circuit, only to have that decision summarily affirmed (Ex. S).  The plaintiff in

*Munchkin* also sought a voluntary dismissal in an attempt to avoid a final judgment establishing

defendant as the prevailing party, *id.* at *19, which is the same tactic that Blair used here by

opposing a dismissal with prejudice (Dkt. 101).

In addition, the plaintiff in *Munchkin* fought the defendant's efforts to stay the litigation

pending the outcome of the IPR, *id.* at *18-19, just like Blair did in this case (Dkt. 33, 48, 58).

After considering these and other factors, the *Munchkin* court determined that the plaintiff's

"doggedness in the face of almost certain defeat was unreasonable and makes this case stand out from other cases. A reasonable patentee would have settled this case." *Id.* at *19. The same is true here, and Blair's pursuit of this case after the PTAB's May 2, 2018 decision makes this case "stand out from the others" and therefore "exceptional." *Id.*; *Octane Fitness*, 572 U.S. at 554.

The unreasonableness of Blair's litigation conduct is further evidenced by his filing of a meritless appeal of the PTAB decision in the first IPR, and continuing to litigate the second IPR to its inevitable conclusion, which he ultimately did not appeal. The only logical inference is that Blair added claims in his contentions to give himself ammunition to fight Kawasaki's stay motion (Dkt. 33, 48, 58), and not because he believed the new claims to be different in a way that would lead to a different outcome before the PTAB or on appeal.

Another example of Blair's unreasonable conduct is his insistence on a dismissal without prejudice, which he erroneously represented would bar Kawasaki from seeking fees. (Dkt. 101). Blair has no legally viable claim left to pursue on his now-expired patent. The patent's expiration bars Blair from suing for post-expiration activities, and preclusion principles bar him from pursuing the asserted claims based on any pre-expiration activities. *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) (explaining that final judgments from PTAB proceedings have issue-preclusive effect).

The sole surviving claim of Blair's patent (claim 10)—which was not asserted and therefore not challenged before the PTAB—is not materially different from the claims that were found unpatentable, and it would be bad faith if Blair were to try to assert it. Claim 10 is a dependent claim that merely adds the limitation that the video display monitor is positioned "such that it contains no visible edges or protuberances." (Ex. A at claim 10). There is no meaningful distinction between this limitation and the limitation in claim 20 requiring monitors

with transparent cover units to be "flushed," or to have "no protuberances" as recited in claim 22,

both of which the PTAB found unpatentable (Ex. O at 57-58 (finding no "discernible, patentable

distinction" between "flushed" limitation in claim 20 and "no protuberances" limitation in

dependent claim 22)).  Thus, there is no legitimate basis for Blair's requested form of dismissal.

### c. The Totality of Circumstances Supports an Exceptional Case Finding and an Award of Fees to Kawasaki

The totality of circumstances in this case warrants the award of Kawasaki's requested

fees and costs.  In considering the totality of circumstances, "bad faith can be inferred from

pursuit of objectively baseless litigation or other litigation misconduct."  *EMED*, 2019 U.S. Dist.

LEXIS 196994, at *24.  Here, bad faith can be inferred from the conduct described above in the

two previous sections (Sections III.D.2.a and III.D.2.b), as well as the fact that both the EPO and

Federal Court of Canada had found his purported invention obvious before he filed this suit.

That Blair must have known from the outset that he was asserting an exceptionally weak

patent can also be inferred from Blair's actions in attempting to prevent the PTAB proceedings

altogether, likely because Blair realized his asserted claims would not withstand scrutiny. Blair

argued that the PTAB should decline to institute the IPRs because Kawasaki was making the

same or substantially the same arguments that were made in the *ex parte* reexamination (Ex. K at

5; Ex. N at 9), although Kawasaki was not a party to that *ex parte* proceeding and the USPTO

had not considered Namikawa, Sasao or the proposed FRA rule in that proceeding. When that

effort failed, he opposed a stay of this case pending PTAB review (Dkt. 48, 58), and later asked

that the stay be lifted before the PTAB could finish its review of the second IPR, and even after

the PTAB's adverse decision in the second IPR left him with no asserted claims. (Dkt. 75, 83).

An award of fees is also warranted to deter future meritless litigation by Blair.  When

patentees "pursue litigation without an objectively reasonable basis to assert their claims, they

engage in a form of unfair competition that warrants deterrence." *EMED*, 2019 U.S. Dist.

LEXIS 196994, at *27 (citing *Octane Fitness*, 134 S. Ct. at 1757 n.6); *Inventor Holdings, LLC v.*

*Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-76 (Fed. Cir. 2017) (awarding fees "necessary to

deter wasteful litigation in the future."). Given Blair's request for a dismissal without prejudice,

an award of fees is warranted to deter further wasteful litigation on a plainly invalid patent.

Another factor that justifies a finding of exceptionality is that Kawasaki notified Blair

about the consequences of his exceptional conduct. *ThermoLife Int'l LLC v. GNS Corp.*, 922

F.3d 1347, 1357 (Fed. Cir. 2019) ("One consideration that can and often should be important to

an exceptional-case determination is whether the party seeking fees 'provide[d] early, focused,

and supported notice of its belief that it was being subjected to exceptional litigation behavior.'")

(citation omitted). In June 2018, Kawasaki's counsel told Blair's counsel that, given the PTAB's

May 2, 2018 decision, it had become unreasonable of Blair to continue this case and that, if Blair

continued to litigate, Kawasaki believed it could have a reasonable basis to request attorneys'

fees after the date of the PTAB's decision. (Chapman Decl. ¶ 6). Blair's decision to continue

litigating despite this notice supports a finding of exceptionality and an award of fees.

*ThermoLife*, 922 F.3d at 1358 ("[T]he presence of such notice, followed by continuation of

litigation, can be a factor in justifying an award of attorney's fees.").

Blair's actions and litigation choices after the PTAB's May 2, 2018 decision have caused

Kawasaki to incur attorneys' fees and expenses that it should not have had to incur.

### 3.   Kawasaki's Requested Award of Fees and Non-Taxable Costs Is Reasonable

Kawasaki seeks an award of attorneys' fees and non-taxable costs reasonably incurred to

defend against Blair's meritless infringement claims. This includes $605,867.87 in fees and

$9,429.96 in costs, for a total of $615,297.83, which Kawasaki incurred for work done between

May 2, 2018 and November 30, 2019.  (Mortazavi Decl. ¶6, Ex. A.2-A.3.)  Kawasaki

respectfully requests seven days from the date of the Court's Order to provide an accounting of

fees and costs incurred for work done since December 1, 2019, including in connection with this

motion. *See, e.g., Innovention Toys v. MGA Entm't*, 2017 U.S. Dist. LEXIS 174580, at *7 (E.D.

La. Apr. 5, 2017) (awarding fees and expenses for entire case, including time spent on the issue

of attorneys' fees).

Kawasaki's requested award includes fees and non-taxable costs (other than expert

witness fees) incurred since May 2, 2018 for this case, the related appeal in the first IPR, and the

second IPR. These amounts are properly recoverable, because the two PTAB proceedings and

related appeal effectively took the place of litigation in this Court on validity issues.  *See, e.g.,*

*PPG Indus.*, 840 F.2d at 1568-69 (holding that attorneys' fees for *inter partes* USPTO

proceedings were recoverable because they "substituted for the District Court litigation on all

issues considered by the PTO and the Board"); *EMED*, 2019 U.S. Dist. LEXIS 196994, at *33-

34 ("IPR fees have been included as part of an exceptional case award 'either where there was a

stay of the related district court case, such that the PTO proceedings effectively took the place of

the federal court litigation . . . or where the court determined the PTO's decision played a central

role in determining the outcome of the federal court case.'"); *Munchkin*, 2018 U.S. Dist. LEXIS

223150 at *19 (awarding fees and costs for an IPR and related appeal).

The determination of reasonable attorneys' fees is "a matter that is committed to the

sound discretion of a district court judge." *Lumen View Technologies LLC v. Findthebest.com,*

*Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). The court must decide whether the requested attorneys'

fee award is reasonable by calculating the "lodestar," which is "the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate." *Lumen*, 811 F.3d at 483.  An

hourly rate "is reasonable if it is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  In patent infringement cases, the district court may consider surveys of typical litigation costs, including surveys by the American Intellectual Property Law Association ("AIPLA"). *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988).

The amount that Kawasaki seeks is reasonable given the success achieved, and is comparable to the average costs listed in AIPLA surveys for patent litigations and PTAB proceedings.  (Mortazavi Decl. ¶¶20-23).  For example, according to the 2017 AIPLA survey, in the New York City area, the total mean cost for defending patent infringement claims by a non-practicing entity such as Blair, in cases where the amount in controversy exceeded $1 million, ranged from $788,000 to $2.04 million through trial, and $338,000 to $1.15 million through discovery, depending on the amount in controversy.[8]  (Mortazavi Decl. Ex. G, at I-136-I-140.) The total mean cost for an IPR proceeding was $477,000 through a PTAB hearing and $657,000 through appeal.  (Mortazavi Decl. Ex. G, at I-136-I-140.)

In this case, the amount that Kawasaki has incurred in fees and costs through November 30, 2019 for the district court litigation, the two PTAB proceedings, and the Federal Circuit appeal combined is comparable to the $1.47–$1.77 million average in the 2017 AIPLA survey for similar work.  (Mortazavi Decl. ¶22.)  The AIPLA data confirm that Kawasaki's requested award is reasonable.  (*Id.* at ¶23.)  Moreover, Kawasaki has paid its invoices in full for amounts incurred through September 30, 2019 (Mortazavi Decl. ¶7), which "is indicative of the reasonableness of the fees." *Worldwide Home Prods. v. Bed, Bath and Beyond, Inc.*, 2015 U.S.

---

[8] The AIPLA survey provides data for patent cases in which the amount in controversy is (i) less than $1 million, (ii) between $1 million and $10 million, (iii) between $10 million and $25 million, and (iv) exceeds $25 million. (Mortazavi Decl. Ex. G, at I-136-I-140.)

Dist. LEXIS 46569, at *9 (S.D.N.Y. Apr. 9, 2015). The related costs that Kawasaki seeks are also reasonable and were accrued as necessary expenses in the course of defending against Blair's objectively baseless claims (Mortazavi Decl. ¶¶ 6, 11, 23), and thus are recoverable. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983).

The accompanying declaration of Sheila Mortazavi provides further details on the amount of fees and costs, including detailed billing entries reflecting time spent by each timekeeper, hourly rates charged, and services performed. As noted in the declaration, the hourly rates charged during the time period in question were similar to those charged by comparable counsel. (Mortazavi Decl. ¶¶ 18-19). Accordingly, Kawasaki submits that its request to recover $615,297.83 in fees and costs for the period of May 2, 2018 through November 30, 2019 is both reasonable and appropriate.

Kawasaki further requests that the Court award prejudgment interest of 9% and post-judgment interest in accordance with this District's fee schedule. *Regeneron Pharms., Inc. v. Merus N.V.*, 2018 U.S. Dist. LEXIS 115661, *20-21 (S.D.N.Y. June 25, 2018).

## IV.   CONCLUSION

For the foregoing reasons, Kawasaki respectfully requests that the Court enter judgment on the pleadings for defendants and dismiss this case with prejudice, and award Kawasaki taxable costs in the amount of $33,544. Kawasaki also respectfully requests that the Court find this case exceptional and award Kawasaki its attorneys' fees and non-taxable costs from May 2, 2018 to November 30, 2019, in the amount of $615,297.83, as well as prejudgment and post-judgment interest. Kawasaki further requests seven days from the date of the Court's order to submit an accounting of fees and costs incurred for the period between December 1, 2019 and the date of final judgment, including the fees and costs associated with this motion.

Dated: December 9, 2019                    Respectfully submitted,


                                           /s/ Sheila Mortazavi
                                           Sheila Mortazavi
                                           smortazavi@huntonak.com
                                           Zaed M. Billah
                                           zbillah@huntonak.com
                                           Armin Ghiam
                                           aghiam@huntonak.com
                                           HUNTON ANDREWS KURTH LLP
                                           200 Park Avenue
                                           New York, NY 10166
                                           Telephone: (212) 309-1000
                                           Facsimile: (212) 309-1100

                                           *Attorneys for Defendant*
                                           *Kawasaki Rail Car, Inc.*

31

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

<u>/s/ Sheila Mortazavi</u>
Sheila Mortazavi