# Exhibit K

Trials@uspto.gov                                              Paper 11
Tel: 571-272-7822                                  Entered: May 4, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

KAWASAKI RAIL CAR, INC.,

Petitioner,

v.

SCOTT BLAIR,

Patent Owner.

_____

Case IPR2017-00117
Patent 6,700,602 B1

_____

Before JAMESON LEE, SCOTT A. DANIELS, and
KEVIN C. TROCK, *Administrative Patent Judges*.

TROCK, *Administrative Patent Judge*.

DECISION
Instituting *Inter Partes* Review
*37 C.F.R. § 42.108*

I. INTRODUCTION

Kawasaki Rail Car, Inc., ("Petitioner") filed a request for an *inter partes* review of claims 1–4 and 6 (the "challenged claims") of U.S. Patent No. 6,700,602 B1 (Ex. 1001, "the '602 patent"). Paper 1 ("Pet."). Scott

IPR2017-00117
Patent 6,700,602 B1

Blair ("Patent Owner") filed a Preliminary Response to the Petition.  Paper 6
("Prelim. Resp.").

    We have jurisdiction under 35 U.S.C. § 314, which provides that an
*inter partes* review must not be instituted "unless . . . the information
presented in the petition . . . shows that there is a reasonable likelihood that
the Petitioner would prevail with respect to at least 1 of the claims
challenged in the petition." 35 U.S.C. § 314(a).  Upon considering the
Petition and Preliminary Response, as well as the evidence presented and the
arguments made therein, we determine that Petitioner has established a
reasonable likelihood that it would prevail in showing the unpatentability of
at least one of the challenged claims.  Accordingly, we institute an *inter
partes* review.

## A.  Related Proceedings

    The parties identify *Blair v. Alstom SA et al.*, Civ. No. 1:16-cv-03391
(S.D.N.Y.) as a proceeding relating to the '602 patent. Pet. 7; Paper 5, 2.

## B.  The '602 Patent

    The '602 patent describes the invention as "a television public service
message display, entertainment and advertising system for subway cars, in
which television monitors are provided at spaced intervals in subway cars, to
display short duration televisual entertainment and advertising features to
subway riders." Ex. 1001, 1:45–50.  The '602 patent explains that the
"invention provides properly positioned television monitors displaying
moving images of news items, advertising material and the like, viewable by
substantially all riders in the car, and filling their need for visual

2

IPR2017-00117
Patent 6,700,602 B1

entertainment during the brief duration of their subway ride." *Id.* at 1:61–65. The '602 patent explains:

> In a preferred arrangement, the video display monitors have a strong metal frame construction, fixed to the frame of the subway car. The screens are preferably covered with a rigid transparent unit, e.g. of polycarbonate, shaped to coincide with the shape of the internal wall of the subway car at the location of mounting. For example, when the monitor is mounted at the junction of the wall and ceiling of the subway car, where there is commonly provided a concavely curved segment of internal wall, the transparent cover unit is suitably similarly concavely curved, so that it can be mounted as a continuum with the internal walls and blended to contours thereof, with the monitor mounted behind it. The screen is suitably angled downwardly, for best viewing by passengers seated opposite the screen.

Ex. 1001, 3:62–4:8.


### C. *Challenged Claims of the '602 Patent*

Petitioner challenges claims 1–4 and 6 of the '602 patent. Challenged claim 1 is independent. Challenged claims 2–4 and 6 depend from claim 1. Claim 1 is illustrative and is reproduced below.

> 1. A subway car for mass transportation including longitudinal opposed sidewalls, a ceiling adjoining the sidewalls, a video display system comprising a plurality of video display monitors each having a video screen, and a video signal source unit operatively connected to said monitors,
>
> said monitors being spaced along the length of the car on opposed sides thereof, each of said monitor being mounted at the junction of the sidewall and ceiling, with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car, and directed obliquely downwardly toward the car seats, so that each video screen is readily visible to passengers in the subway car.

Ex. 1001, 6:31–43.

IPR2017-00117
Patent 6,700,602 B1

### D. Evidence Relied Upon

Petitioner relies upon the following references:[1]

(1)     Japanese Publication No. 04-085379 ("Namikawa") Exs. 1004, 1005;

(2)     Japanese Publication No. 07-181900 ("Miyajima") Exs. 1006, 1007;

(3)     Japan Train Operation Association Magazine, Vol. 37, issue no. 3, March 1995 ("JTOA Magazine") Ex. 1002, 1003;

(4)     Japanese Publication No. 04-322579 ("Sasao") Exs. 1010, 1011;

(5)     Japanese Publication No. 04-160991 ("Maekawa") Exs. 1008, 1009;

(6)     Japanese Publication No. 02-223985 ("Amano") Exs. 1020, 1021.

Petitioner also relies upon the Declaration of Lowell Malo. Ex. 1014.

### E. Asserted Grounds of Unpatentability

Petitioner asserts unpatentability of the challenged claims on the following grounds.

| Ground | References | Basis | Claims Challenged |
|---|---|---|---|
| A | Namikawa | § 102 | 1, 6 |
| B | Miyajima | § 102 | 1, 6 |
| C | Namikawa, Sasao, Amano, Maekawa | § 103 | 1–4, 6 |
| D | Namikawa, JTOA Magazine, Amano, Maekawa | § 103 | 1–4, 6 |
| E | Miyajima, Sasao, Amano, Maekawa | § 103 | 1–4, 6 |
| F | Miyajima, JTOA Magazine, Amano, Maekawa | § 103 | 1–4, 6 |

---

[1] Each Japanese publication relied upon by Petitioner is accompanied by an English language translation. Citations in this Decision to these references are to the English language translations.

4

IPR2017-00117
Patent 6,700,602 B1

## II. ANALYSIS

### A. Patent Owner's 35 U.S.C. § 325(d) Arguments

Patent Owner argues that the Petition should be denied under
35 U.S.C. § 325(d) because the Petition relies on the same or substantially
the same arguments made during *ex parte* reexamination (*Ex Parte
Reexamination* Control No. 90/011,861) of the '602 patent. Prelim. Resp.
14–24. Patent Owner argues that *Amano* was previously considered during
the reexamination (Prelim. Resp. 15–16) and that Miyajima, Namikawa,
Sasao, and JTOA Magazine are substantially the same as art previously
considered (Prelim. Resp. 16–24). The record here, however, presents
detailed arguments and evidence related to the scope of the challenged
claims and with respect to Namikawa, Miyajima, Sasao, and JTOA that
were not previously considered. *See* Ex. 2001 *passim*. The denial of a
petition under Section 325 is discretionary. Accordingly, we decline to
deny the Petition on this basis.

### B. Claim Construction

In an *inter partes* review, claim terms in an unexpired patent, such as
the '602 patent, are given their broadest reasonable construction in light of
the specification of the patent. 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs.,
LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the
broadest reasonable construction as the standard to be applied for claim
construction in *inter partes* reviews). Consistent with that standard, we
assign claim terms their ordinary and customary meaning, as would be
understood by one of ordinary skill in the art at the time of the invention, in
the context of the entire patent disclosure. *See In re Translogic Tech., Inc.*,
504 F.3d 1249, 1257 (Fed. Cir. 2007). There are, however, two exceptions:

IPR2017-00117
Patent 6,700,602 B1

"1) when a patentee sets out a definition and acts as his own lexicographer," and "2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Moreover, only those terms that are in controversy need be construed, and only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

During *Ex Parte* Reexamination of the '602 patent, the recited limitation "substantially flushed" (claim 1) was construed to mean "a surface which is to a great extent even with an adjoining one." Ex. 2001, 6. Petitioner and Patent Owner appear to agree on this construction for purposes of this proceeding. *See* Pet. 10; Prelim. Resp. 3. We do not find it necessary at this point in the proceeding to construe expressly any claim terms or to adopt the construction agreed to by the parties. Rather, we apply the term's plain and ordinary meaning, as understood by one of ordinary skill in the art in light of the specification.

### C. Namikawa (Exs. 1004, 1005)

Namikawa is directed to a subway car where "a plurality of liquid crystal televisions 12 are disposed along the direction of travel on a wall face above each seat 11 inside a car 10." Ex. 1005, 6. Figure 1 of Namikawa is reproduced below.

IPR2017-00117
Patent 6,700,602 B1



Ex. 1005, Fig. 1.  Figure 1 shows the inside of a rail car.

Namikawa discloses that "[e]ach liquid crystal television 12 broadcasts content taken from broadcasting media, such as cable television for example, in other words, programming such as various types of commercials, dramas, and news." *Id.*  Namikawa further discloses an operation panel 13 in the subway car that "turns the broadcast to the liquid crystal panels 12 on and off and switches the broadcast content." *Id.*

### D. Miyajima (Exs. 1006, 1007)

Miyajima is directed to display devices in vehicles, such as railcars, for displaying information and images to passengers.  Ex. 1007, 1. Miyajima's display device comprises a plurality of displays "having shapes conforming to the shapes in the regions where the displays are to be installed within the vehicle" for "efficient use of the space within the vehicle." *Id.* at

IPR2017-00117
Patent 6,700,602 B1

3.  Figure 4 of Miyajima, depicting displays 01a and 01b at the junction of
the sidewall and the ceiling of the railcar, is shown below.



Ex. 1007, Fig. 4.  Figure 4 shows the inside and a cross-section of a rail car.

Miyajima also discloses a device 02 within the vehicle that "stores
image data and performs the display on the displays on the basis thereof."
*Id.* at 3.  Specifically, this device "may comprise an information memory
search online transfer means provided within the vehicle, which stores image
data, and accesses and transfers the same, and a communication information
transfer means, which receives image data that is transmitted from outside
the vehicle, wherein display is performed on the displays on the basis of
image data from this information memory search online transfer means and
this communication transfer means." *Id.*

*E.  JTOA Magazine (Exs. 1002, 1003)*

The JTOA Magazine is directed towards Tobu 9050 series rail cars.
Ex. 1003, 2.  These rail cars contained LCD (liquid crystal displays) screens
in the car interiors, where the display screens were mounted with adjacent
wall structures.  Two photos from the JTOA Magazine are shown below.

IPR2017-00117
Patent 6,700,602 B1





*Id.* at 1.  These photos show views of the inside of a rail car.

The JTOA Magazine discloses that

[a]s an in-car guidance device, a nine inch liquid crystal monitor is provided above the side doors in each car; visually, they provide improved service by displaying the destination, the type of train, the stations the train will stop at, and other information.

9

IPR2017-00117
Patent 6,700,602 B1

> Consideration has been given to making this monitor easy to see
> from the seats as well, by mounting on the lintel inspection cover,
> which is formed from fiber-reinforced plastic (FRP), and tilting
> it at an angle of 30 degrees from the vertical.

*Id.* at 4.

The JTOA Magazine also discloses "[a] combined control system from the display device command unit [which] is used for . . . the in-car passenger guidance devices," and teaches that "[i]n addition, the display device command unit and the train information device command unit are made compact, to improve operability and to ensure adequate space for attaching the equipment." *Id.* at 5.

### F. *Sasao (Exs. 1010, 1011)*

Sasao is directed to a "display device that is structured so as to be housed at the interior of a wall." Ex. 1011, 2. Sasao discloses arranging a television behind wall 15, as shown in Figures 3 and 4 of the reference set out below.



*Id.* at Figs. 4, 5. Figures 4 and 5 show a cross section and a front view of a mounted television frame, respectively.

10

IPR2017-00117
Patent 6,700,602 B1

Sasao describes that "[t]he cabinet 12 itself is disposed behind the
wall 15 and cannot be seen from within the room 14," and "furthermore, as
described above, the screen 3 protrudes forward from the cabinet 12 so that
the front face 3a of the screen and the wall surface 15a in the room 14 are
substantially flush." *Id.* at 2.

### G. Amano (Exs. 1020, 1021)

Amano is directed to a system for "making use of time in
transportation equipment, by installing a display device, which provides
nonstandard information to a large indefinite number of people who are
using a limited space such as an airplane, train, or bus . . . ." Ex. 1021, 1.

### H. Maekawa (Exs. 1008, 1009)

Maekawa is directed to "a teletext broadcast receiving system for a
mobile body, preferably used in installations in mobile bodies such as
electric trains." Ex. 1009, 1. Maekawa further discloses that each of "the
television receivers (101), (102), (103) . . . (124) are thin" and can be "liquid
crystal panels or the like." *Id.* at 2.

### I. Ground A: Anticipation of Claims 1 and 6 by Namikawa

Petitioner contends that claims 1 and 6 of the '602 patent are
anticipated by Namikawa. Pet. 19–24. With respect to the recited limitation
in claim 1 "subway car for mass transportation," Petitioner relies on
Namikawa's disclosure of "a public transport vehicle such as a transit bus or
electric train wherein commercials or programming can be broadcast." Pet.
19; Ex. 1005, 2–3. Figure 1 of Namikawa shows "one example of applying
the present device to a car in an electric train of [Japan Railways], a subway,

11

IPR2017-00117
Patent 6,700,602 B1

or the like." Ex. 1005, 6; Pet. 19. Petitioner also relies on Namikawa's
Figure 1 to disclose the recited limitations "longitudinal opposed sidewalls"
and "ceiling adjoining the sidewalls." Pet. 20; Ex. 1005, 6.

With respect to the recited limitation "video display system
comprising a plurality of video display monitors each having a video screen,
and a video signal source unit operatively connected to said monitors,"
Petitioner relies on Namikawa's disclosure that "a plurality of liquid crystal
televisions 12 are disposed along the direction of travel on a wall face above
each seat 11 inside a car 10." Pet. 20; Ex. 1005, 6, Fig. 1. Namikawa also
discloses that "[e]ach liquid crystal television 12 broadcasts content taken
from broadcasting media, such as cable television for example, in other
words, programming such as various types of commercials, dramas, and
news." Ex. 1005, 6; Pet. 20–21.

With respect to the recited limitation "monitors being spaced along
the length of the car on opposed sides," Petitioner relies on Figure 1 of
Namikawa to show that the liquid crystal televisions are spaced along the
length of the car on opposed sides. Pet. 21; Ex. 1005, Fig. 1.

With respect to the recited limitation "each of said monitor being
mounted at the junction of the sidewall and ceiling," Petitioner relies on
Figure 1 of Namikawa to show that the liquid crystal televisions are
mounted at the junction of the sidewall and ceiling. Pet. 22; Ex. 1005, Fig. 1.
Petitioner asserts that the junction is shown as a concavely curved segment
extending from the vertical sidewall to the ceiling, which, Petitioner argues,
is consistent with the '602 patent's description that "there is commonly
provided a concavely curved segment of internal wall" at the junction

IPR2017-00117
Patent 6,700,602 B1

location.  Pet. 23; Ex. 1001, 4:1–3.  Namikawa Figure 1, annotated by
Petitioner, is shown below.



Pet. 23.  Annotated Figure 1, according to Petitioner, shows the location of
the junction in a rail car.

With respect to the recited limitation "with the screen of the monitor
substantially flushed with the adjacent wall surface structure of the car,"
Petitioner relies on Namikawa's Figure 1 to show this limitation, arguing
that the surfaces of flat panel screens 12 depicted in Figure 1 are "to a great
extent even with the adjoining walls."  Pet. 23; Ex. 1005, Fig. 1.

With respect to the recited limitation "directed obliquely downwardly
toward the car seats, so that each video screen is readily visible to
passengers in the subway car," Petitioner relies on Namikawa's disclosure of
"a plurality of liquid crystal televisions 12 [] disposed along the direction of
travel on a wall face above each seat 11 inside a car 10."  Pet. 23; Ex. 1005,
6, Fig. 1.  Namikawa also discloses that "[t]he liquid crystal television is
assembled in a mounting position for an advertising media using
conventional paper."  Ex. 1005, 6.  Namikawa further discloses that "a

IPR2017-00117
Patent 6,700,602 B1

passenger sitting in one facing seat can watch the liquid crystal television 12 above another seat and a passenger in the other seat can watch the liquid crystal television 12 above the seat of the one facing seat." *Id.* Petitioner argues that Namikawa's Figure 1 shows the liquid crystal televisions have screens that are directed obliquely downward toward the car seats so that each screen is readily visible to passengers in the subway car. Pet. 23–24; Ex. 1005, Fig. 1.

Patent Owner contends that Namikawa fails to disclose the recited limitation "each of said monitor being mounted at the junction of the sidewall and ceiling." Prelim. Resp. 24–25. Patent Owner argues that Namikawa's monitors are mounted to a wall face, not at the recited "junction of the sidewall and ceiling." Prelim. Resp. 24. Patent Owner quotes Namikawa, which states "the present device . . . dispos[es] a plurality of televisions on a wall face inside a car of a transit bus, electric train or the like." Prelim. Resp. 24; Ex. 1005, 4:3–7.

Patent Owner also contends Namikawa fails to disclose the recited limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car." Prelim. Resp. 25–27. Patent Owner argues Namikawa teaches externally mounting an LCD television where conventional paper advertisements were posted. Prelim. Resp. 25; Ex. 1005, 6. Patent Owner argues the televisions in Namikawa are mounted on the sidewall without inserting any portion of the television into the adjacent wall structure of the rail car. Prelim. Resp. 25. Patent Owner uses Figure 1 of Namikawa to show that the televisions are externally mounted with the screens protruding from the mounting surface. Namikawa Figure 1, annotated by Patent Owner, is shown below.

14

IPR2017-00117
Patent 6,700,602 B1



Prelim. Resp. 26.  Annotated Figure 1 shows the location of monitors mounted inside a rail car.

We are not persuaded that Namikawa sufficiently discloses the limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car."  Patent Owner asserts that the televisions shown in Namikawa's Figure 1 are externally mounted with the screens protruding from the mounting surface.  Prelim. Resp. 25.  Figure 1 does not have sufficient information or detail to determine that the screens of the monitors are substantially flushed with the adjacent wall surface. Petitioner, therefore, has not shown sufficiently that Namikawa discloses the limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car."

Accordingly, Petitioner has not made a sufficient showing that Namikawa discloses all the limitations of independent claim 1.  The same would be true, therefore, with respect to claim 6, which depends from claim

15

IPR2017-00117
Patent 6,700,602 B1

1. Thus, based on this record, we determine that Petitioner has not demonstrated a reasonable likelihood that it would prevail in showing that claims 1 and 6 are anticipated by Namikawa.

### J.  Ground B: Anticipation of Claims 1 and 6 by Miyajima

Petitioner contends that claims 1 and 6 of the '602 patent are anticipated by Miyajima.  Pet. 24–28.  With respect to the recited limitation in claim 1 "subway car for mass transportation," Petitioner relies on Miyajima's disclosure of a display device for "a railway carriage or the like."  Pet. 24; Ex. 1007, 5.  Figure 4 of Miyajima is shown below.



Ex. 1007, Fig. 4.  Figure 4 shows the inside and a cross-section of a rail car.

Petitioner relies on Miyajima's Figures 1, 3–6, 8, 10, 12, 14, and 22 to disclose the recited limitations "longitudinal opposed sidewalls," and "ceiling adjoining the sidewalls."  Pet. 25; Ex. 1005.

With respect to the recited limitation "video display system comprising a plurality of video display monitors each having a video screen, and a video signal source unit operatively connected to said monitors," Petitioner relies on Miyajima's disclosure of a "display device comprising a plurality of displays and a drive device installed in a vehicle, which performs display on the displays on the basis of stored image data."  Pet. 25;

16

IPR2017-00117
Patent 6,700,602 B1

Ex. 1007, 2. Miyajima further discloses that "display data such as image
data is transferred for display to the displays 01 by an electronic filing
device 02, which has a data access means for various optical discs 02a, or
magnetic disks such as hard disks or floppy disks, or various memory drive
device such as magnetic tape or semiconductor memories, and an
autochanger 02b for optical discs or the like." Ex. 1007, 4; Pet. 25–26.

With respect to the recited limitation "monitors being spaced along
the length of the car on opposed sides," Petitioner relies on Miyajima's
Figures 1, 3–6, 8, 10, 12, 14, and 22 to show the displays being spaced along
the length of the car on opposed sides. Pet. 26; Ex. 1007.

With respect to the recited limitation "each of said monitor being
mounted at the junction of the sidewall and ceiling," Petitioner relies on
Miyajima's Figures 1, 3–6, 8, 10, 12, 14, and 22 to show that the displays
are mounted at the junction of the sidewall and ceiling. Pet. 26; Ex. 1007.
Petitioner asserts that the junction is shown as a concavely curved segment
extending from the vertical sidewall to the ceiling, which, Petitioner argues,
is consistent with the '602 patent's description that "there is commonly
provided a concavely curved segment of internal wall" at the junction
location. Pet. 26–27; Ex. 1001, 4:1–3.

With respect to the recited limitation "with the screen of the monitor
substantially flushed with the adjacent wall surface structure of the car,"
Petitioner relies on Miyajima's Figure 1 to show this limitation, arguing that
the surfaces of the flat screens 01 depicted in Figure 1 are "to a great extent
even with the adjoining walls." Pet. 27; Ex. 1007, Fig. 1. Miyajima also
states that its displays have "shapes conforming to the shapes in the regions

17

IPR2017-00117
Patent 6,700,602 B1

where the displays are to be installed within the vehicle" for "efficient use of the space." Ex. 1007, 3; Pet. 27.

With respect to the recited limitation "directed obliquely downwardly toward the car seats, so that each video screen is readily visible to passengers in the subway car," Petitioner relies on Miyajima's Figure 4 to show that the displays are directed obliquely downward toward the car seats so that each screen is readily visible to the passengers. Pet. 27; Ex. 1007, Fig. 4.

Patent Owner contends Miyajima fails to disclose the recited limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car." Prelim. Resp. 30. Patent Owner argues Miyajima's Figure 1 depicts a gap between the display 01 and the sidewall. Miyajima's Figure 1 is shown below.



Ex. 1007, Fig. 1. Figure 1 shows a rail car and a cross-section of a rail car.

Patent Owner points out that Miyajima discloses "the structure is such that cooling air 08 passes by the backlight 01P, in order to limit the temperature-rise of the backlight 01P . . . cooling air 08 flows between the

IPR2017-00117
Patent 6,700,602 B1

vehicle carriage 03 and the backlight." Prelim. Resp. 30; Ex. 1107 ¶ 17.
Patent Owner argues that this illustrates external mounting of the curved (or
2 piece) displays away from the carriage wall, and that the displays are not
mounted "substantially flushed with the adjacent wall surface structure of
the car." Prelim. Resp. 30–31; Ex. 2002 ¶ 36.

We are not persuaded that Miyajima sufficiently discloses the
limitation "with the screen of the monitor substantially flushed with the
adjacent wall surface structure of the car." Patent Owner asserts that the
monitors shown in Miyajima Figure 1 are externally mounted away from the
carriage wall, not flush-mounted. Prelim. Resp. 30. Miyajima's Figure 1
does not appear to have sufficient information or detail to determine that
Miyajima's monitor screens are substantially flushed with the adjacent wall.
Miyajima's statement that its displays have "shapes conforming to the
shapes in the regions where the displays are to be installed within the
vehicle" for "efficient use of the space," does not resolve the question of
whether Miyajima's monitor screens are externally mounted or substantially
flushed with the adjacent wall. *See* Ex. 1007, 3; Pet. 27. Petitioner,
therefore, has not shown sufficiently that Miyajima discloses the limitation
"with the screen of the monitor substantially flushed with the adjacent wall
surface structure of the car."

Accordingly, Petitioner has not made a sufficient showing that
Miyajima discloses all the limitations of independent claim 1. The same
would be true, therefore, with respect to dependent claim 6. Thus, based on
this record, we determine that Petitioner has not demonstrated a reasonable
likelihood that it would prevail in showing that claims 1 and 6 are
anticipated by Miyajima.

19

IPR2017-00117
Patent 6,700,602 B1

### K. Ground C: Obviousness of Claims 1–4 and 6 over
### Namikawa, Sasao, Amano, and Maekawa

Petitioner contends that claims 1–4 and 6 of the '602 patent are obvious over the combination of Namikawa, Sasao, Amano, and Maekawa. Pet. 28–34. With respect to the recited limitations of claim 1 "subway car for mass transportation," "longitudinal opposed sidewalls," "ceiling adjoining the sidewalls," "monitors being spaced along the length of the car on opposed sides," "each of said monitor being mounted at the junction of the sidewall and the ceiling," and "directed obliquely downwardly toward the car seats, so that each video screen is readily visible to passengers in the subway car," Petitioner relies on the same teachings in Namikawa relied on for Ground A *supra.* Pet. 28, 31, 34.

With respect to the recited limitation "video display system comprising a plurality of video display monitors each having a video screen, and a video signal source unit operatively connected to said monitors," Petitioner relies on the same teachings in Namikawa relied on for Ground A *supra.* Pet. 28. Petitioner, however, also alternatively relies upon the combination of Namikawa and Amano or Maekawa to show that it would have been obvious to a person of ordinary skill in the art to employ such a video signal source unit to achieve Namikawa's goal of broadcasting through the LCD monitors programming and commercials to passengers. Pet. 28–30. For that combination, Petitioner relies on Amano's teaching of a vehicle with display devices and a transmitter for providing information to those display devices from a location not used by passengers, such as "the conductor's cab in a train." Pet. 29 (citing Ex. 1021, 2, Figs. 4–6).

20

IPR2017-00117
Patent 6,700,602 B1

Petitioner also relies on Amano's teaching that the transmitter on the vehicle comprises "a video information playback function 7b, which primarily plays back motion pictures stored on a video disk or a videotape." Pet. 29 (citing Ex. 1021, 3, Fig. 2). Also for that combination, Petitioner relies on Maekawa's teaching of display devices for trains having "television receivers" and antennas in the vehicle, and discloses that "[i]n recent years . . . television receivers have been installed in mobile bodies such as electric trains, and images that were played back by VTRs or the like have been received by these" television receivers. Pet. 29–30 (citing Ex. 1009, 1, Figs. 1–2).

With respect to the recited limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car," Petitioner relies on the same teachings in Namikawa relied on for Ground A *supra*. Pet. 28. Petitioner, however, also alternatively relies upon the combination of Namikawa and Sasao to teach this limitation. Pet. 31. Sasao is directed to "a display device that is structured so as to be housed at the interior of a wall" such that "only the front face of the image formation part can be seen from within the room." Ex. 1011, 2 (cited at Pet. 31). Figures 3 and 4 of Sasao are shown below.

IPR2017-00117
Patent 6,700,602 B1



Ex. 1011, Figs. 3, 4.  Figures 3 and 4, show how a television is placed behind a wall 15 such that the front of the display screen 3a is flush with the adjacent wall surface 15a.  Sasao teaches that "[t]he screen 3 protrudes forward from the cabinet 12 so that the front face 3a of the screen and the wall surface 15a in the room 14 are substantially flush."  Ex. 1011, 2 (cited at Pet. 32).

Petitioner argues that there is motivation to modify Namikawa by placing the screens substantially flushed with the adjacent wall surface.  Pet. 33.  Petitioner argues that this modification would have conserved space and resulted in a more aesthetically pleasing system.  *Id.*; Ex. 1014 ¶ 44. Petitioner also argues that this modification would have reduced the potential for vandalism and would have made it easier to clean the screens and the adjacent walls.  *Id.*  Petitioner argues that by 1997, flush mounting was the norm in the rail industry and the Federal Railroad Administration ("FRA") was in the process of enacting regulations that required railcars under FRA jurisdiction to have interior fittings (e.g., TVs) that were either recessed or flush mounted.  Pet. 33–34; Ex. 1014 ¶ 44.  In 1997, Petitioner

IPR2017-00117
Patent 6,700,602 B1

argues, one of ordinary skill in the art would have been aware of all of these reasons, and therefore motivated to place display screens in railcars substantially flush with adjacent surfaces.  Pet. 34.

Patent Owner contends the combination of Namikawa and Sasao fails to teach the recited limitation "with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car."  Prelim. Resp. 31–39.  Patent Owner argues that Namikawa does not reasonably convey to one skilled in the art that Namikawa's liquid crystal television is flush-mounted.  Prelim. Resp. 31–32.  Patent Owner also argues Sasao's teachings are irrelevant to the placement of Namikawa's flat panel displays because Sasao deals with rear-projection televisions and there is no mention of flat televisions or video monitors in Sasao.  Prelim. Resp. 34.

Patent Owner argues that Sasao did not deem flat screen televisions relevant to the problem it was solving.  *Id.*  Patent Owner argues that Sasao must not have found it necessary or desirable to flush-mount flat panel displays on a wall surface, and that one skilled in the art would not have found externally mounting a flat screen television or display monitor problematic.  Prelim. Resp. 34–36.  Patent Owner argues that the combination of Namikawa and Sasao is improper because the proposed modification would render Namikawa unsatisfactory for its intended purpose.  Prelim. Resp. 37.  There would have been no reasonable expectation of success, Patent Owner argues, because there would not be sufficient cavity space to accommodate Sasao's rear-projection televisions in Namikawa's rail cars.  Prelim. Resp. 38.

We are persuaded by Petitioner.  Patent Owner acknowledges that Sasao teaches "the screen 3 protrudes forward from the cabinet 12 so that *the*

23

IPR2017-00117
Patent 6,700,602 B1

*front face 3a of the screen and the wall surface 15a* in the room 14 *are substantially flush."* Prelim. Resp. 32; Ex. 1011 ¶ 10 (emphasis added). Thus, Sasao teaches aligning the front face of a television screen with the adjacent wall surface so that the front face of the screen and the surface of adjacent wall are *substantially flush* with each other.

Moreover, Patent Owner's arguments that the combination of Sasao and Namikawa would not work and that one with ordinary skill in the art would have had no reasonable expectation of success with respect to that combination are based on the notion that one of ordinary skill in the art would have attempted to install rear projection televisions in rail cars rather than simply apply Sasao's teaching of flush-mounting television screens to liquid crystal panels in rail cars. The test for obviousness, however, is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art. *In re Keller*, 642 F.2d 413, 425 (CCPA 1981). "[I]t is not necessary that the inventions of the references be physically combinable to render obvious the invention under review." *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983). "Combining the teachings of references does not involve an ability to combine their specific structures." *In re Nievelt*, 482 F.2d 965 (CCPA 1973). Petitioner is not proposing to modify Namikawa by incorporating rear-projection televisions in Namikawa's system.

Accordingly, based on the present record, Petitioner has made a sufficient showing that the combination of Namikawa, Sasao, Amano, and Maekawa teaches the limitations of independent claim 1.

IPR2017-00117
Patent 6,700,602 B1

With respect to dependent claims 2–4 and 6, we have reviewed and
considered the evidence and the arguments presented by Petitioner that the
combination of Namikawa, Sasao, Amano, and Maekawa sufficiently
teaches all the limitations of dependent claims 2–4 and 6.  Patent Owner
does not provide any specific arguments in response to Petitioner's showing
with respect to these claims.  Based on the present record, Petitioner has
made a sufficient showing that the combination of Namikawa, Sasao,
Amano, and Maekawa teaches all the limitations of dependent claims 2–4
and 6.  Thus, Petitioner has demonstrated a reasonable likelihood of
prevailing on this ground.

> L.  *Grounds D–F: Obviousness of Claims 1–4 and 6 over*
> *Combinations of Namikawa, Miyajima, Sasao, JTOA,*
> *Amano, and Maekawa*

Grounds D–F are directed to the alleged unpatentability of claims 1–4
and 6 based on various combinations of Namikawa, Miyajima, Sasao,
JTOA, Amano, and Maekawa.  Petitioner attempts to explain the differences
between the grounds with respect to the prior art, noting differences between
Namikawa/Miyajima and Sasao/JTOA.  *See* Pet. 39–55.  Petitioner explains
that Namikawa describes the display of video information while Miyajima
describes displays having shapes conforming to regions where the displays
are installed.  Pet. 54.  Petitioner also explains Sasao describes "substantially
flushed" mounting while JTOA relates to rail cars.  Pet. 55.

Institution of an *inter partes* review as to any particular ground is
discretionary.  37 C.F.R. § 42.108(a) ("the Board may authorize the review
to proceed . . . on all or some of the grounds of unpatentability asserted for
each claim"); *see also* 35 U.S.C. § 314(a) (authorizing institution of an *inter*

IPR2017-00117
Patent 6,700,602 B1

*partes* review under particular circumstances, but not requiring institution under any circumstances).

Indeed, the U.S. Court of Appeals for the Federal Circuit stated that "under [37 C.F.R. § 42.108], it is clear that the Board may choose to institute some grounds and not institute others as part of its comprehensive institution decision." *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1368 (Fed. Cir. 2016). This discretion is consistent with the requirement that the statutory provisions governing an *inter partes* review proceeding take into account "the efficient administration of the Office" and "the ability of the Office to timely complete [instituted] proceedings" (35 U.S.C. § 316(b)), as well as the regulatory provisions that mandate these proceedings be "construed to secure the just, speedy, and inexpensive resolution of every proceeding" (37 C.F.R. § 42.1(b)).

Accordingly, for reasons of administrative efficiency and to ensure timely completion of this proceeding, we exercise our discretion under 35 U.S.C. § 314(a) and 37 C.F.R. § 42.108(a) and do not institute an *inter partes* review as to Grounds D–F.

## II. CONCLUSION

For the foregoing reasons, we determine that Petitioner has established that there is a reasonable likelihood that it would prevail in establishing the unpatentability of claims 1–4 and 6 of the '602 patent.

IPR2017-00117
Patent 6,700,602 B1

## III. ORDER

Accordingly, it is

ORDERED that pursuant to 35 U.S.C. § 314, an *inter partes* review is hereby instituted on claims 1–4 and 6 of the '602 patent as unpatentable under 35 U.S.C. § 103 over Namikawa, Sasao, Amano, and Maekawa;

FURTHER ORDERED that no other grounds are included in the instituted review; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '602 patent is hereby instituted commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial.

IPR2017-00117
Patent 6,700,602 B1

PETITIONER:

Sheila Mortazavi
Zaed M. Billah
Armin Ghiam
ANDREWS KURTH KENYON LLP
SheilaMortazavi@andrewskurthkenyon.com
ZaedBillah@andrewskurthkenyon.com
ArminGhiam@andrewskurthkenyon.com


PATENT OWNER:

Jennifer Meredith
Sucheta Chitgopekar
MEREDITH & KEYHANI, PLLC
jmeredith@meredithkeyhani.com