UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCOTT BLAIR,

            *Plaintiff,*

v.

ALSTOM TRANSPORTATION, INC. AND KAWASAKI RAIL CAR, INC.,

            *Defendants.*

CA No. 1:16-cv-03391-PAE-JLC

---

### DECLARATION OF SHEILA MORTAZAVI

I, Sheila Mortazavi, declare as follows:

1. I submit this declaration in support of Kawasaki Rail Car, Inc.'s Motion for Judgment on the Pleadings, a Finding of Exceptional Case, and Attorneys' Fees and Costs Pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 54(d).

2. I am an attorney licensed to practice before the courts of the State of New York. I am admitted to practice before this Court and the U.S. Court of Appeals for the Federal Circuit. I am also registered to practice before the U.S. Patent and Trademark Office ("USPTO"). I have personal knowledge of the following facts, and if called as a witness, could competently testify thereto.

3. I am a partner with the law firm Hunton Andrews Kurth LLP, and lead counsel of record for Kawasaki Rail Car, Inc. ("Kawasaki") in this action, as well as in two related IPR proceedings (IPR2017-00117 and IPR 2107-01036) and the appeal of IPR2017-00117 before the U.S. Court of Appeals for the Federal Circuit (No. 18-2098).

4.      I have been responsible for reviewing and approving each invoice sent to Kawasaki for this action, and for the related IPR proceedings and Federal Circuit appeal. I carefully reviewed each draft invoice before approving it, and only approved amounts that I believed were reasonable, necessary, and appropriate for the defense of this action.

5.      In its motion, Kawasaki is seeking $33,544 in taxable costs, and is also requesting an award from this Court of $605,867.87 in attorneys' fees and $9429.96 in non-taxable costs that were incurred after the PTAB's May 2, 2018 Final Written Decision in IPR2017-00117, as detailed herein. These figures reflect amounts accrued for work performed through November 30, 2019, and invoiced through December 9, 2019. They do not include fees and costs for work performed since December 1, 2019.

6.      A summary of the billing entries, disbursements, and invoices described in this declaration is attached as Exhibit A.1-A.3. The fees and costs summarized in these Exhibit were necessarily incurred to defend this action and the services for which fees have been charged were actually and necessarily performed. Exhibit A.1 is an overview of the amount of fees billed by each of the attorneys, paralegals and support staff on a monthly basis since May 2, 2018, based on the dates invoices were sent to Kawasaki. Exhibit A.2 provides, for both the duration of this case and for the specific time period for which fees are being requested, the total number of hours worked by attorneys, paralegals and support staff, with columns that indicate both the total hours worked and the total hours billed per timekeeper (after subtracting any time written off or written down), and the effective billing rates per timekeeper. Exhibit A.3 provides an overview of the costs and expenses that Kawasaki seeks, with the total amount of the costs requested indicated at the bottom. The subtotals indicate the amount of the non-taxable expenses incurred

after the PTAB's May 2, 2018 decision, and the amount of the taxable costs incurred in defense of this action.

7.  Attached as Exhibits B.1-B.3 is a compilation of true and correct copies of Hunton's billing entries, reflecting fees incurred in defense of this action between May 1, 2018 and November 30, 2019. Detailed information about hours billed, amounts billed, and descriptive narratives can be found in Exhibits B.1-B.3. The detailed time entries in these exhibits reflect the actual, contemporaneous narratives written by Hunton timekeepers and entered into Hunton's time and billing system on a regular basis. As Kawasaki is only seeking fees for work performed since May 2, 2018 (the date of the Final Written Decision in IPR2017-00117), the amounts associated with entries dated May 1, 2018 have been removed from the total fees requested in Exhibit A.1-A.2. Kawasaki has paid all of the fees that have been invoiced through October 25, 2019, including the fees on Hunton invoices dated June 30, 2018 through October 25, 2019 for work performed from May 1, 2018 through September 30, 2019.

8.  The Hunton billing entries in Exhibit B.1-B.3 are directed to three internal matter numbers: 256018, 256019, and 264805. Matter 256018 contains billing records for work done on the district court case, and corresponds to Exhibit B.1. Matter 256019 contains billing records for work done on IPR2017-00117, including work on the related Federal Circuit appeal, and corresponds to Exhibit B.2. Matter 264805 contains billing records for work done on IPR2017-01036, and corresponds to Exhibit B.3. The fees documented under all three matters were directly related to and necessitated by plaintiff's filing of this infringement suit, and thus Kawasaki is seeking and should recover its fees for all three matters for the time period requested.

9.  Exhibits B.1-B.3 also include information about time written off or written down by Hunton and therefore excluded from the actual amounts invoiced to Kawasaki, as well as an across-the-board discount on fees for all timekeepers pursuant to a fee arrangement between Hunton and Kawasaki. As reflected in Exhibits B.1-B.3, and for the reasons described in paragraph 10 below, the discount increased for work performed from January 2018 through June 2018.

10. Until December 2017, I was the only partner working on matters 256018, 256019, and 264805. [Redacted], in late 2017 I began the process of transitioning some of the work to one of my partners, Mark Chapman, who had agreed to handle the day-to-day matters during my leave. However, [Redacted] [Redacted] [Redacted]. I therefore voluntarily increased the amount of the discount for the six-month time period that was affected, and, in addition, wrote off the time that I believed was necessary to ensure that Kawasaki was not billed for any duplicative work.

11. Hunton also records all matter-related disbursements in its time and billing system on a regular and itemized basis. For the purposes of this motion, Hunton has prepared a list of these costs and expenses billed to Kawasaki, attached as Exhibits C.1-C.3, which are true and correct copies of Hunton's cost reports from its time and billing system detailing and itemizing actual costs incurred from May 2, 2018 to November 30, 2019. These costs included, for example, travel, meals, lodging, photocopying, and online legal research. Disbursements for expert witness fees (which are not being sought in Kawasaki's motion) and printing costs for the Federal Circuit brief (which were separately taxed by the Federal Circuit), have been removed from total costs requested. The costs that Kawasaki seeks to recover are reasonable because they

are not associated with routine office overhead, but instead are identifiable out-of-pocket expenses incurred and ordinarily charged to clients. The costs for legal research by attorneys on Westlaw, Lexis, and PACER, for example, are costs that Hunton passes on to clients as separately chargeable disbursements. Kawasaki has paid all of the costs that have been invoiced through October 25, 2019.

12.     Attached as Exhibits D.1-D.2 are invoices for obtaining transcripts necessarily used for this case. Exhibit D.1 is the invoice for obtaining the transcript of the June 5, 2017 hearing on the renewed stay motion. That transcript is cited in Kawasaki's memorandum of law at page 6 and appended as Exhibit W to the accompanying Declaration of Zaed M. Billah, and was necessarily obtained for use in the case because the Court did not issue a written ruling on the stay motion and invited the parties to purchase the transcript. (Billah Decl. Ex. W at 53:3-8). Exhibit D.2 is a compilation of the invoices for certain depositions of expert witness declarants in the two IPRs, including:

> a. Lowell Malo – Mr. Malo provided expert declarations on behalf of Kawasaki in IPR2017-00117. He was deposed on November 28, 2017. In its Final Written Decision, the PTAB considered the issue of whether there was a reasonable expectation of success in combining prior art references. (Billah Decl. Ex. L at 28-29). Regarding this issue, the PTAB relied on Mr. Malo's deposition testimony regarding, *e.g.*, available space, concerns of overheating monitors, and proper ventilation in subway cars in finding the challenged claims unpatentable as obvious. (*Id.*).
>
> b. Joseph P. Zicherman – Mr. Zicherman provided expert declarations on behalf of Mr. Blair in IPR2017-01036. He was deposed on February 28,

2018 and again on April 13, 2018. The transcripts for these two depositions were cited by the PTAB in its Final Written Decision as Exhibits 1035 and 1038. (Billah Decl. Ex. O at 19, 22-23, 25-28, 44, 55). As indicated therein, the PTAB relied on Mr. Zicherman's testimony in considering various issues pertaining to whether the challenged claims were unpatentable as obvious, *e.g.*, whether fire safety concerns impacted a person of ordinary skill's motivation to flush-mount display monitors in subway cars. (*Id.*).

13. Attached as Exhibit E.1-E.2 are two certified English translations of invoices billed directly to Kawasaki's corporate parent, Kawasaki Heavy Industries, Ltd., by FRONTEO, Inc. ("FRONTEO"), a vendor that provides discovery services, including document copying and scanning, production, e-discovery, and other related services. *See* Declaration of Osamu Koyama, ¶¶ 2-4. In Exhibit A.3 summarizing these costs, only the invoiced amount for items designated as "documents scanning" and "production" have been included, which relate to the production of Kawasaki's non-ESI documents that the Court ordered the parties to complete when the Court granted the stay motion. The amounts invoiced by FRONTEO were converted from Japanese yen to U.S. dollars using the applicable exchange rate for each of the invoiced dates, attached as Exhibit E.3.

14. Exhibit F is a compilation of biographies for current Hunton attorneys that have worked on these three matters. I selected these attorneys to work on these matters based on their relevant technical knowledge and patent experience. These attorneys billed Kawasaki at the standard hourly rates commensurate with their level of skill and years of experience in the field. Exhibit A.2 lists the effective billing rates for each timekeeper, including these attorneys, pursuant to the

fee arrangement with Kawasaki for the duration of the representation on these three matters, as well as for the more limited time period for which Kawasaki seeks fees. These rates were calculated for both the total hours spent by the timekeepers (listed as "Base Hours") and the hours actually billed after write-offs and write-downs (listed as "Billed Hours").

15.     Mr. Chapman and I are the only two partner-level attorneys working on these matters. As lead counsel, I have been responsible for overseeing all three matters for the duration of the case, formulating strategy, handling day-to-day management of associates, and appearing on behalf of Kawasaki at hearings (including presenting Kawasaki's arguments at the oral argument before the Federal Circuit). Mr. Chapman handled similar duties while I was on leave, including presenting Kawasaki's arguments at the oral hearings in both IPRs. He has continued to provide strategic support since my return in July 2018.

16.     We have been assisted primarily by associates Zaed Billah and Armin Ghiam, who both helped draft the petitions and subsequent filings in the IPRs that invalidated the patent claims asserted by plaintiff in this litigation, and based on which the Court is being asked to dismiss this action. Mr. Billah is an experienced patent litigator who took the lead on the IPRs, handling most depositions and drafting the Appellee brief in connection with IPR2017-00117. Mr. Ghiam, in addition to his work on the IPRs, has handled the vast majority of discovery-related matters, including document collection and production efforts for this case. An associate who is no longer with the firm (Ian Moore) contributed as well, primarily on research.

17.     In addition to the attorneys, the following personnel have worked on these matters for the period for which Kawasaki seeks fees: (i) Bradford Mulder, Hunton's Managing Clerk, who has 35 years of experience advising on court rules and procedures and who handles all court filings; (ii) Raymond Galbraith, who is a Senior Paralegal with 25 years of experience supporting legal

teams with document management, cite checking, electronic service via secure FTP, deposition management, and electronic submission to the Court; (iii) Miesha Hollingsworth, a patent paralegal; and (iv) Yong Steven Wong, who has provided litigation support services, including document preparation and production.

18.     The billing rates charged by Hunton are in-line with prevailing market rates charged by Hunton's peer firms nationwide for similar services. This is supported by the American Intellectual Property Law Association's *Report of the Economic Survey* ("AIPLA survey"), a biannual report analyzing economic aspects of intellectual property practice, including attorney billing rates and costs for various types of intellectual property proceedings. Attached as Exhibits G and H are true and correct copies of excerpts of the AIPLA Surveys for 2017 and 2019, respectively. The AIPLA survey confirms that Hunton's billing rates for the attorneys who worked on this case are in-line with the range of partner and associate billing rates for attorneys of law firms of similar size and/or in the same geographic region during the relevant time period.

19.     According to the AIPLA survey, for the New York City Consolidated Metropolitan Statistical Area ("NYC CMSA"), in 2016 the billing rates for partners in private firms ranged from \$386 (10th percentile) to \$930 (90th percentile), with an average of \$582 (Ex. G at I-27), and in 2018 they ranged from \$365 (10th percentile) to \$964 (90th percentile), with an average of \$559 (Ex. H at I-29).  The billing rates for associates in 2016 ranged from \$205 (10th percentile) to \$775 (90th percentile), with an average of \$461 (Ex. G at I-39), and in 2018 from \$250 (10th percentile) to \$600 (90th percentile), with an average of \$387 for "partner track attorneys." (Ex. H at I-43).

20.     The AIPLA survey also includes tables summarizing the average litigation costs in patent infringement cases. *See, e.g.*, Ex. G at I-143; Ex. H at I-166. The "Total Cost" reported in these

tables includes "outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reports, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses." *See* Ex. G at 3; Ex. H at 3. For defending claims of patent infringement by non-practicing entities where the amount in controversy is at least $ 1 million, for work done by law firms with 60 or more attorneys, the average litigation costs inclusive of discovery, motions, and claim construction (but excluding pre-trial, trial, post-trial and appeal) was approximately $592,000 for 2016 and $908,000 for 2018 (for cases with $1-10 million at risk), $1.244 million for 2016 and $1.919 million for 2018 (for cases with $10-25 million at risk), and $2.328 million for 2016 and $2.72 million for 2018 (for cases with greater than $25 million at risk). *See* Ex. G at I-143, I-145, I-146; Ex. H at I-166, I-168, I-169. For defending claims of patent infringement by non-practicing entities in the NYC CMSA, the average litigation costs in 2016, inclusive of discovery, motions, and claim construction was approximately $338,000 (for cases with $1-10 million at risk), $669,000 (for cases with $10-25 million at risk), and $1.15 million (for cases with greater than $25 million at risk) (Ex. G at I-137, I-139, I-140); the same geographic data were not available for NYC CMSA for 2018 (Ex. H at I-160, I-162, I-163).

21.     The AIPLA survey also includes tables summarizing the average litigation costs before the PTAB. According to the 2017 AIPLA survey, for NYC CMSA, the average total cost in 2016 for an IPR was $477,000 through a PTAB hearing and $657,000 through appeal. *See* Ex. G at I-162 to I-163. While data for NYC CMSA was not available for 2018, the 2019 AIPLA survey did report that the average total cost in 2018 for an IPR on a "mechanical" invention by law firms with 60 or more attorneys was $426,000 through the PTAB hearing and $666,000 through appeal. *See* Ex. H at I-189-190.

22.     The total amount of fees and disbursements incurred by Kawasaki for each of the three matters (256018, 256019, and 264805) through November 30, 2019 is set forth in Exhibit I, and is comparable to the $1.47 million to $1.77 million average in the 2017 AIPLA for similar work.[1]  The amounts in Exhibit I are totals that have been invoiced to Kawasaki for work performed since the inception of this case by the law firms Andrews Kurth Kenyon LLP and Hunton.  I was a partner at Kenyon & Kenyon LLP until September 1, 2016, when Kenyon combined with Andrews Kurth LLP and became known as Andrews Kurth Kenyon LLP ("Andrews Kurth").  On April 1, 2018, Andrews Kurth merged with Hunton & Williams LLP, and was renamed Hunton Andrews Kurth LLP.  The amounts in Ex. I reflect data included in Hunton's time and billing system since September 1, 2016.  Data prior to September 1, 2016 is not available in that system.

23.     The amounts requested by Kawasaki are for services that directly resulted from and were reasonably necessary to defend against this lawsuit, and are in-line with the amounts set forth above in the APILA surveys.  The AIPLA surveys confirm that Kawasaki's total requested award through November 30, 2019 of $648,841.83, including attorneys' fees, taxable costs, and non-taxable costs, is reasonable.

24.     The detailed entries in the attached exhibits B.1-B.3 are designated "Confidential" under the Protective Order ordered by the Court on July 18, 2017.

---

[1] The $1.47 million amount comprises $338,000 for litigation based on NYC CMSA data (conservatively assuming only $1-10 million in controversy), $477,000 for an IPR through a hearing, and $657,000 for an IPR through appeal, as described in paragraphs 20-21. Using the $592,000 figure described above in paragraph 20 for defending claims of patent infringement by non-practicing entities based on the type of practice (*e.g.*, for firms of 60 or more attorneys) instead, the corresponding total amount is $1.77 million.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on December 9, 2019

Sheila Mortazavi

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/Sheila Mortazavi
Sheila Mortazavi