# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SCOTT BLAIR,

     Plaintiff,

   v.

ALSTOM TRANSPORTATION, INC.
AND KAWASAKI RAIL CAR, INC.,

    Defendants.

Case No. 1:16-cv-03391-PAE

**PLAINTIFF SCOTT BLAIR'S MEMORANDUM OF LAW IN OPPOSITION TO KAWASAKI RAIL CAR, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS, A FINDING OF EXCEPTIONAL CASE, AND ATTORNEYS' FEES AND COSTS PURSUANT TO 35 U.S.C. § 285 AND FED. R. CIV. P. 54(D)**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................i

TABLE OF AUTHORITIES.......................................................................................iii

I.     INTRODUCTION .................................................................................... 1

II.    FACTUAL HISTORY ............................................................................. 5

    A.    Background of the Blair Patent ........................................................ 5

    B.    Blair Learns that Kawasaki Is Infringing His Patent and Attempts to Resolve the Dispute................................................................................................ 6

    C.    Blair Sues Kawasaki in the Southern District of New York ................... 7

    D.    Kawasaki Petitions for *Inter Partes* Review ......................................... 7

    E.    Blair Appeals to the Federal Circuit.................................................... 10

    F.    Blair Settles with Alstom and Attempts to Settle with Kawasaki .......... 12

III.   ARGUMENT ....................................................................................... 12

    A.    Kawasaki Is Not Entitled to Attorneys' Fees Under Section 285 ........... 12

        1.    Legal Standard............................................................................ 13

        2.    This Is Not an Exceptional Case .................................................. 15

            a.    Mr. Blair's litigation position was substantively strong............... 15

            b.    This case was not litigated in an unreasonable manner. .............. 20

            c.    No other factors support an award of attorneys' fees................... 25

    B.    This Case Should Not Be Dismissed With Prejudice Because Blair Still Has a Valid Claim That Was Infringed by Kawasaki. .............................................. 27

    C.    Absent Dismissal With Prejudice or Change in the Legal Relationship of the Parties, Kawasaki Is Not the Prevailing Party and Is Thus Not Entitled to Either Attorneys' Fees or Costs. ...................................................................... 27

        1.    Kawasaki Is Not the Prevailing Party Because the Issue of Kawasaki's Infringement of Claim 10 Has Not Been Decided. ................... 28

2.    Even if the Court Finds That Kawasaki Is the Prevailing Party in This Case, There Are No Taxable Costs Under Rule 54(d)(1). ................................. 29

IV.    CONCLUSION ........................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Video Techs., LLC v. HTC Corp.*, No. 11-CV-6604, 2016 WL 1253899
(S.D.N.Y. Feb. 23, 2016) ................................................................ 30

*Advanced Video Techs. LLC v. HTC Corp.*, No. 1:11 CIV. 06604, 2015 WL 762148
(S.D.N.Y. Aug. 28, 2015) ................................................................ 14

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ........................................ 28

*Am. Vehicular Scis. LLC v. Autoliv, Inc.*, No. 5:16-CV-11532, 2019 WL 4741733
(E.D. Mich. Aug. 30, 2019) .......................................................... 18, 20

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) ............ 2

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019) ......................................... 8

*B.E. Techs., L.L.C. v. Facebook, Inc.*, 940 F.3d 675 (Fed. Cir. 2019) ........................................ 29

*Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 CIV. 224 (PAE), 2018 WL 3574864
(S.D.N.Y. July 25, 2018) ................................................................ 14

*Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120 (2d Cir. 2013) ...................... 28

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017) .......................... 14, 16

*Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 7013478
(N.D. Ill. Nov. 30, 2016) ................................................................ 30

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987) ................................................ 29

*Credit Acceptance Corp. v. Westlake Servs., LLC*, No. 13 C 01523, slip op.
(C.D. Cal. Jan. 5, 2016) ................................................................ 30

*Endo Pharms. Inc. v. Amneal Pharms., LLC*, 331 F.R.D. 575 (S.D.N.Y. 2019) .................. 29, 30

*EON Corp. IP Holdings LLC v. Cisco Sys. Inc,* 12–CV–01011, 2014 WL 3726170
(N.D. Cal. July 25, 2014) ................................................................ 21

*Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227 (1964) ................................................................ 29

*Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414
(N.D. Cal. Sept. 2, 2014) ............................................................ 14, 21

*Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321 (Fed. Cir. 2018) ......................................26

*Hockeyline, Inc. v. STATS LLC*, No. 13-CV-1446, 2017 WL 1743022
  (S.D.N.Y. Apr. 27, 2017) ..........................................................................................passim

*Homeland Housewares, LLC v. Hastie2Market, LLC,* 2013–1537, 2014 WL 4400184
  (Fed. Cir. Sept. 8, 2014) ......................................................................................20

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877
  (Fed. Cir. 2014) ......................................................................................16

*iLOR, LLC v. Google, Inc.,* 631 F.3d 1372 (Fed. Cir. 2011)........................................................18

*In re Clay*, 966 F.2d 656 (Fed. Cir. 1992) .................................................................................23

*Intellect Wireless, Inc. v. Sharp Corp.,* No. 10–6763, 2014 WL 2443871
  (N.D. Ill. May 30, 2014)......................................................................................15

*Jackson v. Time Warner Cable Admin. LLC*, No. 16-CV-8639, 2018 WL 5729295
  (S.D.N.Y. Nov. 1, 2018)......................................................................................28, 29

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 12-cv-6781,
  2018 WL 1596068 (S.D.N.Y. Mar. 28, 2018)..........................................................14, 17

*Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014).............14

*Lumos Tech. Co. v. JEDMED Instrument Co.*, No. 16CV6939, 2018 WL 910588
  (S.D.N.Y. Feb. 14, 2018)......................................................................................13

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943
  (Fed. Cir. 2010) ......................................................................................21

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011) .............................................................16

*Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787, 2018 WL 7504404
  (C.D. Cal. Dec. 27, 2018)......................................................................................24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) .............13, 14, 15, 21

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018)...........8, 22

*Ovadia v. Top Ten Jewelry Corp.*, No. 04CIV2690, 2005 WL 1949970
  (S.D.N.Y. Aug. 12, 2005)......................................................................................28

*Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225 (E.D.N.Y. 2012)................29

*Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018) .......................................................28

*Regeneron Pharm., Inc. v. Merus N.V.*, No. 14-CV-1650, 2018 WL 1472507
   (S.D.N.Y. Mar. 26, 2018) ..................................................................................20, 21

*RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348 (Fed. Cir. 2007)....................................28

*Serio–US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311 (Fed. Cir. 2006) .....13, 20

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ...................................................14

*Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010) ...................................................................28

*Small v. Implant Direct Mfg. LLC*, No. 06 CIV. 683, 2014 WL 5463621
   (S.D.N.Y. Oct. 23, 2015) ..........................................................................14, 15, 21

*Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268 (Fed. Cir. 2016) ...................................................21

*ThermoLife Int'l LLC v. GNS Corp.*, 922 F.3d 1347 (Fed. Cir. 2019).........................................26

*Think Prods., Inc. v. ACCO Brands Corp.*, No. 14CV6659, 2019 WL 5694131
   (E.D.N.Y. July 22, 2019) ...............................................................14, 16, 17, 18

*Vuona v. Merrill Lynch & Co.*, No. 10 CIV. 6529 PAE, 2013 WL 1971572
   (S.D.N.Y. May 14, 2013) ..........................................................................................28

*Worldwide Home Prods., Inc. v. Bed, Bath & Beyond, Inc.*, No. 11CV3633, 2015 WL 1573325
   (S.D.N.Y. Apr. 9, 2015) ............................................................................................21

**Statutes**

35 U.S.C. § 102 ............................................................................................................passim

35 U.S.C. § 103 ............................................................................................................passim

35 U.S.C. § 282 .........................................................................................................................16

35 U.S.C. § 285 ............................................................................................................passim

**Rules**

Fed. Cir. R. 34 ...............................................................................................................11, 18

Fed. Cir. R. 36 .........................................................................................................11, 12, 23

Fed. Cir. R. 38 ...............................................................................................................11, 19

Fed. R. App. P. 34 ......................................................................................... 11, 18

Fed. R. Civ. P. 54(d) ......................................................................................28, 29

Local Rule 54(1)(c) ............................................................................................30

**Other Authorities**

David S. Abrams & R. Polk Wagner, *Poisoning the Next Apple? The America Invents Act and Individual Inventors*, 65 STANFORD L. REV. 517 (2013)...................................................2

Michael Falcone, *Critics raise concerns at Commerce*, Politico (Nov. 2, 2009, 5:21 AM),  https://www.politico.com/story/2009/11/critics-raise-concerns-at-commerce-029002 ...................................................................................................................2

Brian J. Love & Shawn Ambwani*, Inter Partes Review: An Early Look at the Numbers*, 81 U. CHI. L. REV. DIALOGUE 93 (2014) ......................................................................7

Gene Quinn, *Rule 36 Judgment: The growing problem of one word affirmance by the Federal Circuit*, IPWatchdog (Aug. 22, 2016), https://www.ipwatchdog.com/2016/08/22/rule-36-judgment/id=72108/ .........................................................................................12

Gene Quinn & Steve Brachmann, *No End in Sight for Rule 36 Racket at Federal Circuit*, IPWatchdog (Jan. 29, 2019),  https://www.ipwatchdog.com/2019/01/29/no-end-sight-rule-36-racket-cafc/id=105696/..................................................................11, 12

Eugene T. Perez, *July 31, 2016 PTAB Trial Statistics*, Post Grant Proceedings (July 31, 2016), http://www.postgrantproceedings.com/july-31-2016-ptab-trial-statistics/.....................7, 8

Jason Rantanen, *Data on Federal Circuit Appeals and Decisions*, Patently-O (June 2, 2016), https://patentlyo.com/patent/2016/06/circuit-appeals-decisions.html ..............................12

Eric Savitz, *New Patent Law Means Trouble for Tech Entrepreneurs*, Forbes (Sep. 20, 2011, 4:04 PM), https://www.forbes.com/sites/ciocentral/2011/09/20/new-patent-law-means-trouble-for-tech-entrepreneurs/#49cdc9592327 ..................................................................2

Neal Solomon, *The Problem of Inter-Partes Review (IPR)*, IPWatchdog (Aug. 8, 2017),  https://www.ipwatchdog.com/2017/08/08/problem-inter-partes-review-ipr/id=86287/ .........................................................................................................2

U.S. Court of Appeals for the Federal Circuit Clerk's Office, *Oral Argument Guide* (Jan. 2019) ....................................................................................................................11, 18

*Federal Circuit Year in Review*, Gibson Dunn, 2018/2019, at 24, https://www.gibsondunn.com/2018-2019-federal-circuit-year-in-review/ (last visited Jan. 5, 2020)....................................................................................................................11

*Sens. Coons and Cotton, Reps. Stivers and Foster introduce bipartisan, bicameral bill to protect US patent holders, inventors*, Chris Coons, U.S. Senator for Delaware (Jul. 10, 2019), https://www.coons.senate.gov/news/press-releases/sens-coons-and-cotton-reps-stivers-and-foster-introduce-bipartisan-bicameral-bill-to-protect-us-patent-holders-inventors ..... 8

*USPTO Issues Final Rules on Claim Construction Standards in PTAB Proceedings*, Baker Botts Insights (Dec. 17, 2018), https://www.bakerbotts.com/insights/publications/2018/12/uspto-issues-final-rules-on-claim-construction-standards-in-ptab-proceedings. ........................................................... 8

## I.        INTRODUCTION

Defendant Kawasaki Rail Car, Inc. ("Kawasaki") has filed its Motion for Judgment on the

Pleadings, a Finding of Exceptional Case, and Attorneys' Fees and Costs ("Motion," Dkt. #107)

with the goal of chilling honest, fair advocacy.  Kawasaki's Motion relies on misrepresentations

of the record and lacks legal support.  Kawasaki contradicts its earlier positions before the U.S.

Patent and Trademark Office (USPTO), this Court, and the Federal Circuit Court of Appeals, and

projects onto Mr. Blair inappropriate conduct that Kawasaki itself has engaged in throughout this

dispute.  Contrary to Kawasaki's representations, Mr. Blair—the owner of a valid patent[1]—has

always acted reasonably, attempting at every turn to settle or otherwise conserve the parties' and

courts' resources.  Kawasaki is the sole party—and the only remaining defendant—that is

unwilling to end the litigation.  Instead, Kawasaki continues to use its substantial resources to

prolong this controversy and extinguish Mr. Blair's due process rights.

As an initial matter, Kawasaki's request for attorneys' fees is inappropriate because this is

a live case, and Kawasaki therefore is not the "prevailing party."  The Blair patent remains valid

and infringed, with claim 10 still intact.  Mr. Blair's complaint encompasses this claim, and entitles

him to the full extent of damages as would any other claim.  Kawasaki fails to meet this threshold

requirement and, for this reason alone, the Court should reject its request to dismiss this case.

Even assuming arguendo that Kawasaki could be considered the "prevailing party,"

however, the Court should reject its request for attorneys' fees and costs because this is not an

exceptional case as contemplated by 35 U.S.C. § 285.  Kawasaki ignores § 285 precedent and

---

[1] Kawasaki's assertion throughout its Motion that the Blair patent is "plainly invalid" is
demonstrably false.  The patent remains valid, with claim 10 intact.  The allegations in Mr. Blair's
complaint encompass this claim (Dkt. #39, at 27), and Kawasaki never challenged claim 10 in the
IPR proceedings, despite having the opportunity to do so.

cannot point to any analogous case that supports an award of attorneys' fees under similar circumstances.

First, Kawasaki fails to establish that this case stands out with respect to the substantive strength of Mr. Blair's litigation position. The factual record and precedent establish that his position was more than sufficiently strong. The Blair patent enjoys the presumption of validity as a matter of law. The patent underwent extensive scrutiny by the USPTO for five years, including *ex parte* reexamination at Mr. Blair's request and expense, and affirmance on appeal by the Patent Trial and Appeal Board (PTAB). Kawasaki succeeded in reversing these findings and invalidating the patent's challenged claims only after a new, defendant-friendly regime to challenge patent validity—*inter partes* review (IPR) before the PTAB—took effect in 2012.[2] Further, the PTAB only found the challenged claims obvious under 35 U.S.C. § 103[3] (based on the combination of at least three different references), which, according to precedent, militates *against* a finding of exceptionality. Kawasaki was, and is still, infringing Mr. Blair's patent. Kawasaki has been on

---

[2] In 2011, the Leahy-Smith America Invents Act (AIA), a patent reform bill, restructured the reexamination process and created IPRs. "IPRs were instituted as an oppositional process to provide tools for patent infringers to attack patents at any time in their twenty-year life cycle," and were based on the notion "that patents are bad, weak and poor quality." Neal Solomon, *The Problem of Inter-Partes Review (IPR)*, IPWatchdog (Aug. 8, 2017), https://www.ipwatchdog.com/2017/08/08/problem-inter-partes-review-ipr/id=86287/. The AIA was backed in large part by big tech and corporate lobbyists and has been criticized as harmful to individual inventors and small businesses. *See, e.g.*, David S. Abrams & R. Polk Wagner, *Poisoning the Next Apple? The America Invents Act and Individual Inventors*, 65 STANFORD L. REV. 517 (2013); Eric Savitz, *New Patent Law Means Trouble for Tech Entrepreneurs*, Forbes (Sep. 20, 2011, 4:04 PM), https://www.forbes.com/sites/ciocentral/2011/09/20/new-patent-law-means-trouble-for-tech-entrepreneurs/#49cdc9592327; Michael Falcone, *Critics raise concerns at Commerce*, Politico (Nov. 2, 2009, 5:21 AM), https://www.politico.com/story/2009/11/critics-raise-concerns-at-commerce-029002.

[3] Under § 103, an invention may be rejected as obvious if a person of ordinary skill in the art (POSITA) would have been motivated to combine *multiple* prior art references to arrive at the claimed invention. Under § 102 obviousness, by contrast, the prior art that teaches the invention is disclosed in a *single* reference. Whether an invention is obvious under § 103 is a fact-intensive inquiry. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017).

notice that it was infringing since 2010, yet it *never* presented the prior art references (including the Namikawa and Sasao references and the FRA Proposed Rules) that were the subject of the IPR until 2016—*after* reexamination before the USPTO, *after* several rounds of settlement talks, and *after* Mr. Blair filed the instant suit in this Court.  Kawasaki never moved to dismiss the instant case on any ground.  Kawasaki never made *any* claim before *any* tribunal that Mr. Blair's case was frivolous.  Kawasaki never moved for attorneys' fees or sanctions before any tribunal, including the PTAB, which developed great familiarity with the case during the IPR proceedings.  No tribunal ever mentioned that any of Mr. Blair's arguments were frivolous, including the Federal Circuit, which granted oral argument.  If Mr. Blair's position was as weak as Kawasaki maintains it was, then Kawasaki was grossly negligent and/or committed malpractice by (1) never mentioning prior art that it maintains was an open-and-shut case to Mr. Blair, the USPTO, or this Court in the years preceding its IPR petition and (2) never raising before any tribunal the purported baselessness of Mr. Blair's case.

Second, Mr. Blair did not litigate this case in an unreasonable manner.  The only case Kawasaki provides as an analogy is out-of-circuit and entirely distinguishable, and involved a patent owner that, *inter alia*, attempted to conceal relevant prior art and refused to engage in reasonable settlement talks.  Here, Mr. Blair has always acted transparently and in good faith, and has taken every opportunity to try to resolve this dispute.  Even though he was not required to do so, he requested reexamination of the patent by the USPTO based on prior art presented by Kawasaki.  He tried numerous times to settle the case, starting from when he first learned Kawasaki was infringing his patent in 2010.  Mr. Blair has been fully reasonable in his demands, as evidenced by his recent settlement with co-defendant Alstom Transportation, Inc. ("Alstom") under the same

terms available to Kawasaki.[4]  Under those terms, Mr. Blair was willing to forfeit his rights and dismiss the case with prejudice, even though his patent still has a live claim.

Additionally, Kawasaki's assertion that Mr. Blair has displayed "doggedness in the face of almost certain defeat" is entirely without merit.  As discussed above and *infra*, Mr. Blair did not face "certain defeat," as the substance of his case was strong.  And Mr. Blair's conduct was not unreasonably "dogged": after the PTAB issued a final written decision finding the challenged claims obvious, Mr. Blair conserved the parties' and courts' time and resources by filing only one appeal.[5]  In fact, it was Kawasaki that unsuccessfully argued to the Federal Circuit that Mr. Blair needed to appeal *both* IPRs and his failure to do so meant his case should be dismissed based on issue preclusion.  Further, after the Federal Circuit affirmed the PTAB's decision (as it does in most cases), Mr. Blair chose not to prolong the litigation by petitioning for en banc review or appealing to the U.S. Supreme Court, even though he had every right to do so, and even though many similarly situated patent owners have done so given the shifting legal landscape regarding IPRs.  *Kawasaki* is the party that has been litigating in an unreasonable manner, negotiating in bad faith, and, now, needlessly prolonging the litigation and wasting resources by filing this motion.

Furthermore, this case should not be dismissed because claim 10 of the Blair patent is still alive, valid, and infringed.[6]  Kawasaki chose not to challenge this claim in the IPR proceedings.  Should Mr. Blair exercise his rights by moving to amend his infringement contentions and litigate this claim before this Court,[7] it will be under more favorable claim construction and evidentiary standards (the

---

[4] Mr. Blair's settlement offer to dismiss with prejudice with the parties paying their own attorneys' fees and costs was particularly reasonable as set out in Section III.C.2, *infra.*

[5] Kawasaki challenged the Blair patent in two separate proceedings: IPR2017-00117 and IPR2017-01036.  Mr. Blair appealed the PTAB's decision in the first IPR only.

[6] There is no issue preclusion with respect to claim 10 as Kawasaki argues because the issues of validity and infringement of claim 10 have not been adjudicated on the merits.

[7] Mr. Blair inadvertently left claim 10 out of his infringement contentions but he may ask the Court for leave to amend, as parties may amend their pleadings.

*Phillips* standard and clear and convincing evidence standard).[8]  Thus, although Mr. Blair may have been

willing to stipulate to a dismissal with prejudice during negotiations[9] (as he settled with Alstom), given

Kawasaki's bullying tactics and determination to punish him and chill future litigants, Kawasaki's claim

for $700,000 against an individual litigant, and the significant cost Mr. Blair is being forced to incur

defending this baseless Motion, he now elects to preserve the rights to which he is entitled.

    For these reasons, Mr. Blair respectfully requests that the Court deny Kawasaki's Motion.

## II.  FACTUAL HISTORY

### A.  Background of the Blair Patent

    Mr. Blair's patent, U.S. Patent No. 6,700,602 ("Subway TV Media System"), issued March

2, 2004, with seven claims.  (Dkt. #108-1.)  The patent, with a priority date of 1997, relates to a

subway television media system that displays public service messages, entertainment and

advertising to subway passengers.  (*Id.*)  The invention provided an early solution to the need for

a subway car with substantially flushed monitors mounted at the junction of the sidewall and the

ceiling and directed obliquely downward toward the car seats, so that the video screens are readily

visible to substantially all passengers in the subway car.  (*Id.* at 9-10.)  The invention further

provided something on which riders could focus their attention and provided a novel source of

revenue for a mass transit subway system.  (*Id.*)  Prior to Mr. Blair's invention, entertainment of

subway passengers had generally been ignored.  (*Id.* at 9.)  Although Mr. Blair's invention may

---

[8] Mr. Blair is entitled to preserve his rights, particularly in light of recent changes to the USPTO's rules/procedures and evidentiary standards. Under Federal Circuit precedent, the district court uses the *Phillips* standard for claim construction, which takes a narrower look at the language of the claims and is less likely to encroach upon the prior art than the previous BRI standard, which gives claims their broadest interpretation, allowing for more overlap between the claimed invention and the prior art.  The clear and convincing evidentiary standard for validity used by the district court favors sustaining the validity of the patent claims because it is a higher bar than the preponderance standard used in IPRs.  These are decisive distinctions that are often dispositive.

[9] In its Motion, Kawasaki discussed the parties' settlement communications and therefore opened the door for Mr. Blair to also address them.

not seem significant to a lay person today, at the time of the invention it presented an incremental improvement over the prior art worthy of patent protection.  This improvement was confirmed by the PTAB during reexamination, where it found that *none* of the prior art presented (including two references Kawasaki presented during the IPR—Maekawa and Amano) "teach the limitation (of independent claim 1) of the screen of the monitor substantially flushed with the adjacent wall surface structure of the car."  (Ex. A, at 4-5.)  The Blair patent's novelty over the prior art was further evidenced by Kawasaki's failure to proffer any reference in the same field of invention (or even relating to the transportation industry generally) depicting a screen of a monitor substantially flushed with the adjacent wall surface.  (Blair Decl. ¶ 7.)  Mr. Blair also obtained a parallel patent based on the same disclosure and invention from the Canadian Intellectual Property Office.[10]

**B.      Blair Learns that Kawasaki Is Infringing His Patent and Attempts to Resolve the Dispute**

In 2010, Mr. Blair learned that Kawasaki was infringing his patent.  (*Id.* ¶ 3.)  Mr. Blair's counsel at the time, Desmarais LLP, sent Kawasaki a cease and desist letter, and Mr. Blair made his first attempt to amicably settle the dispute.  (*Id.* ¶¶ 2-3.)  In response, Kawasaki presented prior art to Mr. Blair, asserting that the invention was unpatentable.  (*Id.* ¶ 3.)  This prior art did not include the Sasao and Namikawa references that Kawasaki raised during the IPR.  (*Id.* ¶ 3.)

In an attempt to conserve the parties' time and resources, Mr. Blair requested and paid for an *ex parte* review of the patent by the USPTO, based on the prior art Kawasaki had presented.  (*Id.* ¶ 5.)  The patent survived five years of intense scrutiny by the USPTO and the validity of the patent was affirmed on appeal at the PTAB.  (Dkt. #108-1, 12-14; Blair Decl. ¶ 6.)  All of the prior

---

[10] Kawasaki's argument with respect to Mr. Blair's Canadian Patent application is misleading. Following amendments (as is the case in almost every patent application process), Mr. Blair was granted a Canadian Patent by the Canadian Intellectual Property Office with 26 separate claims covering his invention.  (*See* Blair Decl. ¶ 10, Ex. 1.)

art identified by Kawasaki was analyzed and ultimately rejected.  (Ex. B.)  The PTAB issued an *ex parte* reexamination certificate on January 29, 2015, confirming the validity of claim 1 and allowing claims 8-29.  (Dkt. #108-1, 12-14.)  After prevailing at the USPTO, Mr. Blair, for the second time, attempted to settle the dispute with Kawasaki.  (Blair Decl. ¶ 6.)  Subsequent to the issuance of the *ex parte* reexamination certificate, when Mr. Blair approached Kawasaki for settlement prior to initiating this action, Kawasaki did not argue Mr. Blair's patent was invalid under § 103 (or any other ground), nor did Kawasaki mention the Sasao, Namikawa, or FRA references.  (*Id.*)  Moreover, during prior negotiations, Kawasaki admitted that it did not have a reasonable noninfringement position.  (*Id.* ¶ 8.)

### C.   Blair Sues Kawasaki in the Southern District of New York

Only after his attempts to settle with Kawasaki failed, Mr. Blair sued Kawasaki and Alstom in this Court on May 6, 2016.  (*Id.* ¶ 9.)  Kawasaki never filed a motion to dismiss the case on any ground.  Kawasaki never indicated in any pleading or briefing that the case was frivolous or exceptional.

### D.   Kawasaki Petitions for *Inter Partes* Review

Instead, on October 25, 2016, Kawasaki decided to bypass the district court litigation and petitioned for *inter partes* review before the PTAB.  Kawasaki petitioned for two separate IPRs, over Mr. Blair's objections.  (Keyhani Decl. ¶ 4.)  At that time, defendants faced a great chance of success in IPR proceedings, which had more favorable evidentiary standards and procedures for defendants than district court proceedings.   Upon the enactment of IPR proceedings under the AIA, over 80% of IPR petitions were granted, and in most cases, one or more of the patent claims IPR petitions were instituted on have been invalidated.  *See* Brian J. Love & Shawn Ambwani*, Inter Partes Review: An Early Look at the Numbers*, 81 U. CHI. L. REV. DIALOGUE 93, 100 (2014); Eugene T. Perez, *July 31, 2016 PTAB Trial Statistics*, Post Grant Proceedings (July 31, 2016),

http://www.postgrantproceedings.com/july-31-2016-ptab-trial-statistics/# [hereinafter    "PTAB

Trial Statistics"]. IPRs are expensive and offer advantages for a large corporation fighting an

individual.  For many of these reasons, IPRs are controversial; the validity and constitutionality of

these proceedings has been and continues to be the subject of much criticism, including by the

Chief Justice of the U.S. Supreme Court and Congress.[11]

In its first IPR petition, *Kawasaki Rail Car, Inc. v. Blair*, IPR2017-00117, Kawasaki

challenged claims 1-4 and 6[12] of the Blair invention as unpatentable under numerous grounds.

(Dkt. #108-2.)[13]   Kawasaki relied on a reference duplicative of prior art previously presented

during reexamination that ultimately resulted in the patent office affirming the patent[14]

(Namikawa) and a reference outside the field of transportation or trains (Sasao).  (Dkt. #108-2;

Keyhani Decl. ¶ 5; Blair Decl. ¶ 4.)  At that time, the PTAB considered the challenged claims

---

[11] *See, e.g.*, *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1380-86 (2018) (Gorsuch, N., Roberts, J., dissenting); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019) (holding that the process under which PTAB's administrative patent judges were appointed was not constitutionally appointed). Additionally, a bipartisan group of U.S. senators recently introduced the STRONGER Patents Act to "make post-issuance proceedings before the Patent Trial and Appeal Board (PTAB) more fair and efficient for all parties, including solo inventors and small businesses."  *See Sens. Coons and Cotton, Reps. Stivers and Foster introduce bipartisan, bicameral bill to protect US patent holders, inventors*, Chris Coons, U.S. Senator for Delaware (Jul. 10, 2019), https://www.coons.senate.gov/news/press-releases/sens-coons-and-cotton-reps-stivers-and-foster-introduce-bipartisan-bicameral-bill-to-protect-us-patent-holders-inventors.

[12] Claim 1 is independent, and challenged claims 2-4 and 6 depend from claim 1.

[13] The PTAB has since revised its approach based on concerns of unfairness to the patent owner, inconsistency in the law, and judicial inefficiency, and now applies the *Phillips* standard used by the district courts.  *USPTO Issues Final Rules on Claim Construction Standards in PTAB Proceedings*,    Baker    Botts    Insights    (Dec.    17,    2018), https://www.bakerbotts.com/insights/publications/2018/12/uspto-issues-final-rules-on-claim-construction-standards-in-ptab-proceedings.

[14] The references raised by Kawasaki prior to the reexamination included two references it raised again in the IPR: Maekawa and Amano.  Like these references, Namikawa is directed to a subway car where television displays are disposed in the interior of the subway car and protrude (i.e. are not substantially flush) from the wall.

under the broadest reasonable interpretation (BRI) standard, as opposed to the *Phillips* standard used by this Court.

On May 4, 2017, the PTAB instituted Kawasaki's petition on only one of the grounds raised by Kawasaki: that claims 1-4 and 6 are obvious under § 103 based on the combination of, *inter alia*, Namikawa (Japanese Publication No. 04-085379) and Sasao (Japanese Publication No. 04-322579).  (Dkt. #108-11, at 28.)  Namikawa is directed to a subway car and teaches externally mounted LCD televisions that are located on a wall face above each seat.  (Dkt. #108-4, at 3-6, 12-13.)  Sasao, on the other hand, is not directed to a subway car or any other form of transportation but rather a television in a residential environment.  (Dkt. #108-6, at 2-3, 5-6.)  Because the monitors in Namikawa are not flush-mounted, Kawasaki could not meet the "substantially flush" claim element based on that reference or any other reference in the field of art.  Thus, the Sasao reference was necessary to render the Blair invention obvious.  Sasao teaches a rear projection television in an ordinary residential or commercial building that is structured to be supported on the floor of an interior of a wall of a room.  (*Id.*)  Additionally, the Sasao television is floor-supported, not mounted; the screen is in a sidewall, not mounted at the junction of the sidewall and ceiling; and the screen is flat on the sidewall, not directed obliquely downward so that each video screen is readily visible to, e.g., passengers in a subway car.  (*Id.*)

During the IPR, Kawasaki introduced the Federal Railroad Administration ("FRA") proposed rules into evidence.  These aspirational rules provided that, "to the extent possible," interior fittings should be recessed or flush-mounted, but did not address the flush-mounting of televisions specifically.  (Dkt. #108-34.)  Kawasaki's expert witness, who works for both Kawasaki and Alstom and testified that both defendants are among his biggest clients, asserted that a skilled artisan would have been motivated to combine the references to arrive at the Blair invention.  (Ex. C, at 16:2-22:3.)

9

Meanwhile, on March 6, 2017, Kawasaki also petitioned for *inter partes* review of claims 5, 7-9, and 11-29 in a separate proceeding, *Kawasaki Rail Car, Inc. v. Blair*, IPR2017-01036. (Dkt. #108-13.)  These claims are patentably distinct from those in the first IPR, have different claim elements, have more limitations to them, and are narrower.  (Dkt. #108-1, at 11-14.) Kawasaki alone made the strategic decision to bifurcate the IPRs.  The PTAB instituted review of all the requested claims on September 12, 2017.  (Dkt. #108-14.)  Kawasaki never challenged claim 10, despite arguing that it was not materially different than other claims and despite Mr. Blair's pleading encompassing that claim.[15]  (Dkt. #108-13.)  Once again, Kawasaki never asserted that the litigation was frivolous or exceptional, nor did the PTAB ever make such a determination.

On May 2, 2018, the PTAB issued its final written decision in the first IPR, reversing its earlier reexamination decision and holding that claims 1-4 and 6 were obvious over the prior art and unpatentable.  (Dkt. #108-12.)  The PTAB relied on Sasao—which has nothing to do with a subway car or transportation environment, credited Kawasaki's expert testimony despite his contradictory and problematic opinions, and invalidated the claims under the old BRI standard. (*Id.*)  At no time following this decision did Kawasaki try to dismiss the second IPR, which it had initiated, nor did Kawasaki or the PTAB make any mention that continuing with the second IPR would be frivolous.  Mr. Blair filed a notice of appeal of the PTAB's decision in the first IPR on June 21, 2018.  *See Blair v. Kawasaki Rail Car, Inc.*, 2018-2098 (Fed. Cir.).

While the appeal was pending, the PTAB issued its final written decision in the second IPR on September 10, 2018.  (Dkt. #108-15.)  Similar to the first IPR, the PTAB relied on Sasao, credited Kawasaki's expert testimony, and invalidated the claims under the old BRI standard.  (*Id.*) Following the PTAB decisions, Kawasaki never moved for costs, attorneys' fees, or sanctions.

---

[15] Mr. Blair's complaint against Kawasaki alleged that Kawasaki's "R160B and PA-5 railcars infringe *at least* claims 1, 2, 3, 4 and 6 of the '602 Patent."  Dkt. No. 39 at 27 (emphasis added).

### E.        Blair Appeals to the Federal Circuit

At that time of Mr. Blair's appeal in 2018, the Federal Circuit affirmed agency decisions involving § 103 obviousness 76% of the time.[16]  After careful deliberation, and confident in his infringement positions with respect to the claims in the first IPR on appeal, Mr. Blair chose not to continue pursuing the claims at issue in the second IPR out of a desire to conserve the parties' and the court's time and resources.  (Keyhani Decl. ¶ 8.)

Kawasaki never filed any motion challenging Mr. Blair's appeal as frivolous or moving for sanctions, despite Federal Circuit Rule 38's "warning against filing or proceeding with a frivolous appeal" and the court's "policy of defending this rule vigorously."  *See* Fed. Cir. R. 38.  Instead, on January 28, 2019, Kawasaki filed a motion to dismiss the case based on issue preclusion.  *See Blair v. Kawasaki Rail Car, Inc.*, 2018-2098 (Fed. Cir.), Dkt. #36-38.  In the motion, Kawasaki argued that because Mr. Blair did not appeal the second IPR to the Federal Circuit he was foreclosed, based on issue preclusion, from appealing the first IPR.  According to Kawasaki, Mr. Blair needed to have filed *multiple* appeals in order to preserve his rights.

The Federal Circuit did not grant Kawasaki's motion and elected to hear oral argument in the case.  Under Federal Circuit rules, the court will not allow oral argument if an appeal is frivolous.  *See* Fed. R. App. P. 34; Fed. Cir. R. 34; U.S. Court of Appeals for the Federal Circuit Clerk's Office, *Oral Argument Guide*, at 2 (Jan. 2019).  Following oral argument, the Federal Circuit affirmed the PTAB's decision in a Rule 36 judgment (as it does in approximately 50% of PTAB appeals).[17]  Federal Circuit Rule 36 contains no language stating that it should be used

---

[16] *See Federal Circuit Year in Review*, Gibson Dunn, 2018/2019, at 24, https://www.gibsondunn.com/2018-2019-federal-circuit-year-in-review/ (last visited Jan. 5, 2020). Section 103 obviousness was the top validity issue affirmed by the Federal Circuit. *Id.* at 13.

[17] There has been controversy over these types of decisions, which are increasingly common, especially among PTAB appeals. *See, e.g.*, Gene Quinn & Steve Brachmann, *No End in Sight for Rule 36 Racket at Federal Circuit*, IPWatchdog (Jan. 29, 2019),

where a case is baseless or frivolous or that its use indicates that a case was frivolous. *See* Fed. Cir. R. 36. At no time did the Federal Circuit or Kawasaki state that any of Mr. Blair's arguments were frivolous.[18] On appeal, claims 1-4 and 6 were affirmed invalid under the deferential "substantial evidence" standard of review for PTAB decisions. (Dkt. #108-19.) Claim 10, which was never challenged, remains a live claim. The Blair patent is therefore still valid.

### F. Blair Settles with Alstom and Attempts to Settle with Kawasaki

Following the Federal Circuit's decision, Mr. Blair elected not to petition for en banc review or appeal to the U.S. Supreme Court. (Keyhani Decl. ¶ 9.) Instead, Mr. Blair, seeking to end this dispute, as a settlement offered to stipulate to dismissal with prejudice and forfeit his right to litigate claim 10. (*Id.* ¶¶ 9-10.) Defendant Alstom, which is in the same position as Kawasaki and is also a corporation with considerable resources, agreed to these terms and settled with Mr. Blair. (*Id.* ¶ 11; Dkt. #113.) Alstom agreed to accept Blair's proposed terms and to bear its own costs, consistent with the Local Rules. (Keyhani Decl. ¶ 11; Dkt. #113.) Kawasaki, by contrast, refused to settle, insisting without legal support that Mr. Blair was required to pay its attorneys' fees and costs.[19] (Keyhani Decl. ¶¶ 6, 12.) On December 9, 2019, Kawasaki filed the instant Motion.

## III. ARGUMENT

### A. Kawasaki Is Not Entitled to Attorneys' Fees Under Section 285

---

https://www.ipwatchdog.com/2019/01/29/no-end-sight-rule-36-racket-cafc/id=105696/ ("Clearly, the Federal Circuit is using Rule 36 as a docket management tool in order to quickly decide cases. It is quite common, for example, for Rule 36 decisions to be issued the day after oral arguments, or at least within a few days of oral arguments."); Gene Quinn, *Rule 36 Judgment: The growing problem of one word affirmance by the Federal Circuit*, IPWatchdog (Aug. 22, 2016), https://www.ipwatchdog.com/2016/08/22/rule-36-judgment/id=72108/; Jason Rantanen, *Data on Federal Circuit Appeals and Decisions*, Patently-O (June 2, 2016), https://patentlyo.com/patent/2016/06/circuit-appeals-decisions.html.

[18] Kawasaki also maintains that Mr. Blair made waived arguments. Motion at 21-22. This is merely attorney argument, as the Federal Circuit never made such a determination. (Dkt. #108-19.)

[19] After Mr. Blair was unable to reach a settlement with Kawasaki, in December of 2019, Kawasaki was mailed a check in the amount of $504.48 to cover the stipulated appellate costs for Mr. Blair's appeal to the U.S. Court of Appeals for the Federal Circuit. (Keyhani Decl. ¶ 13.)

This is not an exceptional case as contemplated by § 285, and Kawasaki provides no credible argument to the contrary. Kawasaki's application of § 285 is incorrect, and the case law universally establishes that Kawasaki's position is without merit. The factual history and Kawasaki's own actions make clear that (1) this case does not stand out from others with respect to the substantive strength of Mr. Blair's litigation position and (2) this case was not litigated in an unreasonable manner. Kawasaki's request for attorneys' fees should be denied.

### 1.  Legal Standard

"[A]n 'exceptional' matter—and thus the only cases where fee awards may be ordered—is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[20] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "Exceptionalness is itself supposed to be the exception." *Hockeyline, Inc. v. STATS LLC*, No. 13-CV-1446, 2017 WL 1743022, at *2-3 (S.D.N.Y. Apr. 27, 2017). "[F]ee awards are not to be used as a penalty for failure to win a patent infringement suit." *Lumos Tech. Co. v. JEDMED Instrument Co.*, No. 16CV6939, 2018 WL 910588, at *2 (S.D.N.Y. Feb. 14, 2018); *Hockeyline*, 2017 WL 1743022, at *2-3 ("The fact that a patent holder loses a case does not make it 'exceptional.'"). "Absent misconduct in the litigation or in securing the patent," fee awards are proper only if "the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Tomita Techs. USA, LLC v. Nintendo Co.*, 182 F. Supp. 3d 107, 118 (S.D.N.Y. 2016) (citing *Serio–US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1321-22 (Fed. Cir. 2006)).

---

[20] "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Tomita Techs. USA, LLC v. Nintendo Co.*, 182 F. Supp. 3d 107, 118 (S.D.N.Y. 2016) (citation omitted).

Courts have held that "the conclusion that [two prior art references] *combined* to invalidate the [p]atent[] on obviousness grounds militates against an exceptionality finding." *Think Prods., Inc. v. ACCO Brands Corp.*, No. 14CV6659, 2019 WL 5694131, at *6 (E.D.N.Y. July 22, 2019) (citing *Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 12-cv-6781, 2018 WL 1596068, at *3 (S.D.N.Y. Mar. 28, 2018)). Further, "[t]here is . . . a presumption that an assertion of infringement of a duly granted patent is made in good faith." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (citation omitted). "[I]t is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *Hockeyline*, 2017 WL 1743022, at *2 (quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)). "A case is not automatically exceptional because a patent was stricken for obviousness; after all, an obvious patent was originally allowed by a patent examiner." *Id.* at *3.

"[A]lthough *Octane* reduced the showing required for an award on the ground of objective baselessness, courts continue to hold claims of baselessness to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06 CIV. 683, 2014 WL 5463621, at *3-4 (S.D.N.Y. Oct. 23, 2014). "[M]ost post-*Octane* cases awarding fees continue to involve substantial litigation misconduct" and have "concerned egregious behavior." *Hockeyline*, 2017 WL 1743022, at *5; *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014). *See, e.g.*, *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 CIV. 224 (PAE), 2018 WL 3574864, at *11 (S.D.N.Y. July 25, 2018) (awarding fees where, *inter alia*, head of plaintiff company explicitly expressed "an intention to pursue frivolous litigation with the intent of driving up its adversary's costs"); *Advanced Video Techs. LLC v. HTC Corp.*, No. 1:11 CIV. 06604, 2015 WL 7621483, at *6 (S.D.N.Y. Aug. 28, 2015) (awarding fees where purported owner of the patent-in-suit did not in fact own the patent); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336-

37 (S.D.N.Y. 2014) (awarding fees where patent troll's egregious conduct, including commencement of multiple lawsuits, suggested a desire to extract a nuisance settlement); *Intellect Wireless, Inc. v. Sharp Corp.,* No. 10–6763, 2014 WL 2443871, at *6 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without which plaintiff would not have obtained the patents-at-issue).

### 2. This Is Not an Exceptional Case

#### a. Mr. Blair's litigation position was substantively strong.

Contrary to Kawasaki's arguments, Mr. Blair's case does not "stand[] out from others with respect to the substantive strength of [his] litigating position," nor was it "objectively baseless" or "frivolous . . . such that no reasonable litigant could reasonably expect success on the merits." *Octane Fitness*, 572 U.S. at 554; *Hockeyline*, 2017 WL 1743022, at *3 (quoting *Taurus IP*, 726 F.3d at 1327); *Small*, 2014 WL 5463621, at *3 (denying attorneys' fees where, "although the Court (and, by all appearances, the Second Circuit) did not find th[e] case to be a particularly close call, it [could not] say that [the losing party's] arguments were so objectively unreasonable (as either a legal or factual matter) that no party "could see an opening . . . through which the arguments could be squeezed").

Evidence of the strength of Mr. Blair's position exists in the law and factual record, including that (1) the Blair patent enjoyed the presumption of validity and had been thoroughly scrutinized by the USPTO and affirmed by the PTAB after five years of reexamination based on prior art from Kawasaki; (2) the patent was found obvious under 35 U.S.C. § 103, which militates against a finding of exceptionality or frivolousness; (3) no tribunal that considered the case—i.e., the PTAB, the Federal Circuit, or this Court, ever indicated that it was baseless or frivolous in any way; and (4) Kawasaki's own conduct, including its failure to produce the additional patent references presented at the IPR (the "IPR references") until years after reexamination or to make *any* claim before *any* tribunal that Mr. Blair's case was frivolous.

First, Mr. Blair's litigating position was not frivolous because each claim of his duly granted patent enjoyed a presumption of validity. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 (2011) (citing 35 U.S.C. § 282); *Checkpoint Sys.*, 858 F.3d at 1375 ("[T]here is a 'presumption that an assertion of infringement of a duly granted patent is made in good faith.'"); *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877, 881 (Fed. Cir. 2014) ("A patent holder has the right to vigorously enforce its presumptively valid patent."). Under the governing law, ownership of a valid patent and the rule of presumptive validity are evidence of a "strong" litigation position. *See Think Prods.*, 2019 WL 5694131, at *5 ("[A]lthough the Patents were ultimately invalidated, [the plaintiff's] *litigation position* when commencing the lawsuit was strong considering its ownership of the Patents and the governing law on presumptive validity."). Further, in Mr. Blair's case, the patent was not only granted by the USPTO, it underwent an additional five years of scrutiny, including *ex parte* reexamination by the USPTO at Mr. Blair's request and expense, and affirmance of its validity by the PTAB. Dkt. #108-1, 12-14; Blair Decl. ¶¶ 5-6.) Additionally, Mr. Blair's infringement claim against Kawasaki remains strong and Kawasaki has never presented any compelling argument against infringement. (Blair Decl. ¶ 8.) This case is analogous to *Think Products*, where the court denied the defendants' request for attorneys' fees despite their success in IPR proceedings on § 103 obviousness grounds. *See Think Prods.*, 2019 WL 5694131, at *5.

Second, the fact that the challenged claims of the Blair patent were rendered obvious under § 103 militates against a finding of exceptionality. *See id.* at *6. Here, the challenged claims were invalidated by a combination of *at least three* prior art references (including Sasao and Namikawa and two references previously raised by Kaswasaki—Maekawa and Amano), rather than one reference alone. In fact, the PTAB rejected Kawasaki's arguments that the Blair patent was invalid based on any single reference. (Dkt. #108-11; 108-14.) Courts have made clear that when a case

involves the question of whether a POSITA would have been motivated to combine references, the plaintiff's position is not sufficiently unreasonable as to render the case "exceptional."  For example, in *Think Products*, the court explained:

> Turning to the invalidation of the Patents on the grounds of obviousness, the Court similarly concludes that Plaintiff's position was not so manifestly unreasonable that this action "stands out" from others.  Here, it was not just one or the other forms of prior art that rendered the Patents obvious, but rather a combination of the two . . . was necessary . . . . Because the law is clear that a determination regarding whether a patented invention is obvious is a fact-bound question . . . , the conclusion that [the two references] *combined* to invalidate the Patents on obviousness grounds militates against an exceptionality finding herein.

*Id.* (quotation and alterations omitted); *Joao*, 2018 WL 1596068, at *3 ("As to Defendants' Section 103 argument that Plaintiff "should have been aware that Joao's monitoring patents were invalid" when it filed suit in 2012, the law is clear that a determination regarding whether a patented invention is obvious is a fact-bound question.").

Third, no tribunal that considered Mr. Blair's case—e.g., the PTAB, the Federal Circuit, or this Court—ever indicated that it was baseless or frivolous in any way.  To the contrary, the USPTO granted Mr. Blair's patent in 2004 with seven claims, the patent survived five years of intense scrutiny by the USPTO and affirmance of the validity of the patent at the PTAB, and the PTAB issued an *ex parte* reexamination certificate in 2015, confirming claim 1 and allowing the additional claims 8-29—proof of the strength of Mr. Blair's case.

Likewise, the PTAB never suggested that Mr. Blair's case was frivolous.  On October 25, 2016, Kawasaki filed its first IPR petition.  This case was before the PTAB from that time until September 10, 2018, when the Board issued its last final written decision.  At no time did the PTAB, which had become deeply familiar with the case, ever indicate that Mr. Blair's case was baseless or unreasonable.  This includes the time between the Board's decision in the first IPR (in which it held that claims 1-4 and 6 were obvious over the prior art and unpatentable) and its

decision in the second IPR, when Mr. Blair was still litigating his case. Nor did the PTAB ever make any mention that continuing with the second IPR would be frivolous or wasteful in any way. This is analogous to cases such as *American Vehicular Sciences LLC v. Autoliv, Inc.*, where the court, in denying the defendants' request for attorneys' fees, noted that

> [T]he PTAB, in its Final Written Decisions on the three IPRs, made no finding that [Plaintiff's] position was "meritless," "frivolous," "baseless," etc., but only that it did not find [Plaintiff's] arguments "persuasive" . . . . [I]f [Plaintiff's] posture in the PTAB were as egregious as Defendants now portray, it is nonetheless curious that: (1) the PTAB, which could have awarded attorney fees *sua sponte*, did not do so; and, (2) Defendants made no request for fees or for a finding of exceptionality in the PTAB . . . , the very tribunal which was so deeply ensconced in the merits of the respective positions taken in the IPR proceedings and which has a particular expertise in evaluating the arguments made with respect to prior art, priority and presumably validity.

*Am. Vehicular Scis. LLC v. Autoliv, Inc.*, No. 5:16-CV-11532, 2019 WL 4741733, at *9 (E.D. Mich. Aug. 30, 2019), *report and recommendation adopted*, No. 16-CV-11532, 2019 WL 4735382 (E.D. Mich. Sept. 27, 2019); *see also Think Prods.*, 2019 WL 5694131, at *6 ("[A]lthough Defendants prevailed in the IPR Proceedings, the Court considers the PTAB Decision to be devoid of indications that Plaintiff's position therein was objectively baseless and therefore exceptional.").

After Mr. Blair filed a notice of appeal to the Federal Circuit, the appellate court never indicated that Mr. Blair's case was baseless or frivolous. To the contrary, the court elected to hear oral argument in the case. Under Federal Circuit rules, the court will not allow oral argument if an appeal is frivolous. *See* Fed. R. App. P. 34; Fed. Cir. R. 34; *Oral Argument Guide*, *supra*, at 2 (explaining that "it is the court's policy to allow oral argument unless . . . [t]he appeal is frivolous"); *iLOR, LLC v. Google, Inc.,* 631 F.3d 1372, 1379 (Fed. Cir. 2011) ("[T]he fact that this court held oral argument . . . in the . . . appeal suggests that we did not regard the case as frivolous.").

Fourth, Kawasaki's own conduct throughout the dispute supports that Mr. Blair's position was not baseless or frivolous.  For example, Kawasaki never brought up before any tribunal or during settlement talks the "new" combination of IPR references (bringing in Namikawa and Sasao) to argue invalidity of the patent claims until after the district court litigation commenced in 2016—*six years* after Mr. Blair first approached Kawasaki.  (Blair Decl. ¶ 6.)  It was only in initiating the 2016 IPR that Kawasaki, after the PTAB had affirmed the patent in light of Kawasaki's proposed invalidating prior art, patched together a duplicative reference (Namikawa)[21] and Sasao (a reference outside the field of transportation or trains) and found an expert (who was previously employed by Defendants) to testify that there would be motivation to combine these references. (*Id.* ¶ 4.)  If Mr. Blair's case was as baseless as Kawasaki maintains, then Kawasaki was grossly negligent and/or committed malpractice by never presenting or mentioning the "new" IPR references years earlier than it did.

Furthermore, Kawasaki did not—at any time in almost ten years—make *any* claim before *any* tribunal that Mr. Blair's case was frivolous despite countless opportunities to do so.  For example, Kawasaki never moved to dismiss the case before this Court—on any ground.  Kawasaki never objected to the case as frivolous during either of the IPRs, nor did it move for dismissal (until now), sanctions, or fees during or after the IPRs.  Likewise, Kawasaki never filed any motion challenging Mr. Blair's appeal to the Federal Circuit as frivolous or moving for sanctions, despite Federal Circuit Rule 38's "warning against filing or proceeding with a frivolous appeal" and the court's "policy of defending this rule vigorously."  *See* Fed. Cir. R. 38.  Instead, on January 28, 2019, Kawasaki filed a motion to dismiss the appeal based on issue preclusion, arguing that

---

[21] Like the references that were subject of the reexamination (e.g., Minesaki, Maekawa, and Amano), Namikawa is directed to a subway car where television displays are disposed in the interior of the subway car and protrude (i.e., are not substantially flush) from the wall.

because Mr. Blair did not appeal the second IPR to the Federal Circuit he was foreclosed, based on issue preclusion, from appealing the first IPR—that is, Mr. Blair needed to have filed *multiple* appeals in order to preserve his rights.  *See Blair v. Kawasaki Rail Car, Inc.*, 2018-2098 (Fed. Cir.), Dkt. #36-38.  Kawasaki's own actions establish that this case is not frivolous, baseless, or exceptional.  As the court in *American Vehicular Sciences* explained:

> [O]ther than a generic assertion in Defendants' answers to an entitlement to attorney's fees under § 285, at no time during this litigation or the proceedings before the PTO did Defendants put [Plaintiff] on clear notice that they considered this case to be "exceptional" prior to their October 5, 2018 letter to [Plaintiff] . . . . A party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its "parade of horribles" after all is said and done . . . . Defendant waited until . . . three years after [Plaintiff] filed this lawsuit and two years after Defendants filed their IPRs, before informing [Plaintiff] that they believed the litigation to be "objectively baseless" and "bad faith litigation." . . . . [D]efendant] insists that this case was objectionably frivolous from its inception and should never been filed.  Well, Rule 11 is the remedy for that.

*Am. Vehicular Scis.*, 2019 WL 4741733, at *10 (internal quotation marks and citations omitted).

### b.    This case was not litigated in an unreasonable manner.

As an initial matter, Kawasaki misrepresents the stringent legal standard for unreasonableness.  "It takes a great deal more than bringing and maintaining a lawsuit alleging infringement of a duly issued patent to qualify as 'misconduct.'"  *Hockeyline*, 2017 WL 1743022, at *5.  "Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions."  *Tomita Techs.*, 182 F. Supp. 3d at 118 (citing *Serio–US Indus.*, 459 F.3d at 1321-22).  *See, e.g., Homeland Housewares, LLC v. Hastie2Market, LLC,* 2013–1537, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014) (patent owner repeatedly failed to introduce admissible evidence of infringement, filed unsolicited briefs after issues were taken under submission, and filed multiple meritless motions for reconsideration); *Regeneron Pharm.,*

*Inc. v. Merus N.V.*, No. 14-CV-1650, 2018 WL 1472507, at *13 (S.D.N.Y. Mar. 26, 2018) (patent owner failed to abide by this Court's Individual Rules, even after being instructed to do so; failed to produce discovery and withheld evidence; misrepresented facts to the Court and to the defendant; and used privilege as a sword and a shield); *Worldwide Home Prods., Inc. v. Bed, Bath & Beyond, Inc.*, No. 11CV3633, 2015 WL 1573325, at *2 (S.D.N.Y. Apr. 9, 2015) (patent owner filed frivolous claims motivated by unbridled desire to gain an improper patent monopoly windfall).

Kawasaki's myriad assertions about Mr. Blair's pursuit of purportedly meritless arguments (*see, e.g.*, Motion at 21-23) do not support a finding of exceptionality, as courts have made clear. That Mr. Blair's arguments ultimately "were unsuccessful does not mean that they were unusually weak or that it was objectively unreasonable to take the case to trial." *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *see also Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 957 (Fed. Cir. 2010) ("The Court ultimately ruled against Plaintiff, but the issue was not 'so clear-cut that it was unreasonable for [Plaintiff] to litigate the question until it obtained a ruling . . . on the matter."); *Small*, 2014 WL 5463621, at *3 ("Although the Court (and, by all appearances, the Second Circuit) did not find this case to be a particularly close call, it cannot say that [the losing party's] arguments were so objectively unreasonable (as either a legal or factual matter) that no party could see an opening through which the arguments could be squeezed." (citation and alterations omitted)); *EON Corp. IP Holdings LLC v. Cisco Sys. Inc*, 12–CV–01011, 2014 WL 3726170 (N.D. Cal. July 25, 2014) (denying fee award even where the plaintiff's argument was "quite stretched" and its conduct "difficult to explain"). Nor does a party's "aggressive litigation strategy" (and Mr. Blair's strategy was not "aggressive") justify an award of attorneys' fees, "even post-*Octane*." *Gametek*, 2014 WL 4351414, at *3.

Indeed, all of Mr. Blair's actions and litigation decisions were entirely reasonable. For example, Mr. Blair had every right to continue litigating the second IPR after the PTAB decided

the first IPR on May 2, 2018.  The claims that were the subject of the second IPR (claims 5, 7-9, and 11-29) are patentably distinct from those in the first IPR, have different claim elements, have more limitations to them, and are narrower.  Thus, there was no guarantee that the PTAB would reach the same decision in that case.  Further, Mr. Blair appealed the first IPR decision to the Federal Circuit on June 21, 2018, while the second IPR was still pending.  It would have been illogical for Mr. Blair to abandon his case in the second IPR while the first IPR was in the midst of an appeal and the outcome still uncertain.  As discussed in Section III.A.2.a., *supra*, that neither the PTAB nor the Federal Circuit ever questioned or admonished Mr. Blair's conduct in pursuing his claims supports that he acted reasonably.

Mr. Blair's appeal of the first IPR to the Federal Circuit was also not unreasonable.  In its opinion upholding the constitutionality of IPRs, the U.S. Supreme Court specifically noted the availability of judicial review by the Federal Circuit in support of its decision.  *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018).  Further, as this Court explained in *Hockeyline*:

> [Defendant] further suggests that, after [Defendant] prevailed before PTAB, it was unreasonable for [Plaintiff] to appeal to the Federal Circuit and to decline [Defendant]'s offer to "walk away." . . . . However, simply disagreeing with PTAB's and [Defendant]'s legal conclusions does not make [Plaintiff]'s appeal unreasonable, given that [Plaintiff] was not advancing frivolous or objectively baseless arguments."

*Hockeyline*, 2017 WL 1743022, at *5.  As discussed in Section A.2.a., *supra*, Mr. Blair's arguments to the Federal Circuit, like those in *Hockeyline*, were not frivolous or objectively baseless, making his appeal reasonable.  For example, Mr. Blair's arguments to the Federal Circuit that the Board erred in considering Sasao (a reference directed at a commercial or residential environment and having nothing to do with the transportation industry) in combination with Namikawa (a rail car reference) were far from frivolous.  As the Federal Circuit has explained, the

22

prior-art analysis, for obviousness purposes, does *not* combine disparate elements from every conceivable field of human endeavor, and art that is "too remote to be treated as prior art" should not be considered.  *See In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992) (emphasis added).  Thus, Mr. Blair's argument regarding the PTAB's reliance on the "remote" Sasao reference to find Mr. Blair's patent claims obvious was supported by law and fact.  Similarly, Mr. Blair's argument that a POSITA would not have been motivated to combine these two distinct references was also supported by the record.  For example, Kawasaki's own expert testified that fires are a particular concern in a subway car (as opposed to a commercial or residential space) (Ex. C, at 72:18-76:20), supporting Mr. Blair's argument that a POSITA would not have looked to Sasao to relocate and enclose the monitors of Namikawa in a small, less-ventilated cavity so as to be flush with the wall.

Kawasaki's assertion that "Blair's arguments clearly lacked merit, as demonstrated by the Federal Circuit's summary affirmance three days after oral argument." (Motion at 22) is disingenuous and false.[22]  *See* Section II.E. & n.17, *supra*.  The Federal Circuit uses Rule 36 judgments to affirm the PTAB's decision in approximately 50% of PTAB appeals.  Under Rule 36:

> The court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following conditions exist and an opinion would have no precedential value: . . . . (d) the decision of an administrative agency warrants affirmance under the standard of review in the statute authorizing the petition for review . . . .

Fed. Cir. R. 36.  Rule 36 contains no language stating that it should be used where a case is baseless or frivolous or that its use indicates that a case was frivolous.  There is nothing exceptional or noteworthy about the Federal Circuit's use of Rule 36 in this case or the timing of the decision, and Kawasaki's assertion to the contrary is misleading.

---

[22] Moreover, as discussed in Section II.E and n.16, *supra*, in the past year the Federal Circuit has affirmed agency decisions involving § 103 obviousness 76% of the time.

Additionally, *Munchkin, Inc. v. Luv N'Care, Ltd.*, the out-of-circuit case cited by Kawasaki, is wholly distinguishable.   In *Munchkin*, there was considerable evidence of the plaintiff's egregious behavior that is not present here.   For example, the court gave "great weight" to the fact that the plaintiff hid prior art from both the defendant and the USPTO.   *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787, 2018 WL 7504404, at *5-6 (C.D. Cal. Dec. 27, 2018).   No such misconduct happened here.   Further, in *Munchkin*, the PTAB invalidated the patent-in-suit on § 102 grounds—not just § 103 grounds, as is the case here.   *Id.* at *2.   In determining that the case was litigated in an unreasonable manner, the court pointed, *inter alia*, to the plaintiff's failure "to continually assess its patent infringement claim," its failure "to explore settlement," and its seeking of a voluntary dismissal of all its claims following its loss at the Federal Circuit "in an attempt to avoid a final judgment that would establish [the defendant] as the prevailing party."   *Id.* at *6. Mr. Blair, by contrast, was diligent in his efforts to continually assess his patent infringement claim, including by requesting an *ex parte* reexamination before suing Kawasaki.   (Blair Decl. ¶ 5.)   He made multiple attempts to settle the case—both before and after the IPRs, and after the Federal Circuit affirmed the PTAB's decision—and he did, in fact, settle with co-defendant Alstom, on identical terms available to Kawasaki.[23]   (*Id.* ¶¶ 3, 6, 8-9; Keyhani Decl. ¶¶ 10-11.) The factual record makes clear that Mr. Blair did not show "doggedness in the face of almost certain defeat," and Kawasaki's argument is without merit.

To the contrary, all evidence supports that Mr. Blair was a reasonable and responsible litigant.   In addition to requesting *ex parte* reexamination and making multiple attempts to settle prior to bringing the instant suit against Kawasaki, Mr. Blair attempted to streamline the litigation

---

[23] Additionally, the court found that the case was exceptional with respect to the plaintiff's trademark-related claims and its egregious conduct involving those claims.   *Munchkin*, 2018 WL 7504404, at *4-6.

and conserve resources by not appealing the second IPR. (Keyhani Decl. ¶ 8.) It was Kawasaki that unsuccessfully argued to the Federal Circuit that Mr. Blair needed to appeal *both* IPRs and his failure to do so meant his case should be dismissed based on issue preclusion. *See Blair v. Kawasaki Rail Car, Inc.*, 2018-2098 (Fed. Cir.), Dkt. #36-38. Further, Mr. Blair decided not to petition for en banc review of the Federal Circuit's decision or appeal to the U.S. Supreme Court, even though he had every right to do so. (Keyhani Decl. ¶ 9.) Indeed, many similarly situated patent owners have done so, given the controversies and shifting legal landscape surrounding IPRs. And, in his most recent attempt to settle the case with Kawasaki, Mr. Blair was willing to forfeit his right to pursue the live claim on his patent and dismiss the case with prejudice. (*Id.* ¶ 10.) Throughout the dispute it has been Kawasaki—*not* Mr. Blair—that has taken unreasonable litigation positions.

      **c.**     **No other factors support an award of attorneys' fees.**

No evidence supports Kawasaki's argument that Mr. Blair acted in bad faith. Kawasaki's assertion "[t]hat Blair must have known from the outset that he was asserting an exceptionally weak patent can also be inferred from Blair's actions in attempting to prevent the PTAB proceedings altogether, likely because Blair realized his asserted claims would not withstand scrutiny" (Motion at 26) is false and nonsensical. By suing Kawasaki, Mr. Blair invited the opportunity for his patent to be scrutinized and was prepared to litigate his case vigorously. Because Kawasaki could have raised the same arguments and prior art before this Court as it raised during the IPR, the substance of Kawasaki's defense before the PTAB was likely no different than it would have been here. The reason Mr. Blair—like any reasonable litigant—objected to the institution of IPR proceedings (pursuant to PTAB procedures) is because they are extremely expensive and time-consuming. (Keyhani Decl. ¶ 4.) Additionally, the success rate for patent

owners in IPRs is low,[24] and the PTAB's evidentiary standards are much less favorable to patent owners than those used by the district court (BRI vs. *Phillips* standard for claim construction, and invalidation by a preponderance of the evidence vs. clear and convincing evidence in the district court).  No reasonable patent owner would consent to IPR proceedings after initiating litigation in district court,[25] and Kawasaki's argument should be rejected.

Additionally, Kawasaki never provided "early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior."  *See ThermoLife Int'l LLC v. GNS Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019).   As discussed, *supra*, Kawasaki had countless opportunities before the USPTO, PTAB, Federal Circuit, and this Court to provide notice of its belief that Mr. Blair's litigation behavior was exceptional.  This belief does not appear in a single briefing, including any motion to dismiss or for sanctions (or even in a letter to Mr. Blair setting out its argument for the exceptionality of the case under § 285).  (Keyhani Decl. ¶ 7.)  The vague and generic threat in the June 2018 conversation cited by Kawasaki (Motion at 27)—*eight years* into the dispute, and without any support (*see* Keyhani Decl. ¶ 6)—amounted to a nebulous threat by opposing counsel to Mr. Blair to drop his appeal to the Federal Circuit; it was not "early, focused, and supported notice" sufficient to justify a fee award.  *See ThermoLife*, 922 F.3d at 1357 (noting that "the record before us does not reflect [the] provision of that kind of notice . . . , whether by filing a motion under Federal Rule of Civil Procedure 11 or otherwise.").  *Cf. Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1341 (Fed. Cir. 2018).

Kawasaki's assertion that the totality of the circumstances supports an exceptional case finding should be rejected.

---

[24] In 2016, an overwhelming 85% of the PTAB's Final Written Decisions found at least some claims unpatentable. *See* PTAB Trial Statistics.

[25] In 2016, the patent owner in IPR proceedings chose to file a Preliminary Response 84% of the time.  *See* PTAB Trial Statistics.

**B.     This Case Should Not Be Dismissed With Prejudice Because Blair Still Has a Valid Claim That Was Infringed by Kawasaki.**

Kawasaki's argument for dismissal with prejudice is not appropriate because Kawasaki failed to invalidate all claims of Mr. Blair's patent.  Claim 10 of the Blair patent is still valid and was infringed by Kawasaki.[26]  Mr. Blair's complaint against Kawasaki alleged that Kawasaki's "R160B and PA-5 railcars infringe *at least* claims 1, 2, 3, 4 and 6 of the '602 Patent."  Dkt. #39 at 27 (emphasis added).  In the IPR proceedings brought by Kawasaki, Kawasaki elected not to challenge the validity of claim 10 of the Blair patent (despite opportunity and reason to do so) and is therefore foreclosed from challenging this claim in any future IPR proceedings.  35 U.S.C. § 315(b).  If Mr. Blair were to amend his infringement contentions[27] to include claim 10, Kawasaki would be exposed to the full scope of damages at issue in this case.  Accordingly, because there remains an unlitigated patent infringement claim, dismissal with prejudice is unwarranted.[28]

**C.     Absent Dismissal With Prejudice or Change in the Legal Relationship of the Parties, Kawasaki Is Not the Prevailing Party and Is Thus Not Entitled to Either Attorneys' Fees or Costs.**

**1.     Kawasaki Is Not the Prevailing Party Because the Issue of Kawasaki's Infringement of Claim 10 Has Not Been Decided.**

---

[26] Once Kawasaki unreasonably refused to stipulate to dismissal with prejudice with each side paying their own attorneys' fees and costs, Mr. Blair took the position that if the case were to be dismissed, it should be dismissed without prejudice.  (Keyhani Decl. ¶ 12.)  Co-defendant Alstom, by contrast, accepted the reasonable compromise and settled with Mr. Blair on his proposed terms.  (*Id.* ¶ 11.)

[27] As Kawasaki concedes, its motion to stay this case was granted during the early stages of this case—prior to the Markman hearing or any expert disclosures. Dkt. #30 at 13-14 (arguing that the early stage of this case favors a stay and that a "significant amount of work remains to be done in this case –including claim construction and summary judgment proceedings."); Dkt. #47 at 1-2. Further, in its Motion, Kawasaki argued that there is "no meaningful distinction" between claim 10 and claims 20 and 22 (which were included in Blair's infringement contentions).  Motion at 25-26.  Therefore, Kawasaki would not be prejudiced by the addition of claim 10 to this action as no additional claim construction briefing or discovery uniquely related to claim 10 would be necessary.

[28] Should the Court decide not to address the viability of claim 10 in this action, it could dismiss the claims that were invalidated in the IPRs with prejudice and dismiss claim 10 without prejudice.

Generally, "[t]he United States follows the 'American Rule' regarding attorney's fees: '[T]he prevailing party may not recover attorney's fees as costs or otherwise.'" *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 123 (2d Cir. 2013) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney fees **to the prevailing party**." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018) (emphasis added). "By its terms, the statute requires that the recipient of attorney fees be a 'prevailing party.'" *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1352–53 (Fed. Cir. 2007). Similarly, with respect to costs, under Rule 54(d)(1), costs are only awarded to a "prevailing party." *Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010); *Vuona v. Merrill Lynch & Co.*, No. 10 CIV. 6529 PAE, 2013 WL 1971572, at *4 (S.D.N.Y. May 14, 2013) ("[I]n general, a litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs."). A litigant is a "prevailing party" if "there has been a 'judicially sanctioned change in the legal relationship of the parties.'" *Jackson v. Time Warner Cable Admin. LLC*, No. 16-CV-8639, 2018 WL 5729295, at *1 (S.D.N.Y. Nov. 1, 2018). A dismissal without prejudice generally does not bestow "prevailing party" status upon a party. *RFR,* 477 F.3d at 1352-53. "Where there is no final resolution of a case, there cannot be a "prevailing party" within the meaning of Section 285. *Ovadia v. Top Ten Jewelry Corp.*, No. 04CIV2690, 2005 WL 1949970, at *2 (S.D.N.Y. Aug. 12, 2005).

Here, in addition to there being no substantive merit to Kawasaki's motion, an award of attorneys' fees or costs is not warranted as a matter of law. Dismissal with prejudice is inappropriate in this case because the legal relationship of the parties remains unchanged. Indeed, whether Mr. Blair were to prevail on his infringement allegations based on one claim (claim 10) or all of the asserted claims, the damages at issue in this case would remain the same. Therefore, the PTAB's invalidation of some, but not all, of the asserted claims in this case does not relieve

Kawasaki of any potential liability and thus does not alter the legal relationship of the parties. *See Jackson,* 2018 WL 5729295, at *1. Because the issue of infringement of claim 10 has not been decided, Kawasaki is not the "prevailing party" under 35 U.S.C. § 285 or Rule 54(d)(1) and is therefore not entitled to any attorneys' fees or costs.

Kawasaki's reliance on *B.E. Technologies* is misplaced. In *B.E. Technologies*, all of the claims asserted against the defendants were invalidated by the PTAB and *the plaintiff agreed* that dismissal of the case was appropriate. *B.E. Techs., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 676-77 (Fed. Cir. 2019). There, the only disputed issue was whether the *form* of dismissal (that the case was dismissed as moot as opposed to with prejudice) meant that defendant was not the "prevailing party," which would thus relieve the plaintiff from being responsible for defendant's costs. *Id*. at 677-78. Here, dismissal—under either 12(c) and 12(b)(6) or for mootness—is not appropriate because the PTAB did not invalidate all of the asserted claims in this case and Mr. Blair still has a valid and infringed claim asserted against Kawasaki. Accordingly, Kawasaki is not the prevailing party and is not entitled to any costs in this case.

> **2.    Even if the Court Finds That Kawasaki Is the Prevailing Party in This Case, There Are No Taxable Costs Under Rule 54(d)(1).**

Kawasaki's purported "taxable costs" are not warranted. "Items proposed by winning parties as costs should always be given careful scrutiny," *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225, 234 (E.D.N.Y. 2012) (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)). Rule 54 does not "grant[ ] courts discretion to tax whatever costs may seem appropriate." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987); *Endo Pharms. Inc. v. Amneal Pharms., LLC*, 331 F.R.D. 575, 579 (S.D.N.Y. 2019). The party seeking costs bears the burden of establishing that each expense it seeks to recover "fall[s] within an allowable category of taxable costs." *Id.* at 578–79.

29

Local Rule 54.1 provides that taxation of copying costs is strictly limited to copies "used or received in evidence." S.D.N.Y. Civ. R. 54.1(c)(5); *Advanced Video Techs., LLC v. HTC Corp.*, No. 11-CV-6604, 2016 WL 1253899, at *5 (S.D.N.Y. Feb. 23, 2016).  The Court denies requests for fees where the party seeking reimbursement failed to demonstrate that the copying costs were incurred in creating exhibits that were used at trial or received in evidence. *See, e.g.,* Local Rule 54(1)(c)(5); *Advanced Video Techs.*, 2016 WL 1253899, at *5-6.  Additionally, this Court and others have made clear that no costs from IPR proceedings are taxable.  *See, e.g.*, *Hockeyline*, 2017 WL 1743022, at *8-9; *Credit Acceptance Corp. v. Westlake Servs., LLC*, No. 13 C 01523, slip op. (C.D. Cal. Jan. 5, 2016); *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 7013478 (N.D. Ill. Nov. 30, 2016).

Here, Kawasaki has not[29] and cannot meet its burden of demonstrating that the expenses it seeks to recover "fall[s] within an allowable category of taxable costs."[30]  *Endo Pharms.,* 575 at 578-79.  The "scanning" costs do not involve copies "used or received in evidence."  And the deposition transcripts referenced by Kawasaki all relate to the IPR and were directed to standards (e.g., BRI standard for claim construction and invalidation by a preponderance of the evidence) not relevant to the district court litigation.  Awarding costs to Kawasaki is not appropriate in this case.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Blair respectfully requests that the Court deny Kawasaki's Motion in full.

---

[29] Indeed, Kawasaki fails to provide even a basic explanation as to which categories it believes its purported costs fall under.

[30] Even if the cost of the hearing transcript is considered taxable, it amounts to $116.40.

Dated: January 6, 2020

Respectfully submitted,

<u>s/Dariush Keyhani</u>
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SCOTT BLAIR,

     Plaintiff,

    v.

ALSTOM TRANSPORTATION, INC.
AND KAWASAKI RAIL CAR, INC.,

    Defendants.

Case No. 1:16-cv-03391-PAE

**CERTIFICATE OF SERVICE**

    I hereby certify that Plaintiff Scott Blair's Memorandum of Law and accompanying exhibits and declarations in Opposition to Defendant Kawasaki Rail Car, Inc.'s Motion for Judgment on the Pleadings, a Finding of Exceptional Case, and Attorneys' Fees and Costs Pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 54(d) were electronically filed on this January 6, 2020.  Notice of this filing will be sent to all parties and counsel of record by operation of the Court's electronic filing system and the parties may access this filing through the Court's system.


         /s/Anya Engel
         Anya Engel