UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SCOTT BLAIR,

                                        Plaintiff,                    16 Civ. 3391 (PAE)

                  -v-

ALSTOM TRANSPORTATION, INC., and                 OPINION & ORDER
KAWASAKI RAIL CAR, INC.,

                                  Defendants.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      This is a patent infringement case, in which plaintiff Scott Blair has claimed infringement of 28 of the 29 claims in U.S. Patent No. 6,700,602 (the "'602 Patent" or "Blair Patent"). The Court stayed the case in June 2017, pending the outcome of two *inter partes* review ("IPR") proceedings that defendant Kawasaki Rail Car, Inc. ("Kawasaki") initiated before the Patent Trial and Appeal Board ("PTAB"), within the United States Patent and Trademark Office ("USPTO"), challenging the patentability of the Blair Patent. All of the challenged claims were found unpatentable by the PTAB.

      Before the Court is Kawasaki's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and for attorneys' fees and costs pursuant to 35 U.S.C. § 285 and Federal Rule of Civil Procedure 54(d). For the reasons that follow, the Court grants Kawasaki's motion for judgment on the pleadings and dismisses this case. The Court also denies Kawasaki's motion for attorneys' fees and non-taxable costs, pursuant to 35 U.S.C. § 285, but finds that Kawasaki is entitled to taxable costs, pursuant to Rule 54(d).

      This decision proceeds in three parts. First, the Court briefly reviews the factual background and procedural history of this lawsuit. Then, the Court addresses Kawasaki's motion

for judgment on the pleadings. Finally, the Court addresses Kawasaki's motion for attorneys' fees and costs.

## I. Background

The Court assumes familiarity with the facts and procedural history of this case. The Court describes here the aspects of this litigation on which Kawasaki's motions turn.

### A. Factual Background[1]

#### 1. The Parties

Plaintiff Blair is a resident of Toronto, Canada. AC ¶ 2. He is the owner of the '602 Patent. *Id.* ¶ 11.

---

[1] The facts relevant to Kawasaki's motion on the pleadings are drawn primarily from the Amended Complaint. Dkt. 39 ("AC"); *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 229 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009))); *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011) (courts may also consider "documents incorporated by reference in the complaint" (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))). For the purposes of resolving the motion for judgment on the pleadings, all factual allegations in the AC are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court has also considered the '602 Patent—attached as Exhibit A to the declaration of Zaed M. Billah, Esq., Dkt. 108 ("Billah Decl.")—because it is integral to and incorporated by reference in the AC. *See, e.g.*, *Ferring B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265, 275 (S.D.N.Y. 2019) (citing *DiFolco*, 622 F.3d at 111). The Court has also taken judicial notice of certain documents filed in the parties' IPRs and subsequent appeal to the Federal Circuit—also attached as exhibits to the Billah declaration—"not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings," *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (citation omitted), and "to determine whether claims are barred by [that] litigation," *Cowan v. Codelia*, No. 98 Civ. 5548 (JGK), 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

For purposes of resolving Kawasaki's motions for fees and costs, the Court has also considered the declaration of Osamu Koyama, Dkt. 109 ("Koyama Decl."), the declaration of Mark A. Chapman, Dkt. 110 ("Chapman Decl."), the declaration of Sheila Mortazavi, Dkt. 115 ("Mortazavi Decl."), the declaration of Anya Engel, Dkt. 118, the declaration of Scott Blair, Dkt. 119 ("Blair Decl."), the declaration of Dariush Keyhani, Dkt. 120 ("Keyhani Decl."), the reply declaration of Mark A. Chapman, Dkt. 122, the reply declaration of Sheila Mortazavi, Dkt. 123 ("Mortazavi Supp. Decl."), and the reply declaration of Zaed M. Billah, Dkt. 124.

Defendants Kawasaki and Alstom Transportation, Inc. ("Alstom") are each New York corporations that design and manufacture heavy equipment and transportation-related products, including commuter trains and rail cars for mass transportation. *Id.* ¶¶ 3–6.

### 2. The '602 Patent

On March 2, 2004, Blair was issued the '602 Patent, titled "Subway TV media system," which included seven claims. Billah Decl., Ex. A at ECF p. 11; *see* AC ¶ 11. The patent, with a priority date of 1997, "relate[d] to . . . video display systems mounted in and operating in mass transit subway cars." Billah Decl., Ex. A at ECF p. 9. The patented invention's "object" was "to provide a public service message display system, entertainment system and advertising system for mass transit subway cars," with screens "readily visible to passengers in the subway car." *Id.*



FIG.2

As shown in Figure 2 of the '602 Patent (above), video monitors (labeled "22") are mounted at the junction of the sidewall and the ceiling, and the screens are "angled downwardly for ease of viewing of passengers." *Id.* at ECF pp. 4, 11.

On August 16, 2011, Blair initiated an *ex parte* reexamination proceeding for the '602 Patent with the USPTO. *Id.* at ECF p. 12. On January 29, 2015, the USPTO issued a reexamination certificate, which confirmed the patentability of claim 1 and added Blair's new claims 8 through 29. *Id.* at ECF pp. 12–14. Claim 1 of the '602 Patent, which is illustrative of the 28 claims Blair asserted in this infringement litigation, provides for:

> 1. A subway car for mass transportation including longitudinal opposed sidewalls, a ceiling adjoining the sidewalls, a video display system comprising a plurality of video display monitors each having a video screen, and a video signal source unit operatively connected to said monitors, said monitors being spaced along the length of the car on opposed sides thereof, each of said monitor being mounted at the junction of the sidewall and ceiling, with the screen of the monitor substantially flushed with the adjacent wall surface structure of the car, and directed obliquely downwardly toward the car seats, so that each video screen is readily visible to passengers in the subway car.

*Id.* at ECF p. 11. Claim 10 of the '602 Patent —the only claim not asserted in this litigation— provides for a "video display monitor . . . disposed within the transitional wall portion such that it contains no visible edges or protuberances." *Id.* at ECF p. 13.

### 3. The Alleged Infringement

The AC alleges that defendants are "manufacturing, offering for sale and selling railcars, including but not limited to, [Alstom's] R160 and [Kawasaki's] PA-5 railcars that directly infringe at least claims 1, 2, 3, 4 and 6 of the '602 Patent." AC ¶ 12. Through infringement contentions dated November 14, 2016, Blair also asserted violations of claims 5, 7 through 9, and 11 through 29. *See* Billah Decl., Ex. DD at ECF p. 2. Blair did not assert a violation of claim 10.

According to the AC, Kawasaki infringed Blair's patent, in violation of 35 U.S.C. § 271(a)–(c), by: (i) making, offering for sale, selling, distributing, promoting, or providing, for use by others, infringing railcars; (ii) inducing the purchase and use of the infringing railcars; and (iii) contributing to the infringement of the '602 Patent by third parties,

including the Port Authority Trans-Hudson Corporation and the Metropolitan Transportation Authority of New York City. AC ¶¶ 25–29. The AC alleges that, in 2010, defendants were put on notice of their infringement, but they continued to manufacture, offer for sale, and sell their infringing railcars. *Id.* ¶ 13. Blair sought, *inter alia*, damages for monetary losses caused by defendants' alleged willful infringement. *Id.* ¶¶ 31–33, Prayer for Relief.

### B. Relevant Litigation Conduct and Procedural History

#### 1. Pre-Litigation History

In 2010, Blair concluded that Kawasaki was infringing his patent. Blair Decl. ¶ 3. Through his counsel at the time, Desmarais LLP, Blair sent Kawasaki a cease and desist letter and attempted to license Kawasaki the '602 Patent. Blair Decl. ¶¶ 2–3. In response, Kawasaki presented prior art to Blair through his counsel, asserting that his invention was unpatentable. *Id.* ¶ 3. Thereafter, in August 2011, Blair initiated the above-described *ex parte* reexamination proceeding, through which the USPTO eventually, on January 29, 2015, confirmed the patentability of claims 1 and 8–29 of the '602 Patent. Billah Decl., Ex. A at ECF pp. 12–14. After the issuance of the *ex parte* reexamination certificate, Blair again attempted to negotiate with Kawasaki to settle the dispute and license the '602 Patent. Blair Decl. ¶ 6.

#### 2. The Stay of this Litigation and the IPR Proceedings

On May 6, 2016, Blair filed his initial complaint against Alstom and Kawasaki Heavy Industries, Ltd. ("Kawasaki Heavy Industries")—Kawasaki's corporate parent. Dkt. 1; *see* Dkt. 41 (Kawasaki's corporate disclosure). On October 25, 2016, Kawasaki filed an IPR petition before the PTAB, challenging the patentability of the claims identified in Blair's initial complaint (claims 1–4 and 6). *See* Billah Decl., Ex. B. Kawasaki's petition identified several prior art references showing substantially identical subway display systems. *Id.* at 11–19.

5

On November 14, 2016, Blair disclosed his infringement contentions to defendants, asserting 23 additional claims of the '602 Patent. Billah Decl., Ex. DD at ECF p. 2 (adding claims 5, 7–9, and 11–29). On January 10, 2017, Kawasaki filed a motion to stay this litigation in light of its IPR petition, Dkts. 29–30, which Blair opposed, Dkt. 33. On February 10, 2017, the Court denied the motion to stay, but invited Kawasaki Heavy Industries to renew the motion if the PTAB instituted IPR proceedings. Dkt. 38. On February 14, 2017, Blair filed the AC, which, *inter alia*, substituted Kawasaki for Kawasaki Heavy Industries. *See* AC at 1. On March 6, 2017, Kawasaki filed a second IPR petition to address the 23 new claims Blair had asserted in his infringement contentions. *See* Billah Decl., Ex. M.

On May 4, 2017, the PTAB instituted the first IPR, finding that Kawasaki "established that there is a reasonable likelihood that it would prevail in establishing the unpatentability of claims 1–4 and 6 of the '602 patent." Billah Decl., Ex. K at 26. On May 5, 2017, Kawasaki renewed its motion to stay this litigation pending the IPR. Dkt. 47. Later that day, Blair opposed the renewed motion. Dkt. 48.[2] On June 5, 2017, this Court stayed all proceedings in this case, pending a decision by the PTAB in the first IPR proceeding. Dkt. 61. On September 12, 2017, the PTAB instituted the second IPR, again finding that Kawasaki "has established a reasonable likelihood of prevailing on the claims challenged in the Petition." Billah Decl., Ex. N. at 2.

On May 2, 2018, the PTAB issued its decision in the first IPR, finding that all challenged claims of the '602 Patent (claims 1–4 and 6) were obvious because of prior art and, therefore, unpatentable. *See* Billah Decl., Ex. L at 2. On May 16, 2018, the parties filed a joint status letter

---

[2] On May 17, 2017, Alstom filed its own motion to stay litigation pending the IPR, Dkts. 49–50, which Blair also opposed, Dkt. 54.

reporting the PTAB decision. Dkt. 75. In the letter, Blair, despite the adverse IPR outcome, argued that the Court should lift the stay and proceed to litigate his infringement claims. *Id.* at 2.

In June 2018, Kawasaki's counsel told Blair's counsel that, given the first IPR decision, it would be unreasonable to continue to litigate. Chapman Decl. ¶ 6. Specifically, Kawasaki's counsel explained that the key issues in the second IPR had already been decided in Kawasaki's favor and an appeal to the Federal Circuit likely would not be successful because the Federal Circuit would defer to the PTAB's findings of fact. *Id.*

On June 21, 2018, Blair filed a notice of appeal of the PTAB's decision in the first IPR. *See Blair v. Kawasaki Rail Car, Inc.*, No. 18-2098, Dkt. 1 (Fed. Cir. June 22, 2018). On September 10, 2018, while the appeal of the first IPR was pending, the PTAB issued its decision in the second IPR, again finding all challenged claims unpatentable. *See* Billah Decl., Ex. O at 3. Blair did not appeal the second IPR decision. *See* Keyhani Decl. ¶ 8.

On August 8, 2019, the Federal Circuit summarily affirmed the PTAB's decision in the first IPR. *See Blair v. Kawasaki Rail Car, Inc.*, 774 F. App'x 683 (Fed. Cir. 2019); Billah Decl., Ex. S. After the Federal Circuit's decision, Blair settled with Alstom, agreeing to a dismissal with prejudice with each side paying its own attorneys' fees and costs. Keyhani Decl. ¶¶ 10–11; *see* Dkt. 113 (order of dismissal as to Alstom). Kawasaki, in contrast, having prevailed in the IPR proceedings, did not agree to forgo seeking attorneys' fees and costs. *See* Billah Decl., Ex. V; Keyhani Decl. ¶¶ 6, 12.

### 3. The Instant Motion

On December 9, 2019, Kawasaki filed the instant motion for judgment on the pleadings, a finding that this is an exceptional case, and attorneys' fees and costs, Dkt. 106; a brief in support, Dkt. 107 ("Def. Mem."); and supporting declarations, Dkts. 108–11. On January 6, 2020, Blair filed an opposition, Dkt. 117 ("Pl. Mem."), and supporting declarations, Dkts.

7

118–20. On January 17, 2020, Kawasaki filed its reply, Dkt. 121 ("Def. Reply"), and supporting declarations, Dkts. 122–24.

## II. Motion for Judgment on the Pleadings

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *accord L-7 Designs, Inc.*, 647 F.3d at 429. Thus, the Court accepts all of the non-movant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion for judgment on the pleadings, a party must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id*. at 570. The complaint thus must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Dargahi v. Honda Lease Tr.*, 370 F. App'x 172, 174 (2d Cir. 2010) (summary order) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

### B. Application

All 28 of the '602 Patent claims asserted by Blair in this litigation have been cancelled. *See* Billah Decl., Exs. L, O, S. It is well-established that when "a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are

asserted becomes moot." *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, No. 15 Civ. 1259 (JPO), 2017 WL 3309724, at *8 (S.D.N.Y. Aug. 2, 2017) (quoting *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013)); *see, e.g.*, *Goodman v. Samsung Elecs. Am., Inc.*, No. 17 Civ. 5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017) (same); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14 Civ. 6544 (KAM), 2018 WL 1525686, at *8 (E.D.N.Y. Mar. 27, 2018) (same). As the Federal Circuit has explained, "the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent infringement litigation." *Fresenius USA*, 721 F.3d at 1339. The AC asserts a single count of patent infringement against Kawasaki based on alleged infringement of only the cancelled patent claims. Thus, it is beyond dispute that the AC no longer states a claim and must be dismissed as moot.

Blair does not argue otherwise. *See* Pl. Mem. at 27 n.28 (conceding that the Court "could dismiss the claims that were invalidated in the IPRs with prejudice"). Instead, without citing any authority, Blair devotes a single paragraph of his 30-page opposition to arguing that he should be allowed "to amend his infringement contentions to include claim 10," which Kawasaki did not challenge in the IPR proceedings. Pl. Mem. at 27 (citation omitted). Blair's Hail Mary throw is easily batted down.

As reviewed above, Blair did not assert claim 10 in his initial complaint or his infringement contentions. *See* Dkt. 1; Billah Decl., Ex. DD. In January 2017, more than eight months into this litigation, Blair sought leave to amend his complaint, Dkt. 32, which the Court granted, Dkt. 37. But the AC, like its predecessor, did not mention claim 10. Blair's suggestion

9

that he now might seek to reanimate the mooted AC by asserting infringement of claim 10 is untimely and would be highly prejudicial to Kawasaki.

The local patent rules require a patentee to serve infringement contentions identifying "each claim . . . allegedly infringed," and "each product or process . . . that allegedly infringes each identified claim" within 45 days after the initial scheduling conference. S.D.N.Y. Local Patent R. 6. Local Patent Rule 9 applies "[t]he duty to supplement in [Federal Rule of Civil Procedure] 26(e)" to those contentions, which in turn requires a party to "supplement or correct its disclosure . . . in a *timely* manner," Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). "Whether [a] supplemental disclosure[] [is] timely . . . depends on when [the disclosing party] learned the information that rendered the previously-filed [infringement] contentions incomplete." *Simo Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019). Here, the initial scheduling conference in this case was held in September 2016. Dkt. 18. And since at least January 2017, Blair repeatedly has made unqualified representations to the Court that he has "asserted claims 1–9 and 11–29 of the '602 Patent," Dkt. 45 at 1, and that there are "28 asserted claims in this case," Dkt. 33 at 1. *See also, e.g.*, Dkt. 48 at 1; Dkt. 54 at 1–2; Dkt. 58 at 1. Blair has not uncovered any new relevant information in the intervening period. Accordingly, the Court would deny any attempt to add claim 10 to Blair's infringement contentions as untimely.

Blair also suggests, in a footnote, that he "may ask the Court for leave to amend, as parties may amend their pleadings." Pl. Mem. at 4 n.7. Where, as here, "'a scheduling order governs amendments to the complaint,' and a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must show good cause to modify the deadline under [Federal] Rule [of Civil Procedure] 16." *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 195

(2d Cir. 2017) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)).  This standard is stricter than that of Rule 15(a)(2), which provides that courts "should freely give leave [to amend] when justice so requires," while leaving district courts with "discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

  The addition of claim 10 to this case would unduly prejudice Kawasaki, which reasonably relied on Blair's contentions and representations to the Court in determining the scope of this case and defending itself accordingly.  Specifically, Kawasaki filed IPR petitions challenging *all* of the '602 Patent claims asserted against it; but because Blair had not asserted a violation of claim 10 or otherwise reasonably identified claim 10 as within the scope of this litigation, Kawasaki had no need to challenge that claim.  If the Court now allowed Blair's suggested untimely amendment, Kawasaki would be time-barred by statute from challenging claim 10 in another IPR.  *See* 35 U.S.C. § 315(b).  Such a result would significantly prejudice Kawasaki—which has diligently defended against Blair's asserted claims across several years of litigation, two IPRs, and an appeal to the Federal Circuit.  And it would encourage future gamesmanship by parties asserting patent claims.  The Federal Rules and the Local Patent Rules do not allow for such an outcome.

  Additionally, there is significant reason to believe it would be futile for Blair to assert claim 10 in this, or any future, litigation. Claim 10 is a dependent claim, which relies on claims 8 and 9, both of which were cancelled.  Claim 10 merely adds the limitation that the video display monitor is positioned "such that it contains no visible edges or protuberances."  Billah Decl., Ex. A at ECF p. 13.  There is no meaningful distinction between this limitation and the cancelled limitations in claims 20 and 22 requiring monitors with transparent units to be

"flushed" or to have "no protuberances." *Id.* The PTAB's judgments as to the 28 asserted claims of the '602 Patent thus would very likely preclude Blair's assertion of claim 10. *See, e.g.*, *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376–77 (Fed. Cir. 2018) (final judgments from PTAB proceedings have issue-preclusive effect); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342–43 (Fed. Cir. 2013) (patent claims must be different in some "patentably significant" way to defeat issue preclusion); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) (additional limitation in a dependent claim did not materially alter validity issue).

Accordingly, the Court dismisses the AC as moot. To the extent Blair suggests he may amend the complaint, the Court also denies leave to amend.

### III. Attorneys' Fees and Costs

Kawasaki seeks attorneys' fees and non-taxable costs pursuant to 35 U.S.C. § 285 and taxable costs pursuant to Rule 54(d). The Court denies the former request but grants the latter.

#### A. Attorneys' Fees under 35 U.S.C. § 285

##### 1. Applicable Legal Standards

Ordinarily, under the "American Rule," each party must bear its own attorneys' fees. However, where there is "explicit statutory authority," courts may award attorneys' fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602–03 (2011) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Here, the relevant statutory authority stems from 35 U.S.C. § 285, which provides that, in a patent action, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

Under § 285, "a favorable judgment on the merits is not necessary for a defendant to be deemed a prevailing party for purposes of statutory fee-shifting." *Raniere v. Microsoft Corp.*,

887 F.3d 1298, 1303 (Fed. Cir. 2018); *cf. CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646, 1651 (2016) (holding the same as to a similarly worded provision of Title VII and noting that "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner"); *see also Robinson v. O'Rourke*, 891 F.3d 976, 981–82 (Fed. Cir. 2018).  Although a "defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations," the Supreme Court has held that "[t]he defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.  The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *CRST*, 136 S. Ct. at 1651; *see Raniere*, 887 F.3d at 1305; *cf. Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019) (applying *CRST* to interpret "prevailing party" under the Lanham Act and Copyright Act).  Such a policy fulfills the purpose of "deter[ring] the bringing of lawsuits without foundation." *CRST*, 136 S. Ct. at 1652 (citation omitted); *Raniere*, 887 F.3d at 1305.

In order to justify the shifting of fees, the prevailing party must also show that the case is an "exceptional" one.  The Supreme Court has explained that an "exceptional case" under § 285

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Under this standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1756–57.  Some "nonexclusive . . . factors" that may guide this inquiry include "frivolousness, motivation, objective unreasonableness (both in the factual

13

and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *cf. Manhattan Review LLC v. Yun*, 765 F. App'x 574, 576–78 (2d Cir. 2019) (applying *Octane Fitness* to analyze a fee request "under the identically worded fee-shifting provision in the Lanham Act"); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 F. App'x 39, 41–42 (2d Cir. 2019) (same).

### 2. Application

Kawasaki seeks attorneys' fees and non-taxable costs incurred after the PTAB's May 2, 2018, decision in the first IPR. *See* Def. Mem. at 20. Kawasaki argues that it prevailed, that Blair litigated with bad faith, and that Blair's arguments were weak and frivolous. *Id.* at 21–23.

As a threshold matter, Kawasaki is unquestionably the prevailing party. The Court's dismissal of the AC unambiguously "rebuffs [Blair's] attempt to effect a 'material alteration in the legal relationship between the parties.'" *Raniere*, 887 F.3d at 1306 (quoting *CRST*, 136 S. Ct. at 1651); *see also, e.g.*, *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 677–79 (Fed. Cir. 2019) (defendant was prevailing party where cancellation of asserted claims in IPR proceeding led to dismissal for mootness).

However, this is not an exceptional case. "[A]lthough *Octane* reduced the showing required for an award on the ground of objective baselessness, courts continue to hold claims of baselessness to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014). Indeed, "most post-*Octane* cases awarding fees continue to involve substantial litigation misconduct." *Hockeyline, Inc. v. STATS LLC*, No. 13 Civ. 1446 (CM), 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017); *see also e.g.*, *Small*, 2014 WL 5463621, at *3 (collecting cases); *Gametek LLC v. Zynga, Inc.*, No. 13 Civ. 2546 (RS), 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (same). The Court has adopted the same

14

approach in its own post-*Octane* cases. *See, e.g.*, *Pirri v. Cheek*, No. 19 Civ 180 (PAE), 2020 WL 2520593, at *10–12 (S.D.N.Y. May 18, 2020) (awarding fees pursuant to § 285 where "in the Court's more than eight-and-one-half years on the bench, [plaintiff's] filings stand apart from those of other failed civil plaintiffs for the sheer lack of colorable factual (or legal support); for their tendentious, bizarre, non-responsive and caustically accusatory arguments; and for their disregard for, and selective presentation of, evidence"); *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2018 WL 3574864, at *11 (S.D.N.Y. July 25, 2018) (awarding fees where, *inter alia*, head of plaintiff company explicitly expressed to its outside counsel "an intention to pursue frivolous litigation with the intent of driving up its adversary's costs").

Blair's litigation conduct, while aggressive, did not cross the line into exceptionality. Before commencing this suit, Blair submitted his patent for an *ex parte* reexamination by the USPTO, which found that claim 1 was valid and claims 8 through 29 were allowable. *See* Pl. Mem. at 16. The PTAB affirmed this conclusion. *See id.* Following this reexamination, Blair therefore had a non-frivolous basis to believe his claims were patentable and could form the basis of an infringement claim. Notably, the PTAB later invalidated the challenged claims on grounds of obviousness due to a combination of at least three prior art references—and rejected Kawasaki's arguments that the '602 Patent was invalid based on any single reference. *See* Billah Decl., Ex. L at 31, 39; *Id.*, Ex. O at 17. "Because the law is clear that a determination regarding whether a patented invention is obvious is a fact-bound question, the conclusion that [multiple prior art references] *combined* to invalidate the Patents on obviousness grounds militates against an exceptionality finding herein." *Think Prods., Inc. v. ACCO Brands Corp.*, No. 14 Civ. 6659 (KAM) (SIL), 2019 WL 5694131, at *6 (E.D.N.Y. July 22, 2019) (emphasis in original) (citation omitted).

Even after losing the first IPR, Blair's decisions to appeal and to continue contesting Kawasaki's second IPR were within the realm of reasonable litigation strategy. *See id.* ("[A]lthough Defendants prevailed in the IPR Proceedings, the Court considers the PTAB Decision to be devoid of indications that Plaintiff's position therein was objectively baseless and therefore exceptional."). Although Kawasaki suggests that "it was unreasonable for [Blair] to appeal to the Federal Circuit and to decline [its] offer to 'walk away[,]' . . . simply disagreeing with PTAB's and [Kawasaki's] legal conclusions does not make [Blair's] appeal unreasonable, given that [he] was not advancing frivolous or objectively baseless arguments." *Hockeyline*, 2017 WL 1743022, at *5. In short, Blair's claims "though weak, were within the bounds of zealous advocacy." *Federal Ins. Co. v. PGG Realty, LLC*, 529 F. Supp. 2d 460, 465 (S.D.N.Y. 2008).[3] And, although Kawasaki attempts to wield against Blair his decision not to appeal the PTAB's decision in the second IPR, the Court credits Blair for his prudent decision to conserve resources by not appealing the second IPR. *See* Keyhani Decl. ¶ 8.

Thus, viewing the totality of the circumstances, this case is not exceptional. Blair did not engage in misconduct, and the litigation was continued neither in bad faith nor on objectively baseless grounds. Accordingly, the Court denies Kawasaki's request for attorneys' fees under § 285.

---

[3] Kawasaki, in essence, asks the Court to punish Blair for his decision to appeal the first IPR. However, Blair appealed the first IPR decision on June 21, 2018, while the second IPR was still pending, and it would not have made sense for him thereafter to abandon the second IPR while the appeal of the first IPR remained pending. The Court is particularly hesitant to hold Blair's decision to appeal against him given that the Supreme Court specifically noted the availability of judicial review by the Federal Circuit in support of its decision upholding the constitutionality of IPR proceedings. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018).

### B.     Federal Rule of Civil Procedure 54(d)(1)

#### 1.     Applicable Legal Standards

Under the Federal Rules of Civil Procedure, costs "other than attorney's fees" generally "should be allowed to the prevailing party," "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). The Rule "codifies a venerable presumption that prevailing parties are entitled to costs." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). "The award of costs against the losing party is a normal incident of civil litigation and is the rule rather than the exception." *Mercy v. Suffolk County*, 748 F.2d 52, 54 (2d Cir. 1984). "For this reason, the losing party has the burden to show that costs should not be imposed . . . ." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001). As noted above, Kawasaki is unquestionably the prevailing party here. "The essence of being a 'prevailing party' is achieving a 'material alteration of the legal relationship of the parties' that is judicially sanctioned." *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (quoting *Buckhannon*, 532 U.S. at 604).

The Supreme Court has interpreted costs under Rule 54(d)(1) to mean those enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Under 28 U.S.C. § 1920, there are six categories of costs: (1) "[f]ees of the clerk and marshal," (2) "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," (3) "[f]ees and disbursements for printing and witnesses," (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," (5) "[d]ocket fees under section 1923 of this title," and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees,

expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

### 2. Application

Kawasaki requests taxable costs through November 30, 2019, in the amount of $33,544, pursuant to Rule 54(d)(1), 28 U.S.C. § 1920, and Local Rule 54.1. *See* Def. Mem. at 18. This amount includes costs for transcripts obtained for use in this case and costs incurred for copying and producing documents in response to Blair's discovery requests. *See* Mortazavi Decl. ¶¶ 6, 12–13; Koyama Decl. ¶¶ 2–4.

As reviewed above, Kawasaki is the prevailing party and is therefore entitled to taxable costs. *See, e.g.*, *B.E. Tech.*, 940 F.3d at 679 (affirming award of costs to defendant under Rule 54(d) where cancellation of asserted claims in IPR proceeding led to dismissal for mootness). In his opposition, Blair raises multiple challenges to Kawasaki's costs. *Compare* Pl. Mem. at 29–30, *with* Def. Reply at 5–6, *and* Def. Mem. at 18–19. However, it is premature for the Court to resolve these objections. Pursuant to Local Rule 54.1:

> Within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal, unless this period is extended by the Court for good cause shown, any party seeking to recover costs shall file with the Clerk a notice of taxation of costs by Electronic Case Filing. . . . A party objecting to any cost item shall serve objections by Electronic Case Filing. . . . The Clerk will proceed to tax costs at the time scheduled and allow such items as are properly taxable.

Accordingly, Kawasaki is directed to present a bill of all costs to the Clerk within 30 days of the entry of final judgment by this Court, or, if Blair appeals, within 30 days of the final disposition of Blair's appeal. After the Clerk awards costs, the parties will have seven days to appeal that award to this Court. Fed. R. Civ. P. 54(d)(1); *see also Whitfield*, 241 F.3d at 269–70; *Balance Point Divorce Funding, LLC v. Scrantom*, No. 13 Civ. 1049 (PKC), 305 F.R.D. 67, 69–70 (S.D.N.Y. 2015).

## CONCLUSION

For the foregoing reasons, the Court dismisses the AC. The Court denies Kawasaki's request for attorneys' fees and non-taxable costs, but awards Kawasaki taxable costs, to be tabulated by the Clerk of Court.

The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 106 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 5, 2020
New York, New York